**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| THERAGUN, INC., a Delaware corporation,<br><br>        Plaintiff,<br><br>    v.<br><br>TZUMI ELECTRONICS LLC, a New York company, TZUMI INC., a New York corporation, and DOES 1 through 10, inclusive,<br><br>        Defendants. | Civil Action No.:  21-7803<br><br>**COMPLAINT FOR INFRINGEMENT OF U.S. PATENT NOS. 10,945,915; 10,702,448; 10,918,565; D849,261; D861,182; D890,943; D896,393; D845,500**<br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT

Plaintiff, Theragun, Inc. ("Theragun"), by its attorneys, for its complaint against defendants Tzumi Electronics LLC and Tzumi Inc. (collectively, "Tzumi") and Does 1-10, inclusive (collectively with Tzumi, "Defendants"), alleges as follows:

## THE PARTIES

1.    Theragun is, and at all times relevant hereto was, a corporation duly organized and existing under the laws of the state of Delaware, with its principal place of business at 6100 Wilshire Blvd., Ste. 200, Los Angeles, CA 90048.

2.    Theragun is informed and believes and, based thereon, alleges that

defendant Tzumi Electronics LLC is a domestic New York limited liability company, with offices at 16 East 34th Street, New York, NY 10016.

3.     Theragun is informed and believes and, based thereon, alleges that defendant Tzumi Inc. is a domestic New York corporation, with offices at 16 East 34th Street, New York, NY 10016.

4.     Theragun is ignorant of the true names and capacities of Defendants sued herein as Does 1 through 10, inclusive, and therefore sues these Defendants by such fictitious names and capacities. Theragun will amend this Complaint to allege their true names and capacities when ascertained, along with the appropriate factual allegations.

5.     Theragun is informed and believes and, based thereon, alleges that Defendants are manufacturing, using, selling, or offering for sale within the United States, or importing into the United States the infringing massage gun products described below.

6.     Theragun is informed and believes and, based thereon, alleges that each of the Defendants conspired and acted in concert with one or more other Defendants to commit the wrongs against Theragun alleged herein, and in doing so were at all relevant times the agents, servants, employees, principals, joint venturers, alter egos, and/or partners of each other. Theragun is further informed and believes and on that basis alleges that, in doing the things alleged in this Complaint, each of the Defendants was acting within the scope of authority

2

conferred upon that Defendant by the consent, approval, and/or ratification of one or more of the other Defendants.

## JURISDICTION AND VENUE

7.     This is an action for patent infringement under the patent laws of the United States, 35 U.S.C. § 271, *et seq.*

8.     This Court has subject matter jurisdiction over the patent claims in this action pursuant to 28 U.S.C. §§ 1331 and 1338.

9.     Venue is proper in this District pursuant to 28 U.S.C. § 1400(b).

10.     This Court has personal jurisdiction over Defendants and Theragun is informed and believes and, based thereon, alleges that, all Defendants have offices in this judicial district and distribute, promote, market, use, sell, offer for sale, import, and/or advertise their infringing products in or to this District and/or to businesses and individuals in this District. Theragun is further informed and believes and, based thereon, alleges that Defendants derive substantial revenue from the distribution, promotion, marketing, manufacture, use, sale, offer for sale, or import of infringing products in or to this District.  Accordingly, this Court has personal jurisdiction over Defendants because they have engaged in continuous, systematic and substantial activities within this judicial district, including the marketing and sales of products, in this judicial district. Furthermore, upon information and belief, this Court has personal jurisdiction over Defendants in this case because they have committed acts giving rise to Theragun's claims within and

directed to this judicial district.

## GENERAL ALLEGATIONS

11.    Theragun is in the business of developing, manufacturing, and selling high-quality, innovative percussive therapy devices and attachments therefor. Theragun invests considerable time, effort and money in developing and protecting its intellectual property, including the unique and novel designs of its products.

12.    Theragun is the owner of United States Patent Number 10,945,915, entitled "Portable percussive massage device" (hereinafter the "'915 Patent"), issued on March 16, 2021, a true and correct copy of which is attached hereto as Exhibit A. The '915 Patent pertains to a portable percussive massage device. The '915 Patent is presumed to be valid and is *prima facie* proof that the inventions claimed in the '915 Patent are novel and non-obvious.

13.    Theragun is the owner of United States Patent Number 10,702,448, entitled "Percussive massage device and method of use" (hereinafter the "'448 Patent"), issued on July 7, 2020, a true and correct copy of which is attached hereto as Exhibit B. The '448 Patent pertains to a vibrating massage device or percussive massage device that provides reciprocating motion. The '448 Patent is presumed to be valid and is *prima facie* proof that the inventions claimed in the '448 Patent are novel and non-obvious.

14.    Theragun is the owner of United States Patent Number 10,918,565, entitled "Percussive massage device and method of use" (hereinafter the "'565

Patent"), issued on February 16, 2021, a true and correct copy of which is attached hereto as Exhibit C. The '565 Patent pertains to a vibrating massage device or percussive massage device that provides reciprocating motion. The '565 Patent is presumed to be valid and is *prima facie* proof that the inventions claimed in the '565 Patent are novel and non-obvious.

15.     On May 21, 2019, the United States Patent and Trademark Office issued United States Patent Number D849,261, entitled "Massage Element" (hereinafter "the '261 Patent").  A true and correct copy of the '261 Patent is attached hereto as Exhibit D.

16.     Theragun is the owner of the '261 Patent.  The '261 Patent pertains to a particular ornamental design for an attachment for percussive massage devices, including as depicted in Fig. 1[1] below.  The '261 Patent is presumed to be valid and is *prima facie* proof that the design shown in the '261 Patent is novel and non-obvious.



**Fig. 1**

17.     On September 2, 2019, the United States Patent and Trademark Office

---

[1] The figure numbers cited here are not the figure numbers from the patents.

issued United States Patent Number D861,182, entitled "Massage Element" (hereinafter "the '182 Patent").  A true and correct copy of the '182 Patent is attached hereto as Exhibit E.

18.     Theragun is the owner of the '182 Patent.  The '182 Patent pertains to a particular ornamental design for an attachment for percussive massage devices, including as depicted in Fig. 2 below. The '182 Patent is presumed to be valid and is *prima facie* proof that the design shown in the '182 Patent is novel and non-obvious.



**Fig. 2**

19.     On July 21, 2020, the United States Patent and Trademark Office issued United States Patent Number D890,943, entitled "Massage Element" (hereinafter "the '943 Patent").  A true and correct copy of the '943 Patent is attached hereto as Exhibit F.

20.     Theragun is the owner of the '943 Patent.  The '943 Patent pertains to a particular ornamental design for an attachment for percussive massage devices, including as depicted in Fig. 3 below.  The '943 Patent is presumed to be valid and is *prima facie* proof that the design shown in the '943 Patent is novel and non-obvious.



**Fig. 3**

21.     On September 15, 2020, the United States Patent and Trademark Office issued United States Patent Number D896,393, entitled "Massage Element" (hereinafter "the '393 Patent").  A true and correct copy of the '393 Patent is attached hereto as Exhibit G.

22.     Theragun is the owner of the '393 Patent.  The '393 Patent pertains to a particular ornamental design for an attachment for percussive massage devices, including as depicted in Fig. 4 below.  The '393 Patent is presumed to be valid and is *prima facie* proof that the design shown in the '393 Patent is novel and non-obvious.

**Fig. 4**

23.     On April 9, 2019, the United States Patent and Trademark Office issued United States Patent Number D845,500, entitled "Massage Element" (hereinafter "the '500 Patent").  A true and correct copy of the '500 Patent is attached hereto as Exhibit H.

24.    Theragun is the owner of the '500 Patent.  The '500 Patent pertains to

a particular ornamental design for an attachment for percussive massage devices,

including as depicted in Fig. 5 below.  The '500 Patent is presumed to be valid and

is *prima facie* proof that the design shown in the '500 Patent is novel and non-

obvious.



**Fig. 5**

25.    Theragun's patented and patent-pending devices are innovative and

have received industry praise and recognition, including the 2019 A' Design

Award for Digital and Electronic Devices, for its Theragun G3PRO design.

26.    Theragun is informed and believes and, based thereon, alleges that

Defendants began competing with Theragun in the percussive massage device

industry by manufacturing and selling: (1) percussive massage devices infringing

the '915 Patent ("First Infringing Device"); (2) percussive massage devices

infringing the '448 and '565 Patents ("Second Infringing Device"); and (3)

attachments with identical, or nearly identical, designs to those of Theragun's

patents, including head attachments infringing the designs claimed in the '261

Patent and the '182 Patent ("First Infringing Attachment"), the '943 Patent

("Second Infringing Attachment"), the '393 Patent ("Third Infringing

Attachment"), and the '500 Patent (the "Fourth Infringing Attachment")

(collectively, the "Infringing Products").

27.     The First and Second Infringing Devices are shown below:



First Infringing Device                    Second Infringing Device

28.     The First, Second, Third and Fourth Infringing Attachments are

shown below:



First Infringing Attachment   Second Infringing Attachment   Third Infringing Attachment   Fourth Infringing Attachment

29.     By letter dated April 12, 2021, Theragun notified Defendant Tzumi

Electronics, LLC that the Infringing Products  were infringing Theragun's '915,

'261, '182, '943, '393 and '500 Patents and demanded that Tzumi immediately

cease and permanently discontinue all manufacture, offer for sale, sale, use, and importation of the Infringing Products.

30.    To date, Tzumi has not responded to Theragun's letter.

31.    Notwithstanding Theragun's demand and in conscious disregard of Theragun's intellectual property rights as set forth herein, Defendants have continued to offer for sale and sell the Infringing Products.

## FIRST CAUSE OF ACTION

**Patent Infringement of the '915 Patent, 35 U.S.C. §§ 101 et seq.**

(Against All Defendants)

32.    Theragun realleges and incorporates by reference all foregoing paragraphs as if fully set forth herein.

33.    At all times herein mentioned the '915 Patent was and is valid and fully enforceable.

34.    Defendants are offering percussive massage devices that infringe at least claim 1 of the '915 Patent, including at least the First Infringing Device.

35.    The First Infringing Device is a percussive massage device.

36.    As shown below, the First Infringing Device includes a housing that defines a housing interior, wherein the housing defines a thickness, a width and a height, a battery, a motor positioned in the housing, wherein the motor includes a rotatable motor shaft that defines a motor axis, a counterweight that rotates about the motor axis, a switch for activating the motor, and a reciprocating shaft

operatively connected to the motor and configured to reciprocate in response to activation of the motor.



37.     As shown above, the reciprocating shaft includes a distal end that defines a reciprocation axis and the reciprocation axis defines a thickness reciprocation plane that extends transversely through the thickness of the housing and divides the housing into first and second side portions.

38.     As shown above, the entire motor is positioned on a first side of the thickness reciprocation plane in the first side portion and the entire battery is positioned on a second side of the thickness reciprocation plane in the second side portion.

39.     As shown above, the motor axis extends perpendicular to the

thickness reciprocation plane and extends through the battery.

40.     As shown below, the first side portion is symmetrical to the second side portion except for any openings or ports defined in the housing.



41.     Defendants infringe literally or under the doctrine of equivalents, or both.

42.     On information and belief, at least since Theragun's April 12, 2021 letter, Defendants have knowingly and actively induced the infringement of one or more of the '915 Patent claims by, *inter alia*, marketing, promoting, and offering for use the First Infringing Device, knowingly and intending that the use of the First Infringing Device by Defendants' customers and by users infringes the '915 Patent. For example, Defendants intend to induce such infringement by, among other things, promoting users to purchase and use the First Infringing Device knowing that its purchase and use infringes one or more claims of the '915 Patent.

43.     On information and belief, at least since Theragun's April 12, 2021 letter, Defendants have contributed to the infringement of the '915 Patent by their customers and users of the First Infringing Device by, *inter alia*, making, offering to sell, selling and/or importing into the United States, a component of a patented machine, manufacture or combination, or an apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in infringing the '915 Patent. The First Infringing Device is not a staple article or commodity of commerce suitable for substantial non-infringing use and is known by Defendants to be especially made or especially adapted to infringe the '915 Patent. As a result, Defendants' First Infringing Device has been used by its customers and by users to infringe the '915 Patent. Defendants continue to engage in acts of contributory infringement of the '915 Patent even after receiving notice of its contributory infringement.

44.     At no time has Theragun granted Defendants authorization, license, or permission to utilize the claimed inventions in the '915 Patent.

45.     Theragun has been damaged by Defendants' acts of infringement of the '915 Patent and Theragun will continue to be damaged by such infringement unless enjoined by this Court. Theragun is entitled to recover damages adequate to compensate for the infringement under 35 U.S.C. § 284.

46.     Theragun is, and has been, irreparably harmed by Defendants' on-going infringement, including the following harm which cannot be quantified or

13

recouped through monetary damages: (1) lost market share that will be difficult, if not impossible, to recoup later as the First Infringing Device becomes entrenched with retail sellers and trainers who recommend it to their clients, (2) loss of first mover advantage that Theragun enjoyed as the first company to offer its innovative and patented percussive devices, (3) loss of Theragun's investment in developing the market for percussive devices, (4) negative effect on its reputation as innovator and pioneer, (5) the unquantifiable effect on lost sales of related products, (6) price erosion due to Defendants' First Infringing Device being sold at a price point lower than Theragun's patented products, (7) diversion of resources to defend against loss of market share caused by sales of the First Infringing Device, and (8) Defendants' unauthorized sales that are enticing others to offer for sale and sell infringing attachments that leads to additional irreparable harm described above.

47.    Defendants' acts of infringement have been, and continue to be, willful and deliberate and therefore warrant the award of attorneys' fees pursuant to 35 U.S.C. § 285 and the award of enhanced damages pursuant to 35 U.S.C. § 284.

## **SECOND CAUSE OF ACTION**

### **Patent Infringement of the '448 Patent, 35 U.S.C. §§ 101 et seq.**

(Against All Defendants)

48.    Theragun realleges and incorporates by reference all foregoing paragraphs as if fully set forth herein.

49.     At all times herein mentioned the '448 Patent was and is valid and fully enforceable.

50.     Defendants are offering percussive massage devices that infringe at least claim 6 of the '448 Patent, including at least the Second Infringing Device.

51.     Defendants' Second Infringing Device is a percussive massage device.

52.     As shown below, Defendants' Second Infringing Device includes a housing, wherein the housing includes first, second and third handle portions that cooperate to define a handle opening.



53.     As shown below, Defendants' Second Infringing Device includes a first handle portion that defines a first axis, a second handle portion defines a second axis and a third handle portion defines a third axis, and wherein the first, second and third axes cooperate to form a triangle.



54.     As shown above, the Second Infringing Device includes that the first handle portion is generally straight, the second handle portion is generally straight, and that the third handle portion is generally straight, such that a user can grasp any of the first, second or third handle portions independently to use the percussive massage device.

55.     The Second Infringing Device includes an electrical source, a motor positioned in the housing, a switch for activating the motor, and a push rod assembly operatively connected to the motor and configured to reciprocate in response to activation of the motor.

56.     On information and belief, at least since the filing of this Complaint, Defendants have knowingly and actively induced the infringement of one or more of the '448 Patent claims by, *inter alia,* marketing, promoting, and offering for use the Second Infringing Device, knowingly and intending that the use of the Second

Infringing Device by Defendants' customers and by users infringes the '448 Patent. For example, Defendants intend to induce such infringement by, among other things, promoting users to purchase and use the Second Infringing Device knowing that its purchase and use infringes one or more claims of the '448 Patent.

57.     On information and belief, at least since the filing of this Complaint, Defendants have contributed to the infringement of the '448 Patent by their customers and users of the Second Infringing Device by, *inter alia,* making, offering to sell, selling and/or importing into the United States, a component of a patented machine, manufacture or combination, or an apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in infringing the '448 Patent.  The Second Infringing Device is not a staple article or commodity of commerce suitable for substantial non-infringing use and is known by Defendants to be especially made or especially adapted to the infringe the '448 Patent. As a result, Defendants' Second Infringing Device has been used by its customers and by users to infringe the '448 Patent. Defendants continue to engage in acts of contributory infringement of the '448 Patent even after receiving notice of its contributory infringement.

58.     Defendants infringe literally or under the doctrine of equivalents, or both.

59.    At no time has Theragun granted Defendants authorization, license, or permission to utilize the inventions claimed in the '448 Patent.

60.    Theragun has been damaged by Defendants' acts of infringement of the '448 Patent and Theragun will continue to be damaged by such infringement unless enjoined by this Court. Theragun is entitled to recover damages adequate to compensate for the infringement under 35 U.S.C. § 284.

61.    Theragun is, and has been, irreparably harmed by Defendants' on-going infringement, including the following harm which cannot be quantified or recouped through monetary damages: (1) lost market share that will be difficult, if not impossible, to recoup later as the Second Infringing Device becomes entrenched with retail sellers and trainers who recommend it to their clients, (2) loss of first mover advantage that Theragun enjoyed as the first company to offer its innovative percussive devices and patented attachments, (3) loss of Theragun's investment in developing the market for percussive devices and its patented attachments, (4) negative effect on its reputation as innovator and pioneer, (5) the unquantifiable effect on lost sales of related products, (6) price erosion due to Defendants' Second Infringing Device being sold at a price point lower than Theragun's patented products, (7) diversion of resources to defend against loss of market share caused by sales of the Second Infringing Device, and (8) Defendants' unauthorized sales that are enticing others to offer for sale and sell infringing attachments that leads to additional irreparable harm described above.

18

62.     Defendants' acts of infringement, including continuing the infringing activities after receiving notice of Defendants' direct and indirect infringement, have been, and continue to be, willful and deliberate and therefore warrant the award of attorneys' fees pursuant to 35 U.S.C. § 285 and the award of enhanced damages pursuant to 35 U.S.C. § 284.

## **THIRD CAUSE OF ACTION**

### **Patent Infringement of the '565 Patent, 35 U.S.C. §§ 101 et seq.**

(Against All Defendants)

63.     Theragun realleges and incorporates by reference all foregoing paragraphs as if fully set forth herein.

64.     At all times herein mentioned the '565 Patent was and is valid and fully enforceable.

65.     Defendants are offering percussive massage devices that infringe at least claim 1 of the '565 Patent, including at least the Second Infringing Device.

66.     Defendants' Second Infringing Device is a percussive massage device.

67.     As shown below, Defendants' Second Infringing Device includes a housing, wherein the housing includes first, second and third handle portions that cooperate to at least partially define a handle opening.



68.    As shown below, Defendants' Second Infringing Device includes a first handle portion that defines a first axis, a second handle portion that defines a second axis and a third handle portion that defines a third axis, and wherein the first, second and third axes are co-planar.



69.    As shown above, the Second Infringing Device includes that the first handle portion is generally straight, that the second handle portion is generally

straight, and that the third handle portion is generally straight, such that a user can grasp any of the first, second or third handle portions independently to use the percussive massage device.

70.    The Second Infringing Device includes an electrical source, a motor positioned in the housing, a switch for activating the motor, and a push rod assembly operatively connected to the motor and configured to reciprocate in response to activation of the motor.

71.    On information and belief, at least since the filing of this Complaint, Defendants have knowingly and actively induced the infringement of one or more of the '565 Patent claims by, *inter alia,* marketing, promoting, and offering for use the Second Infringing Device, knowingly and intending that the use of the Second Infringing Device by Defendants' customers and by users infringes the '565 Patent. For example, Defendants intend to induce such infringement by, among other things, promoting users to purchase and use the Second Infringing Device knowing that its purchase and use infringes one or more claims of the '565 Patent.

72.    On information and belief, at least since the filing of this Complaint, Defendants have contributed to the infringement of the '565 Patent by their customers and users of the Second Infringing Device by, *inter alia,* making, offering to sell, selling and/or importing into the United States, a component of a patented machine, manufacture or combination, or an apparatus for use in practicing a patented process, constituting a material part of the invention, knowing

the same to be especially made or especially adapted for use in infringing the '565 Patent.  The Second Infringing Device is not a staple article or commodity of commerce suitable for substantial non-infringing use and is known by Defendants to be especially made or especially adapted to the infringe the '565 Patent. As a result, Defendants' Second Infringing Device has been used by its customers and by users to infringe the '565 Patent. Defendants continue to engage in acts of contributory infringement of the '565 Patent even after receiving notice of its contributory infringement.

73.     Defendants infringe literally or under the doctrine of equivalents, or both.

74.     At no time has Theragun granted Defendants authorization, license, or permission to utilize the inventions claimed in the '565 Patent.

75.     Theragun has been damaged by Defendants' acts of infringement of the '565 Patent and Theragun will continue to be damaged by such infringement unless enjoined by this Court. Theragun is entitled to recover damages adequate to compensate for the infringement under 35 U.S.C. § 284.

76.     Theragun is, and has been, irreparably harmed by Defendants' on-going infringement, including the following harm which cannot be quantified or recouped through monetary damages: (1) lost market share that will be difficult, if not impossible, to recoup later as the Second Infringing Device becomes entrenched with retail sellers and trainers who recommend it to their clients, (2)

loss of first mover advantage that Theragun enjoyed as the first company to offer its innovative percussive devices and patented attachments, (3) loss of Theragun's investment in developing the market for percussive devices and its patented attachments, (4) negative effect on its reputation as innovator and pioneer, (5) the unquantifiable effect on lost sales of related products, (6) price erosion due to Defendants' Second Infringing Device being sold at a price point lower than Theragun's patented products, (7) diversion of resources to defend against loss of market share caused by sales of the Second Infringing Device, and (8) Defendants' unauthorized sales that are enticing others to offer for sale and sell infringing attachments that leads to additional irreparable harm described above.

77.     Defendants' acts of infringement, including continuing the infringing activities after receiving notice of Defendants' direct and indirect infringement, have been, and continue to be, willful and deliberate and therefore warrant the award of attorneys' fees pursuant to 35 U.S.C. § 285 and the award of enhanced damages pursuant to 35 U.S.C. § 284.

## FOURTH CAUSE OF ACTION

### Patent Infringement of the '261 Patent, 35 U.S.C. §§ 101 et seq.

(Against All Defendants)

78.     Theragun realleges and incorporates by reference all paragraphs above as if fully set forth herein.

79.     At all times herein mentioned the '261 Patent was and is valid and fully enforceable.

80.     As shown below, a side by side comparison of figures from Theragun's '261 Patent and the design of Defendants' First Infringing Attachment as a whole quickly reveals that the First Infringing Attachment appears substantially the same as Theragun's '261 Patent to an ordinary observer, and the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other.  Among other things, an ordinary observer would conclude that the First Infringing Attachment has a number of the same, or very similar, features as the design patented in the '261 Patent that contribute to an overall appearance that is substantially the same, including that both the patented design and First Infringing Attachment are (a) cone shaped, (b) have the same relative dimensions (cone axial length relative to the diameter of the base), (c) have a rounded tip, and (d) have a generally circular cavity centered in the base of the attachment:



FIG. 5                    First Infringing Attachment

81.     Defendants have and continue to directly infringe the '261 Patent by making, using, offering for sale, selling and importing the First Infringing

24

Attachment in conjunction with percussive massage devices competitive to Theragun.

82.     Defendants' infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

83.     On information and belief, at least since Theragun's April 12, 2021 letter, Defendants have knowingly and actively induced the infringement of one or more of the '261 Patent claims by, *inter alia,* marketing, promoting, and offering for use the First Infringing Attachment, knowingly and intending that the use of the First Infringing Attachment by Defendants' customers and by users infringes the '261 Patent.  For example, Defendants intend to induce such infringement by, among other things, promoting users to purchase and use the First Infringing Attachment knowing that its purchase and use infringes one or more claims of the '261 Patent.

84.     On information and belief, at least since Theragun's April 12, 2021 letter, Defendants have contributed to the infringement of the '261 Patent by, *inter alia,* marketing and promoting the First Infringing Attachment to its customers and users. The First Infringing Attachment is not a staple article or commodity of commerce suitable for substantial non-infringing use and is known by Defendants to be especially made or especially adapted to the infringe the '261 Patent.  As a result, Defendants' First Infringing Attachment has been used by their customers and by users to infringe the '261 Patent. Defendants continue to engage in acts of

contributory infringement of the '261 Patent even after receiving notice of their contributory infringement.

85.     At no time has Theragun granted Defendants authorization, license, or permission to utilize the design claimed in the '261 Patent.

86.     Theragun has been damaged by Defendants' acts of infringement of the '261 Patent and Theragun will continue to be damaged by such infringement unless enjoined by this Court.  Theragun is entitled to recover damages adequate to compensate for the infringement under 35 U.S.C. § 284.

87.     Theragun is, and has been, irreparably harmed by Defendants' ongoing infringement, including the following harm which cannot be quantified or recouped through monetary damages: (1) lost market share that will be difficult, if not impossible, to recoup later as the First Infringing Attachment becomes entrenched with retail sellers and trainers who recommend it to their clients, (2) loss of first mover advantage that Theragun enjoyed as the first company to offer its innovative percussive devices and patented attachments, (3) loss of Theragun's investment in building up the market for percussive devices and its patented attachments, (4) negative effect on its reputation as innovator and pioneer, (5) the unquantifiable effect on lost sales of related products, (6) price erosion due to Defendants' First Infringing Attachment being sold at a price point lower than Theragun's patented product, (7) diversion of resources to defend against loss of market share caused by sales of the First Infringing Attachment, and (8)

Defendants' unauthorized sales that are enticing others to offer for sale and sell infringing attachments that leads to additional irreparable harm described above.

88.     Defendants' acts of infringement, including continuing the infringing activities after receiving notice of Defendants' direct and indirect infringement, have been, and continue to be, willful and deliberate and therefore warrant the award of attorneys' fees pursuant to 35 U.S.C. § 285 and the award of enhanced damages pursuant to 35 U.S.C. § 284.

## FIFTH CAUSE OF ACTION

### Patent Infringement of the '182 Patent, 35 U.S.C. §§ 101 et seq.

(Against All Defendants)

89.     Theragun realleges and incorporates by reference all paragraphs above as if fully set forth herein.

90.     At all times herein mentioned the '182 Patent was and is valid and fully enforceable.

91.     As shown below, a side by side comparison of Theragun's '182 Patent and Defendants' First Infringing Attachment quickly reveals that the design of the First Infringing Attachment as a whole appears substantially the same as Theragun's '182 Patent to an ordinary observer, and the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other.  Among other things, an ordinary observer would conclude that the First Infringing Attachment has a number of the same, or very similar, features as the

27

design patented in the '261 Patent that contribute to an overall appearance that is substantially the same, including but not limited to that both the patented design and First Infringing Attachment are (a) cone shaped, (b) have the same relative dimensions (cone axial length relative to the diameter of the base), (c) have a rounded tip, and (d) have a generally circular cavity centered in the base of the attachment:



First Infringing Attachment

92.     Defendants have and continue to directly infringe the '182 Patent by making, using, offering for sale, selling and importing the First Infringing Attachment in conjunction with percussive massage devices competitive to Theragun.

93.     Defendants' infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

94.     On information and belief, at least since Theragun's April 12, 2021 letter, Defendants have knowingly and actively induced the infringement of one or more of the '182 Patent claims by, *inter alia,* marketing, promoting, and offering for use the First Infringing Attachment, knowingly and intending that the use of the First Infringing Attachment by Defendants' customers and by users infringes the

'182 Patent.  For example, Defendants intend to induce such infringement by, among other things, promoting users to purchase and use the First Infringing Attachment knowing that its purchase and use infringes one or more claims of the '182 Patent.

95.     On information and belief, at least since Theragun's April 12, 2021 letter, Defendants have contributed to the infringement of the '182 Patent by, *inter alia,* marketing and promoting the First Infringing Attachment to their customers and users. The First Infringing Attachment is not a staple article or commodity of commerce suitable for substantial non-infringing use and is known by Defendants to be especially made or especially adapted to the infringe the '182 Patent.  As a result, Defendants' First Infringing Attachment has been used by their customers and by users to infringe the '182 Patent.  Defendants continue to engage in acts of contributory infringement of the '182 Patent even after receiving notice of their contributory infringement.

96.     At no time has Theragun granted Defendants authorization, license, or permission to utilize the design claimed in the '182 Patent.

97.     Theragun has been damaged by Defendants' acts of infringement of the '182 Patent and Theragun will continue to be damaged by such infringement unless enjoined by this Court.  Theragun is entitled to recover damages adequate to compensate for the infringement under 35 U.S.C. § 284.

98.     Theragun is, and has been, irreparably harmed by Defendants'
ongoing infringement, including the following harm which cannot be quantified or
recouped through monetary damages: (1) lost market share that will be difficult, if
not impossible, to recoup later as the First Infringing Attachment becomes
entrenched with retail sellers and trainers who recommend it to their clients, (2)
loss of first mover advantage that Theragun enjoyed as the first company to offer
its innovative percussive devices and patented attachments, (3) loss of Theragun's
investment in building up the market for percussive devices and its patented
attachments, (4) negative effect on its reputation as innovator and pioneer, (5) the
unquantifiable effect on lost sales of related products, (6) price erosion due to
Defendants' First Infringing Attachment being sold at a price point lower than
Theragun's patented product, (7) diversion of resources to defend against loss of
market share caused by sales of the First Infringing Attachment, and (8)
Defendants' unauthorized sales that are enticing others to offer for sale and sell
infringing attachments that leads to additional irreparable harm described above.

99.     Defendants' acts of infringement, including continuing the infringing
activities after receiving notice of Defendants' direct and indirect infringement,
have been, and continue to be, willful and deliberate and therefore warrant the
award of attorneys' fees pursuant to 35 U.S.C. § 285 and the award of enhanced
damages pursuant to 35 U.S.C. § 284.

## SIXTH CAUSE OF ACTION

**Patent Infringement of the '943 Patent, 35 U.S.C. §§ 101 et seq.**

(Against All Defendants)

100.   Theragun realleges and incorporates by reference all paragraphs above as if fully set forth herein.

101.   At all times herein mentioned the '943 Patent was and is valid and fully enforceable.

102.   As shown below, a side by side comparison of Theragun's '943 Patent and Defendants' Second Infringing Attachment quickly reveals that the design of the Second Infringing Attachment as a whole appears substantially the same as Theragun's '943 Patent to an ordinary observer, and the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other.  Among other things, an ordinary observer would conclude that the Second Infringing Attachment  has a number of the same, or very similar, features as the design patented in the '943 Patent that contribute to an overall appearance that is substantially the same, including but not limited to that both the patented design and Second Infringing Attachment are: (a) dome shaped, (b) sloped portions from the top attachment-side to the dome, (c) the same relative proportions of the dome to the sloped portion of the attachment, and (d) have a generally circular cavity centered in the base of the attachment:



Fig. 4                Second Infringing Attachment

103.    Defendants have and continue to directly infringe the '943 Patent by making, using, offering for sale, selling and importing the Second Infringing Attachment in conjunction with percussive massage devices competitive to Theragun.

104.    Defendants' infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

105.    On information and belief, at least since Theragun's April 12, 2021 letter, Defendants have knowingly and actively induced the infringement of one or more of the '943 Patent claims by, *inter alia,* marketing, promoting, and offering for use the Second Infringing Attachment, knowingly and intending that the use of the Second Infringing Attachment by Defendants' customers and by users infringes the '943 Patent.  For example, Defendants intend to induce such infringement by, among other things, promoting users to purchase and use the Second Infringing Attachment knowing that its purchase and use infringes one or more claims of the '943 Patent.

106.    On information and belief, at least since Theragun's April 12, 2021 letter, Defendants have contributed to the infringement of the '943 Patent by, *inter*

*alia,* marketing and promoting the Second Infringing Attachment to their customers and users.  The Second Infringing Attachment is not a staple article or commodity of commerce suitable for substantial non-infringing use and is known by Defendants to be especially made or especially adapted to the infringe the '943 Patent.  As a result, Defendants' Second Infringing Attachment has been used by their customers and by users to infringe the '943 Patent.  Defendants continue to engage in acts of contributory infringement of the '943 Patent even after receiving notice of their contributory infringement.

107.   At no time has Theragun granted Defendants authorization, license, or permission to utilize the design claimed in the '943 Patent.

108.   Theragun has been damaged by Defendants' acts of infringement of the '943 Patent and Theragun will continue to be damaged by such infringement unless enjoined by this Court.  Theragun is entitled to recover damages adequate to compensate for the infringement under 35 U.S.C. § 284.

109.   Theragun is, and has been, irreparably harmed by Defendants' on-going infringement, including the following harm which cannot be quantified or recouped through monetary damages: (1) lost market share that will be difficult, if not impossible, to recoup later as the Second Infringing Attachment becomes entrenched with retail sellers and trainers who recommend it to their clients, (2) loss of first mover advantage that Theragun enjoyed as the first company to offer its innovative percussive devices and patented attachments, (3) loss of Theragun's

investment in building up the market for percussive devices and its patented

attachments, (4) negative effect on its reputation as innovator and pioneer, (5) the

unquantifiable effect on lost sales of related products, (6) price erosion due to

Defendants' Second Infringing Attachment being sold at a price point lower than

Theragun's patented product, (7) diversion of resources to defend against loss of

market share caused by sales of the Second Infringing Attachment, and (8)

Defendants' unauthorized sales that are enticing others to offer for sale and sell

infringing attachments that leads to additional irreparable harm described above.

110.   Defendants' acts of infringement, including continuing the infringing

activities after receiving notice of Defendants' direct and indirect infringement,

have been, and continue to be, willful and deliberate and therefore warrant the

award of attorneys' fees pursuant to 35 U.S.C. § 285 and the award of enhanced

damages pursuant to 35 U.S.C. § 284.

## SEVENTH CAUSE OF ACTION

### Patent Infringement of the '393 Patent, 35 U.S.C. §§ 101 et seq.

(Against All Defendants)

111.   Theragun realleges and incorporates by reference all paragraphs above

as if fully set forth herein.

112.   At all times herein mentioned the '393 Patent was and is valid and

fully enforceable.

113.    As shown below, a side by side comparison of Theragun's '393 Patent and Defendants' Third Infringing Attachment quickly reveals that the design of the Third Infringing Attachment as a whole appears substantially the same as Theragun's '393 Patent to an ordinary observer, and the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other.  Among other things, an ordinary observer would conclude that the Third Infringing Attachment has a number of the same, or very similar, features as the design patented in the '393 Patent that contribute to an overall appearance that is substantially the same, including but not limited to that both the patented design and Third Infringing Attachment is (a) dome shaped contact surface, (b) vertical sides between the sloped portion and dome, (c) sloped portions from the vertical sides to the attachment side, (d) the same relative proportions of the three segments (domed, vertical side and sloped), and (e) have a generally circular cavity centered in the base of the attachment:



Fig. 4                          Third Infringing Attachment

114.    Defendants have and continue to directly infringe the '393 Patent by making, using, offering for sale, selling and importing the Third Infringing Attachment in conjunction with percussive massage devices competitive to

Theragun.

115.   Defendants' infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

116.   On information and belief, at least since Theragun's April 12, 2021 letter, Defendants have knowingly and actively induced the infringement of one or more of the '393 Patent claims by, *inter alia,* marketing, promoting, and offering for use the Third Infringing Attachment, knowingly and intending that the use of the Third Infringing Attachment by Defendants' customers and by users infringes the '393 Patent.  For example, Defendants intend to induce such infringement by, among other things, promoting users to purchase and use the Third Infringing Attachment knowing that its purchase and use infringes one or more claims of the '393 Patent.

117.   On information and belief, at least since Theragun's April 12, 2021 letter, Defendants have contributed to the infringement of the '393 Patent by, *inter alia,* marketing and promoting the Third Infringing Attachment to their customers and users.  The Third Infringing Attachment is not a staple article or commodity of commerce suitable for substantial non-infringing use and is known by Defendants to be especially made or especially adapted to the infringe the '393 Patent.  As a result, Defendants' Third Infringing Attachment has been used by their customers and by users to infringe the '393 Patent.  Defendants continue to engage in acts of

contributory infringement of the '393 Patent even after receiving notice of their contributory infringement.

118.   At no time has Theragun granted Defendants authorization, license, or permission to utilize the design claimed in the '393 Patent.

119.   Theragun has been damaged by Defendants' acts of infringement of the '393 Patent and Theragun will continue to be damaged by such infringement unless enjoined by this Court.  Theragun is entitled to recover damages adequate to compensate for the infringement under 35 U.S.C. § 284.

120.   Theragun is, and has been, irreparably harmed by Defendants' on-going infringement, including the following harm which cannot be quantified or recouped through monetary damages: (1) lost market share that will be difficult, if not impossible, to recoup later as the Third Infringing Attachment becomes entrenched with retail sellers and trainers who recommend it to their clients, (2) loss of first mover advantage that Theragun enjoyed as the first company to offer its innovative percussive devices and patented attachments, (3) loss of Theragun's investment in building up the market for percussive devices and its patented attachments, (4) negative effect on its reputation as innovator and pioneer, (5) the unquantifiable effect on lost sales of related products, (6) price erosion due to Defendants' Third Infringing Attachment being sold at a price point lower than Theragun's patented product, (7) diversion of resources to defend against loss of market share caused by sales of the Third Infringing Attachment, and (8)

Defendants' unauthorized sales that are enticing others to offer for sale and sell infringing attachments that leads to additional irreparable harm described above.

121.   Defendants' acts of infringement, including continuing the infringing activities after receiving notice of Defendants' direct and indirect infringement, have been, and continue to be, willful and deliberate and therefore warrant the award of attorneys' fees pursuant to 35 U.S.C. § 285 and the award of enhanced damages pursuant to 35 U.S.C. § 284.

## EIGHTH CAUSE OF ACTION

### Patent Infringement of the '500 Patent, 35 U.S.C. §§ 101 et seq.

(Against All Defendants)

122.   Theragun realleges and incorporates by reference all paragraphs above as if fully set forth herein.

123.   At all times herein mentioned the '500 Patent was and is valid and fully enforceable.

124.   As shown below, a side by side comparison of Theragun's '500 Patent and Defendants' Fourth Infringing Attachment quickly reveals that the design of the Fourth Infringing Attachment as a whole appears substantially the same as Theragun's '500 Patent to an ordinary observer, and the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other. Among other things, an ordinary observer would conclude that the Fourth Infringing Attachment has a number of the same, or very similar, features as the

design patented in the '500 Patent that contribute to an overall appearance that is substantially the same, including but not limited to that both the patented design and Fourth Infringing Attachment is (a) width of contact side (where it placed against a body part) is larger than the width of the attachment side, (b) width of the contact side and the length (top to bottom) are generally the same size, (c) thickness of the contact surface has the same proportions to the length and width of the attachment, (d) rounded contact surface, and (e) a generally circular cavity centered in the base of the attachment:



Fig. 2                                    Fourth Infringing Attachment

125.   Defendants have and continue to directly infringe the '500 Patent by making, using, offering for sale, selling and importing the Fourth Infringing Attachment in conjunction with percussive massage devices competitive to Theragun.

126.   Defendants' infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

127.   On information and belief, at least since Theragun's April 12, 2021 letter, Defendants have knowingly and actively induced the infringement of one or more of the '500 Patent claims by, *inter alia,* marketing, promoting, and offering

for use the Fourth Infringing Attachment, knowingly and intending that the use of the Fourth Infringing Attachment by Defendants' customers and by users infringes the '500 Patent.  For example, Defendants intend to induce such infringement by, among other things, promoting users to purchase and use the Fourth Infringing Attachment knowing that its purchase and use infringes one or more claims of the '500 Patent.

128.    On information and belief, at least since Theragun's April 12, 2021 letter, Defendants have contributed to the infringement of the '500 Patent by, *inter alia,* marketing and promoting the Fourth Infringing Attachment to their customers and users.  The Fourth Infringing Attachment is not a staple article or commodity of commerce suitable for substantial non-infringing use and is known by Defendants to be especially made or especially adapted to the infringe the '500 Patent.  As a result, Defendants' Fourth Infringing Attachment has been used by their customers and by users to infringe the '500 Patent.  Defendants continue to engage in acts of contributory infringement of the '500 Patent even after receiving notice of their contributory infringement.

129.    At no time has Theragun granted Defendants authorization, license, or permission to utilize the design claimed in the '500 Patent.

130.    Theragun has been damaged by Defendants' acts of infringement of the '500 Patent and Theragun will continue to be damaged by such infringement

unless enjoined by this Court. Theragun is entitled to recover damages adequate to compensate for the infringement under 35 U.S.C. § 284.

131. Theragun is, and has been, irreparably harmed by Defendants' on-going infringement, including the following harm which cannot be quantified or recouped through monetary damages: (1) lost market share that will be difficult, if not impossible, to recoup later as the Fourth Infringing Attachment becomes entrenched with retail sellers and trainers who recommend it to their clients, (2) loss of first mover advantage that Theragun enjoyed as the first company to offer its innovative percussive devices and patented attachments, (3) loss of Theragun's investment in building up the market for percussive devices and its patented attachments, (4) negative effect on its reputation as innovator and pioneer, (5) the unquantifiable effect on lost sales of related products, (6) price erosion due to Defendants' Fourth Infringing Attachment being sold at a price point lower than Theragun's patented product, (7) diversion of resources to defend against loss of market share caused by sales of the Fourth Infringing Attachment, and (8) Defendants' unauthorized sales that are enticing others to offer for sale and sell infringing attachments that leads to additional irreparable harm described above.

132. Defendants' acts of infringement, including continuing the infringing activities after receiving notice of Defendants' direct and indirect infringement, have been, and continue to be, willful and deliberate and therefore warrant the

award of attorneys' fees pursuant to 35 U.S.C. § 285 and the award of enhanced damages pursuant to 35 U.S.C. § 284.

## **PRAYER FOR RELIEF**

WHEREFORE, Theragun prays for judgment as follows:

A.     For an order finding that the '915, '448, '565, '261, '182, '943, '393, and '500 Patents are valid and enforceable;

B.     For an order finding that Defendants have infringed the '915, '448, '565, '261, '182, '943, '393, and '500 Patents directly, contributorily, and/or by inducement, literally or by equivalents, in violation of 35 U.S.C. § 271;

C.     For an order temporarily, preliminarily and permanently enjoining Defendants, their officers, directors, agents, servants, affiliates, employees, subsidiaries, divisions, branches, parents, attorneys, representatives, privies, and all others acting in concert or participation with any of them, from infringing the '915, '448, '565, '261, '182, '943, '393, and '500 Patents directly, contributorily and/or by inducement, or otherwise engaging in acts of unfair competition;

D.     For a judgment directing that any products in the possession, custody or control of Defendants which infringe the '915, '448, '565, '261, '182, '943, '393, and/or '500 Patents, including but not limited to the Infringing Products, be delivered up and destroyed within 30 days of entry of judgment;

E.      For a judgment directing Defendants to recall all such Infringing Products and any other materials sold, distributed, advertised or marketed which infringe the '915, '448, '565, '261, '182, '943, '393, and '500 Patents;

F.      For an order directing Defendants to file with the Court, and serve upon Theragun's counsel, within thirty (30) days after entry of the order of injunction, a report setting forth the manner and form in which each of them has complied with the injunction;

G.      For an order finding that Defendants' conduct alleged herein was willful and intentional and in conscious disregard of Theragun's rights;

H.      For compensatory damages in an amount to be proven at trial, including disgorgement of profits or gains of any kind made by Defendants from their infringing acts, lost profits and/or reasonable royalty, in amounts to be fixed by the Court in accordance with proof, including general, statutory, enhanced, exemplary, treble, and/or punitive damages, as appropriate;

I.      For an order finding that this is an exceptional case, and awarding Plaintiff's reasonable attorneys' fees according to proof;

J.      For an order awarding Theragun its costs of court; and

K.      For such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury on all issues so triable.

Dated: New York, New York
      September 17, 2021

MOSES & SINGER LLP

By:   /s/ *Philippe Zimmerman*
      Philippe Zimmerman
      Zaid Shukri
405 Lexington Avenue, 12th Floor
New York, New York 10174-1299
T:  (212) 554-7800
F:  (212) 554-7700
pzimmerman@mosessinger.com
zshukri@mosessinger.com

JEFFER MANGELS BUTLER & MITCHELL LLP
Gregory S. Cordrey (*pro hac vice* motion forthcoming)
3 Park Plaza, Suite 1100
Irvine, CA 92614
T:  (949) 623-7236
GCordrey@JMBM.com

Rod S. Berman (*pro hac vice* motion forthcoming)
1900 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067
T: (310) 203-8080
RBerman@JMBM.com

*Attorneys for Plaintiff, Theragun, Inc.*