**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

THERABODY, INC., a Delaware corporation,

*Plaintiff*,

*v.*

TZUMI ELECTRONICS LLC, a New York
company, TZUMI INC., a New York
corporation, and DOES 1 THROUGH 10,

*Defendants*.

Civil Action No. 21-cv-7803-PGG-RWL

**<u>Oral Argument Requested</u>**

**THERABODY, INC.'S MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT OF NON-INFRINGEMENT**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................ 1

II. STATEMENT OF FACTS ................................................................................. 2

 A. The Challenged Patents ........................................................................... 2

 B. The Prosecution History Of The Challenged Patents ............................ 4

  1. Prosecution History Of The '448 Patent .................................... 4

  2. Prosecution History Of The '064 Patent .................................... 5

  3. Prosecution History Of The '565 Patent .................................... 6

III. LEGAL STANDARDS .................................................................................... 8

 A. Patent Infringement ................................................................................. 8

 B. Step 1 – Construing the Scope of the Claims ........................................ 8

 C. Step 2 – Determining Whether Genuine Issues of Fact Exist As To Infringement of Each Asserted Claim ................................................... 10

IV. ARGUMENT .................................................................................................. 11

 A. Tzumi's Motion is Premature, Contradicts the Court's Orderly Schedule, and Would Not Resolve Or Simplify the Case ...................... 11

 B. Tzumi's "Interpretation" of the Asserted Claims is Premature, Erroneous, and Violates All Major Canons of Claim Construction ......................... 13

  1. Tzumi's Proposed Construction Contradicts the Plain Language of the Claims ................................................................................ 14

  2. Tzumi's Proposed Construction Violates the Doctrine of Claim Differentiation ............................................................................ 15

  3. Tzumi's Proposed Construction Imports Some Embodiments From the Specification Into the Claims While Excluding Other Preferred Embodiments ............................................................................. 16

  4. Tzumi's Proposed Construction Contradicts the Prosecution History, and Is Not Based On Any Clear and Unambiguous Disavowal ................ 18

 C. Factual Disputes Preclude Summary Judgment Even If Tzumi's Proposed Construction Were Adopted ................................................................... 21

  1. Tzumi's Proposed Construction Raises Multiple Unanswered Questions of Fact ....................................................................... 22

  2. Facts in the Record Preclude Summary Judgment ..................... 23

  3. Tzumi's Motion Improperly Compares Pictures of Its Products to Figures from the Prior Art and Asserted Patents. ...................... 24

**TABLE OF AUTHORITIES**
(continued)

**Page**

        4.     Tzumi's Failure to Address Infringement Under the Doctrine of Equivalents Also Precludes Summary Judgment. ....................................... 24

V.     CONCLUSION .............................................................................................................. 25

# TABLE OF AUTHORITIES

Page

**Cases**

*3M Innovative Props. Co. v. Tredegar Corp.*,
   725 F.3d 1315 (Fed. Cir. 2013) .................................................................... 9, 18, 21

*Abbott Labs. v. Syntron Bioresearch, Inc.*,
   334 F.3d 1343 (Fed. Cir. 2003) ........................................................................ 17

*Accent Packaging, Inc. v. Leggett & Platt, Inc.*,
   707 F.3d 1318 (Fed. Cir. 2013) ........................................................................ 16

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) .......................................................................................... 11

*AquaTex Indus., Inc. v. Techniche Sols.*,
   479 F.3d 1320 (Fed. Cir. 2007) .......................................................................... 8

*Aventis Pharms. Inc. v. Amino Chems. Ltd.*,
   715 F.3d 1363 (Fed. Cir. 2013) ........................................................................ 14

*Baron Servs., Inc. v. Media Weather Innovations LLC*,
   717 F.3d 907 (Fed. Cir. 2013) .......................................................................... 13

*Baxter Healthcare Corp. v. Spectramed, Inc.*,
   49 F.3d 1575 (Fed. Cir. 1995) .......................................................................... 24

*Catalina Lighting, Inc. v. Lamps Plus, Inc.*,
   295 F.3d 1277 (Fed. Cir. 2002) ........................................................................ 24

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ............................................................................... 10, 13, 23

*Conoco, Inc. v. Energy & Envtl. Int'l, L.C.*,
   460 F.3d 1349 (Fed. Cir. 2006) ........................................................................ 25

*Cont'l Cirs. LLC v. Intel Corp.*,
   915 F.3d 788 (Fed. Cir. 2019) ............................................................................ 9

*Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*,
   559 F.3d 1308 (Fed. Cir. 2009) ........................................................................ 24

*Deere & Co. v. Bush Hog, LLC*,
   703 F.3d 1349 (Fed. Cir. 2012) .......................................................................... 8

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Eon Corp. IP Holdings LLC v. Silver Spring Networks, Inc.*,
   815 F.3d 1314 (Fed. Cir. 2016) ................................................. 10

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
   535 U.S. 722 (2002) ................................................. 25

*First Nat'l Bank of Ariz. v. Cities Service Co.*,
   391 U.S. 253 (1968) ................................................. 11

*Generation II Orthotics Inc. v. Med. Tech. Inc.*,
   263 F.3d 1356 (Fed. Cir. 2001) ................................................. 20

*Inline Plastics Corp. v. EasyPak, LLC*,
   No. 2014-1305, 2015 WL 5058248 (Fed. Cir. Aug. 27, 2015) ................................................. 19

*Innova/Pure Water v. Safari Water Filtration*,
   381 F.3d 1111 (Fed. Cir. 2004) ................................................. 12

*Intellectual Ventures I LLC v. T-Mobile USA, Inc.*,
   902 F.3d 1372 (Fed. Cir. 2018) ................................................. 9

*International Research & Development Corp. v. Matson Navigation Co.*,
   No. C-50297 SC, 1972 U.S. Dist. LEXIS 11984 (N.D. Cal. Sep. 14, 1972) ................................................. 25

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
   358 F.3d 898 (Fed. Cir. 2004) ................................................. 15

*Linex Techs., Inc. v. Hewlett-Packard Co.*,
   No. C 13-159 CW, 2014 U.S. Dist. LEXIS 73320 (N.D. Cal. May 20, 2014) ................................................. 25

*M2M Sols. LLC v. Sierra Wireless Am., Inc.*,
   No. CV 12-30-RGA, 2016 WL 1298961 (D. Del. Mar. 31, 2016) ................................................. 11

*Markman v. Westview Instruments, Inc.*,
   517 U.S. 370 (1996) ................................................. 8

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ................................................. 10

*Medicines Co. v. Mylan, Inc.*,
   853 F.3d 1296 (Fed. Cir. 2017) ................................................. 17

*Nazomi Commc'ns, Inc. v. Arm Holdings, PLC.*,
   403 F.3d 1364 (Fed. Cir. 2005) ................................................. 15

# TABLE OF AUTHORITIES
### (continued)

**Page**

*On–Line Techs., Inc. v. Bodenseewerk Perkin–Elmer GmbH,*
   386 F.3d 1133 (Fed. Cir. 2004) ................................................................. 16

*Phillips v. AWH Corp.,*
   415 F.3d 1303 (Fed. Cir. 2005) ....................................................... 8, 15, 16

*Pitney Bowes, Inc. v. Hewlett-Packard Co.,*
   182 F.3d 1298 (Fed. Cir. 1999) ...................................................... passim

*Plantronics, Inc. v. Aliph, Inc.,*
   724 F.3d 1343 (Fed. Cir. 2013) ................................................................. 9

*PPG Indus. v. Guardian Indus. Corp.,*
   156 F.3d 1351 (Fed. Cir. 1998) ......................................................... 10, 15

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.,*
   702 F.3d 1351 (Fed. Cir. 2012) .............................................................. 10

*Prima Tek II, L.L.C. v. Polypap, S.A.R.L.,*
   318 F.3d 1143 (Fed. Cir. 2003) ................................................................. 9

*Roche Palo Alto LLC v. Apotex, Inc.,*
   531 F.3d 1372 (Fed. Cir. 2008) .............................................................. 11

*Sinorgchem Co., Shandong v. Int'l Trade Comm'n,*
   511 F.3d 1132 (Fed. Cir. 2007) .............................................................. 17

*Summit 6, LLC v. Samsung Elecs. Co.,*
   802 F.3d 1283 (Fed. Cir. 2015) ................................................................. 8

*Tate Access Floors, Inc. v. Interface Architectural Res., Inc.,*
   279 F.3d 1357 (Fed. Cir. 2002) .............................................................. 24

*Thorner v. Sony Comput. Entm't Am. LLC,*
   669 F.3d 1362 (Fed. Cir. 2012) ................................................................. 9

*Trading Techs., Int'l, Inc. v. eSpeed, Inc.,*
   595 F.3d 1340 (Fed. Cir. 2010) ................................................................. 9

*Zenith Lab'ys, Inc. v. Bristol-Myers Squibb Co.,*
   19 F.3d 1418 (Fed. Cir. 1994) ................................................................. 24

**Statutes**

35 U.S.C. § 112(d) .................................................................................... 15

**TABLE OF AUTHORITIES**
(continued)

Page

**Rules**

Fed. R. Civ. P. 56(a) ................................................................................................ 10

Fed. R. Civ. P. 56(c)(1) ............................................................................................ 11

## I.        INTRODUCTION

Tzumi's Motion for Partial Summary Judgment ("Motion") is premised on an "interpretation" of the claims that violates every major canon of claim construction.  It disregards the plain and ordinary meaning of the claims, improperly reads embodiments from the specification into the claims, ignores the doctrine of claim differentiation, and seeks to unduly narrow the claims in a manner that contradicts the actual amendments and arguments made during prosecution.  Indeed, the Motion fails to recite (and barely acknowledges) the actual words of even one of the eleven challenged claims at issue.  On that basis alone, the motion fails.

Moreover, even if Tzumi's interpretation were adopted, the question of whether the accused products infringe one or more claims of the '448, '565, '064, or '722 Patents under Tzumi's ethereal "construction" would require resolution of several inherently factual questions about Tzumi's accused products, none of which can be answered by the conclusory assertions presented with the Motion.  Tzumi's facile one-page "analysis" (Motion at 14) only demonstrates that such a determination cannot be made at this early phase of the case—before claim construction, discovery, and expert reports analyzing and comparing the accused products to the asserted claims.  The record is devoid of the type of actual evidence required to allow the Court to address these questions, much less to determine that no genuine issues of fact remain for trial.

In sum, Tzumi's Motion fundamentally misunderstands what is required to adjudicate a claim of patent infringement.  The law gives no import to unsupported allegations and attorney argument, as offered by Tzumi, but instead requires "a two-step analytical approach," where first the claims are properly construed, and then a determination is made "as to whether the properly construed claims read on the accused device." *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1304 (Fed. Cir. 1999).  Because Tzumi failed to adequately conduct either step, much less establish that no factual disputes would come of it, the Motion must be denied.

## II.   STATEMENT OF FACTS

### A.   The Challenged Patents

Therabody has asserted seven utility patents and seven design patents against a host of Tzumi products.  Ex. U (Therabody Infringement Contentions Cover Pleading) at 2.[1]  Therabody asserts fifteen independent claims (and several dependent claims)[2] from four patents against Tzumi's FitRx PRO and Profit Elite products, eleven of which are challenged in the Motion.[3] *Id.*; Motion at 1.

The four patents that are the subject of Tzumi's Motion are directed generally to a percussive massage device with three handles, and a corresponding method of use.  The challenged claims fall into two categories:  (1) apparatus claims reciting that the handles on the device are "generally straight" or "cooperate to form a triangle" "such that a user can grasp any of the first, second or third handle portions independently to use the percussive therapy device" and (2) method claims that recite "grasping the first handle portion," "grasping the second handle portion," and "grasping the third handle portion."

For example, apparatus claim 6 of the '448 Patent recites that the handle portions of the percussive device are "generally straight" "such that a user can grasp" them:

> A percussive massage device comprising:
>> a housing, wherein the housing includes first, second and third handle

---

[1] Exhibits A-T refer to exhibits to the Declaration of Scott D. Stimpson, dated June 7, 2022, accompanying Tzumi's Statement of Undisputed Material Facts.  Exhibits U - GG refer to exhibits to the Declaration of Cameron W. Westin, dated August 5, 2022, which are included in the appendix accompanying Therabody's Rule 56.1 Statement.

[2] A dependent claim incorporates all the limitations of an independent claim and adds additional limitations.  Because the dependent claim adds limitations, it is improper to interpret an independent claim to include the limitations separately set out in a dependent claim, as explained in Section IV.B.2.

[3] As discussed further below in Section IV.A, because Tzumi's Motion does not address four claims asserted against the FitRx PRO and Profit Elite products, much less the other asserted patents and accused products, its requested relief would not resolve or even simplify this case.

portions that cooperate to define a handle opening, wherein the first handle portion defines a first axis, the second handle portion defines a second axis and the third handle portion defines a third axis, wherein the first, second and third axes cooperate to form a triangle, ***wherein the first handle portion is generally straight, wherein the second handle portion is generally straight, and wherein the third handle portion is generally straight, such that a user can grasp any of the first, second or third handle portions independently to use the percussive massage device***,

an electrical source,

a motor positioned in the housing,

a switch for activating the motor, and

a push rod assembly operatively connected to the motor and configured to reciprocate in response to activation of the motor.

'448 Patent, Claim 6 (emphasis added).

Method claim 1 of the '448 Patent similarly recites that the handles are "generally straight," and recites limitations directed to "grasping" those handles:

A method of using a percussive massage device, the method comprising the steps of:

obtaining the percussive massage device, wherein the percussive massage device includes a housing that includes first, second and third handle portions that cooperate to define a handle opening, an electrical source, a motor positioned in the housing, a switch for activating the motor, and a push rod assembly operatively connected to the motor and configured to reciprocate in response to activation of the motor, wherein the first handle portion defines a first axis, the second handle portion defines a second axis and the third handle portion defines a third axis, and wherein the first, second and third axes cooperate to form a triangle, wherein the first handle portion is generally straight, wherein the second handle portion is generally straight, and wherein the third handle portion is generally straight,

activating the motor using the switch,

***grasping*** the first handle portion,

massaging a first body part,

***grasping*** the second handle portion and massaging the first body part, and

***grasping*** the third handle portion and massaging the first body part.

*Id.*, Claim 1 (emphasis added).

***None of the challenged claims specify the length of the handles***.  Instead, those limitations are found in other dependent claims, and even in other independent claims in the

same patents.  *See, e.g., Id.*, Dependent Claim 2 ("wherein the [first/second/third] handle portion length is long enough that when a user grasps [that] portion with a hand at least a portion of ***three fingers*** extend through the handle opening and contact the [first/second/third] handle portion interior edge") (emphasis added); '565 Patent, Independent Claim 8 (same).

### B.     The Prosecution History Of The Challenged Patents

Tzumi's Motion blatantly misrepresents the prosecution history of the '448, '064, and '565 Patents.  The applicants did not amend the claims at issue in the Motion to require any particular length of the claimed handles, and the applicants never based their arguments on such an interpretation.  To the contrary, the applicants ***declined*** to add limitations about the length of the handles into these claims.  An honest reading of the prosecution history shows that amendments and arguments were directed at other aspects of the claims, and the applicants ***never*** disavowed claim scope to require all three handles being of "a length sufficient for a person with a large hand to firmly and comfortably grip each handle portion with at least three to four fingers extending through the opening," as Tzumi now argues.  Motion at 11.

### 1.     Prosecution History Of The '448 Patent

Contrary to Tzumi's characterization, Claim 1 of the '448 Patent ***as originally filed*** included the "grasping" limitation, reciting a method that included, among other limitations, "***grasping*** the first handle portion," and "massaging a [] body part," "***grasping*** the second handle portion and massaging the [] body part," and "***grasping*** the third handle portion and massaging the [] body part."  Ex. W (Original Patent Application Filing) at 40 (emphasis added).  The original dependent claims specified further limitations regarding the handles.  Original Claim 2 required that the three handle portions each define an axis, and that "the first, second and third axes cooperate to form a triangle."  *Id.*  Original Claim 3 required that the length of each handle portion be "long enough that when a user grasps the [first/second/third] handle portion with a

hand at least a portion of three fingers extend through the handle opening." *Id.* And original

Claim 4 required that "the [first/second/third] handle portion is generally straight." *Id.* at 41.

The U.S. Patent and Trademark Office ("PTO") initially rejected these claims. Ex. P

(January 24, 2020 Office Action) at 5-7. In response, the applicants amended pending

independent Claim 1 to incorporate the limitations of dependent Claims 2 (forming a triangle)

and 4 (generally straight), ***but not*** the limitations of dependent Claim 3 directed to the length of

the handle. Ex. I (Apr. 17, 2020 Amendment and Arguments/Remarks) at 2-4, 14-15. The

applicants then distinguished the prior art based on its failure to disclose using three separate

handles to operate the device. *Id.* at 17-19

The examiner allowed the claims and explained that the prior art references "do not

disclose … or suggest … the limitations … set forth in [the] independent claims … without the

use of impermissible hindsight." Ex. X (May 28, 2020 Notice of Allowance) at 2-4. Under

"Reasons for Allowance" in the Notice of Allowance, the examiner listed all the limitations of

each of the independent claims (as amended) in the application as together forming the basis for

allowing the claims, and ***did not*** single out any limitations regarding the length of the handle

portions. *Id.* at 3-4. The '448 Patent issued on July 7, 2020.

### 2.     Prosecution History Of The '064 Patent

The originally filed Claim 1 of the '064 Patent recited a percussive therapy device that

included a housing, an electrical source, a motor with an activating switch, and a push rod

assembly. Ex. Z (Original Patent Application Filing) at 72. Dependent Claim 2 (as amended in

a preliminary amendment before examination) recited, in part, that the axes of the handle

portions "cooperate to form a triangle, such that a user can ***grasp*** any of the first, second or third

handle portions independently to use the percussive therapy device." Ex. AA (June 17, 2020

Preliminary Amendment) at 2. Like the independent claims in the '448 Patent, independent

5

Claim 1 of the '064 Patent did not include any limitation on the length of the handle portions. *Id.* And just like in the '448 Patent, a ***dependent claim*** (Claim 22, added in the preliminary amendment before examination) contained limitations specifying that the handle portions were "long enough that when a user grasps the [first/second/third] handle portion with a hand at least a portion of three fingers extend through the handle opening and contact the first handle portion interior edge." *Id.* at 4.

The PTO initially rejected Claim 1. Ex. BB (July 28, 2020 Office Action) at 6. Dependent Claim 2, however, was not rejected in view of the prior art. *Id.* at 18. The applicants thus amended Claim 1 to include the limitations from Claim 2, but ***did not*** include the limitations of Claim 22, regarding the length of the handle portions. Ex. J (Sept. 1, 2020 Amendment) at 2. The examiner allowed the amended claim, and again included a statement of "Reasons for Allowance" that listed all the limitations of the independent claims, taken together. Ex. CC (Sept. 18, 2020 Notice of Allowance) at 4-5. The '064 Patent issued on December 8, 2020.

### 3. Prosecution History Of The '565 Patent

Again, contrary to Tzumi's characterization, the originally filed Claim 1 of the '565 Patent included the "grasp" requirement, reciting first, second and third handle portions that each defined a respective axis and where each handle portion "is generally straight" "such that a user can ***grasp*** any of the first, second or third handle portions independently to use the percussive massage device." Ex. EE (Original Patent Application Filing) at 40 (emphasis added). Like the independent claims in the '448 and '064 Patents, this claim did not include any limitation on the length of the handle portions. *Id.* And just like in the '448 and '064 Patents, a ***dependent claim*** (Claim 2) contained limitations specifying that the handle portions were "long enough that when a user grasps the [first/second/third] handle portion with a hand at least a portion of three fingers extend through the handle opening and contact the first handle portion interior edge." *Id.*

6

Again, the PTO initially rejected these claims.  Ex. L (Sept. 22, 2020 Office Action) at 2. In response, the applicants amended independent Claim 1 to require that the axes of the first, second and third handle portions "***are co-planar***."  Ex. M (Dec. 17, 2020 Amendments to the Claims) at 2.  The limitations from Claim 2, which contains the "length" limitations, were ***never*** incorporated into claim 1.  *Id*. at 2-3.

The examiner again agreed with the applicants' argument, issuing a Notice of Allowance that again included a statement of "Reasons for Allowance" that listed all the limitations of the independent claims, taken together, including the "first, second, and third generally straight handle portions . . . which are co-planar as set forth in independent claims 1 and 7."  Ex. N (January 8, 2021 Notice of Allowance) at 3-4.  Contrary to Tzumi's misleading suggestion through the liberal use of ellipses (Motion at 6), the examiner did ***not*** cite the length of the claimed handles as a basis for allowing independent Claim 1.  Rather, the length of the handles was only listed for the claims, such as dependent Claim 2, that expressly included limitations specifying the length.  Ex. N at 3-4.  The '565 Patent issued on February 16, 2021.

*     *     *     *     *

In sum, the applicants overcame the prior art by incorporating certain limitations regarding the configuration of the handles (*e.g.*, "generally straight" or "form a triangle") into the eleven independent claims that are the subject of Tzumi's Motion.  However, the applicants chose ***not*** to incorporate any limitations regarding the length of the handles into any of these independent claims.  Moreover, the examiner recognized that the challenged claims expressly recited ***other*** limitations, unrelated to length, that overcame the prior art.  Tzumi's assertion that the examiner and applicants "agreed" on some "length" requirement for the three handles in all claims is unsupported by anything in the prosecution history, and is contradicted by the ***express*** language about the length of the handles found in other claims in the same patents.

7

### III.    LEGAL STANDARDS

#### A.    Patent Infringement

An analysis of patent infringement requires two steps:  (1) construing the patent claims and (2) comparing the properly construed claim language to the accused products to determine whether infringement occurred.  *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384 (1996).  The construction of patent claim terms is a question of law to be determined by the court.  *Id.*  Infringement, on the other hand, is a question of fact.  *AquaTex Indus., Inc. v. Techniche Sols.*, 479 F.3d 1320, 1328 (Fed. Cir. 2007).

#### B.    Step 1 – Construing the Scope of the Claims

The first step in claim construction is to look to the language of the claims.  The words of the claim "are generally given their ordinary and customary meaning," which is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application."  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (*en banc*).  "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art [is] readily apparent even to lay judges, and claim construction … involves little more than the application of the widely accepted meaning of commonly understood words."  *Id.* at 1314.  Thus, the court need not construe "commonly used terms" that are "used in common parlance and ha[ve] no special meaning in the art."  *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1291 (Fed. Cir. 2015).

Claims should be read in light of the specification.  *Phillips*, 415 F.3d at 1315.  However, "a claim construction must not import limitations from the specification into the claims."  *Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1354 (Fed. Cir. 2012).  "[A]lthough the specification often describes very specific embodiments of the invention," the Federal Circuit has "repeatedly warned against confining the claims to those embodiments."  *Phillips*, 415 F.3d at 1323.  The

specification cannot be used to narrow the plain meaning of the claims unless it contains "expressions of manifest exclusion or restriction, representing a ***clear disavowal of claim scope***." *Cont'l Cirs. LLC v. Intel Corp.*, 915 F.3d 788, 797 (Fed. Cir. 2019) (emphasis added). Absent that, a patentee "'is free to choose a broad term and expect to obtain the full scope of its plain and ordinary meaning.'" *Intellectual Ventures I LLC v. T-Mobile USA, Inc.*, 902 F.3d 1372 (Fed. Cir. 2018) (quoting *Thorner v. Sony Comput. Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012)).

The prosecution history may also "inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution." *Plantronics, Inc. v. Aliph, Inc.*, 724 F.3d 1343, 1350 (Fed. Cir. 2013). But it too cannot be used to narrow the scope of the claims "unless a patentee limited or surrendered claim scope through a ***clear and unmistakable disavowal***." *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1322 (Fed. Cir. 2013) (emphasis added) (citing *Trading Techs., Int'l, Inc. v. eSpeed, Inc.*, 595 F.3d 1340, 1352 (Fed. Cir. 2010)); *Cont'l Cirs.*, 915 F.3d at 798 ("to operate as a disclaimer, [a] statement in the prosecution history must be clear and unambiguous, and constitute a ***clear disavowal*** of scope") (emphasis added). Importantly, it is the applicants' statements in the prosecution history, and not litigation counsel's speculation about why the examiner allowed certain claims, that must support a finding of clear and unmistakable disavowal. *Prima Tek II, L.L.C. v. Polypap, S.A.R.L.*, 318 F.3d 1143, 1151 (Fed. Cir. 2003) ("drawing inferences of the meaning of claim terms from an examiner's silence is not a proper basis on which to construe a patent claim.")

Finally, the purpose of claim construction is not to remove all ambiguity or resolve factual questions. *Eon Corp. IP Holdings LLC v. Silver Spring Networks, Inc.*, 815 F.3d 1314,

1318 (Fed. Cir. 2016).  Claims should be construed only "with whatever specificity and precision is warranted by the language of the claim and the evidence bearing on the proper construction." *PPG Indus. v. Guardian Indus. Corp.*, 156 F.3d 1351, 1355 (Fed. Cir. 1998).  The next step, the "task of determining whether the construed claim reads on the accused product is for the finder of fact." *Id.*

### C.    Step 2 – Determining Whether Genuine Issues of Fact Exist As To Infringement of Each Asserted Claim

After the Court construes the claims, "the jury compares the properly construed claims to the allegedly infringing device." *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351, 1358 (Fed. Cir. 2012).  That comparison should only be resolved on summary judgment "if, after viewing the alleged facts in the light most favorable to the non-movant, there is no genuine issue whether the accused device is encompassed by the claims."  *Pitney Bowes,* 182 F.3d at 1304.  *See also* Fed. R. Civ. P. 56(a) (movant must establish "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law").  In determining whether summary judgment is appropriate, the court must resolve all ambiguities and draw all reasonable inferences ***against*** the moving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The movant for summary judgment "always bears the initial responsibility" of "demonstrat[ing] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  To do so requires "citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  Defendants in patent cases cannot meet this burden simply by denying infringement. "Defendants' cursory attorney argument . . . does not provide a sufficient basis to prevent

Plaintiff from presenting these infringement theories to a factfinder." *M2M Sols. LLC v. Sierra Wireless Am., Inc.*, No. CV 12-30-RGA, 2016 WL 1298961, at *8 (D. Del. Mar. 31, 2016).

Even if the movant can meet its initial burden, summary judgment is still inappropriate if the non-moving party can "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Service Co.*, 391 U.S. 253, 288 (1968)). Indeed, if there is any evidence in the record from any source from which a "reasonable inference" could be drawn "in favor of the non-movant," then summary judgment is improper. *Roche Palo Alto LLC v. Apotex, Inc.*, 531 F.3d 1372, 1377 (Fed. Cir. 2008).

## IV. ARGUMENT

### A. Tzumi's Motion is Premature, Contradicts the Court's Orderly Schedule, and Would Not Resolve Or Simplify the Case

Tzumi's Motion is premised on asking the Court to re-write four of Therabody's asserted patents by inserting a non-infringement argument in the form of an additional claim limitation into eleven claims across those patents, and then asking the Court to take its attorneys' word that this inserted limitation is not met, all without the benefit of discovery or expert testimony on this key factual inquiry.

*First*, Tzumi's pre-discovery claim construction request violates the orderly claim construction and discovery process that the parties agreed to, and the Court adopted, just weeks before Tzumi filed its Motion. *See* ECF No. 51. That process begins with claim construction disclosures in November 2022, allows Therabody to serve final infringement contentions 25 days after the Court's claim construction order, and directs the parties to complete fact discovery 80 days later. *Id.* Now, Tzumi asks the Court to short-circuit the claim construction process and forego discovery entirely, seeking summary judgment based on a bare record and a claim

11

construction argument that lumps together numerous different claims and limitations.

*Second*, in its haste, Tzumi fails to even identify which words it is asking the Court to construe.  Is it "handle," "handle portion," "grasp/grasping," some combination of these words, or something else entirely?  Rather than posing a question that can be resolved on claim construction, Tzumi lumps together eleven different claim limitations each spanning three-to-four lines, calls these "the 'grasping' limitations," and then says all of those "grasping limitations" should be interpreted to have the same meaning.  Motion at 11.  Indeed, even assuming Tzumi proposes to construe "grasp" or "grasping" (something it never explicitly states), Tzumi simply replaces "grasp" with "grip" and then adds additional requirements not found in the claims.  In other words, Tzumi is not actually asking the Court to ***construe*** any claim language.  It is asking to ***add*** limitations not found in the claims to manufacture a non-infringement argument.  That is not how claim construction works.  A claim construction analysis must "remain centered on the claim language itself."  *Innova/Pure Water v. Safari Water Filtration*, 381 F.3d 1111, 1116 (Fed. Cir. 2004).  The Motion's disregard for the actual claim language undermines any argument that this is a genuine attempt at claim construction.

*Third*, Tzumi's basis for insisting on early summary judgment briefing is self-contradictory and entirely unsupported.  Tzumi initially claims that the FitRx PRO and Profit Elite, accused of infringing the four patents in the motion, "account for about 90% of sales of all accused products."  Motion at 1.  But on the very next page, Tzumi claims that "[t]he products subject to this motion account for about 85% of the sales of all accused products in this case."  *Id.* at 2 n.1.  Whatever the number, it is entirely devoid of evidentiary support due to the undeveloped state of the record at this early phase of litigation.

*Fourth*, even if Tzumi's Motion were granted, it would not dispose of this case because

Tzumi's Motion does not address the three other utility patents and seven other design patents asserted against Tzumi's other products.  *See* Motion at 1.  Indeed, resolving Tzumi's Motion would not even dispose of the allegations against the FitRx PRO and Profit Elite.  *See* Ex. V (Therabody Infringement Contention Claim Charts) at 19, 34, 50, 62.

     *Finally*, the only evidence about the FitRx PRO and Profit Elite that Tzumi can produce in support of its Motion at this early phase are two pictures and (according solely to its Attorney's declaration) two samples of the Accused Products.  *See* Appendix to Statement of Material Facts In Support of Defendant's Motion for Partial Summary Judgment at 5 (Stimpson Decl.) ¶¶ 4, 5.  As discussed in Section IV.C, *infra*, this "evidence" is woefully inadequate to support summary judgment.  More fundamentally, however, the Supreme Court has warned against non-movants being "'railroaded' by a premature motion for summary judgment," counseling denying or continuing such motions "if the nonmoving party has not had an opportunity to make full discovery."  *Celotex Corp.*, 477 U.S. at 326; s*ee also Baron Servs., Inc. v. Media Weather Innovations LLC*, 717 F.3d 907, 913 (Fed. Cir. 2013).  Tzumi fails to submit any record evidence supporting its claims for non-infringement, and Therabody has yet to obtain any discovery from Tzumi.

     In sum, Tzumi rushed to file a deeply flawed motion that amounts to little more than a waste of Court and party resources, seeking partial relief that would in no way simplify the case. Separate and apart from the absence of any substantive merit as discussed below, Tzumi's Motion should be denied as premature.

     **B.**     **Tzumi's "Interpretation" of the Asserted Claims is Premature, Erroneous, and Violates All Major Canons of Claim Construction**

To the extent Tzumi purports to construe the claims, it blatantly violates longstanding, fundamental precedent governing that process.  Tzumi's proposal (1) disregards the plain and

ordinary meaning of the actual claim language, (2) runs afoul of the doctrine of claim differentiation by incorporating limitations from narrower dependent claims into independent claims, (3) imports certain embodiments from the specification into the claim while excluding other embodiments, and (4) inserts limitations into the claims that contradict the amendments and arguments **actually** made in the prosecution history, all without identifying any clear and unambiguous definition or disavowal that could support its proposed interpretation of these eleven independent claims.  Tzumi's proposed construction should be rejected.

> **1.    Tzumi's Proposed Construction Contradicts the Plain Language of the Claims**

The claim limitations Tzumi seeks to construe have readily identifiable plain and ordinary meanings.  As discussed above, the so-called "grasping limitations" **actually** recite the act of "grasping" first, second, and third handle portions on percussive devices, and/or percussive devices contain first/second/third handle portions that are "generally straight" or "form a triangle" "such that a user can grasp any of the first, second or third handle portions independently to use the percussive massage device."  None of them specify anything about what length the handles must be.  To insert such a limitation would be to rewrite the claims without any basis to overcome the "heavy presumption" that the plain and ordinary meaning applies. *Aventis Pharms. Inc. v. Amino Chems. Ltd.*, 715 F.3d 1363, 1373 (Fed. Cir. 2013).

Moreover, these claims are written in plain English that requires no further explanation. Encyclopedia Britannica, for example, defines "grasp" to mean "to take and hold (something) with your fingers, hands, etc."  Ex. GG ([https://www.britannica.com/dictionary/grasp](https://www.britannica.com/dictionary/grasp)).  Tzumi's proposed construction merely exchanges "grasp" for "grip" (which adds no clarification to the meaning) and then adds numerous other requirements not recited in the claims.   Motion at 11. Because "grasp" has a readily understood meaning, the proper infringement analysis here would

"involve[] little more than the application of the widely accepted meaning of commonly

understood words."  *Phillips*, 415 F.3d at 1314.  There is no need to construe the claims further.

### 2.   Tzumi's Proposed Construction Violates the Doctrine of Claim Differentiation

Tzumi's proposal also violates the doctrine of claim differentiation by incorporating

limitations from dependent claims into the independent claims, thereby rendering the dependent

claims meaningless.  A dependent claim (e.g., '448 Patent Claim 2) must be narrower than the

claim from which it depends (e.g., '448 Patent Claim 1).  Thus, during claim construction, the

"limitations stated in dependent claims are not to be read into the independent claim from which

they depend."  *Nazomi Commc'ns, Inc. v. Arm Holdings, PLC.*, 403 F.3d 1364, 1370 (Fed. Cir.

2005) (internal quotations omitted).[4]  A dependent claim adding a particular limitation "gives

rise to a presumption that the limitation in question is not present in the independent claim."

*Phillips*, 415 F.3d at 1314-15.  And where, as here, "the limitation that is sought to be 'read into'

an independent claim already appears in a dependent claim, the doctrine of claim differentiation

is at its strongest."  *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 910 (Fed. Cir. 2004).

Tzumi's proposed construction runs afoul of this doctrine.  For example, Claim 2 of the

'448 Patent recites that all three handle portions are "long enough that when a user grasps the[m]

with a hand at least a portion of three fingers extend through the handle opening."  '448 Patent,

Claim 2.  Similar dependent claims are found in all four patents.  *See, e.g.,* '448 Patent, Claim 7;

'064 Patent, Claim 9; '565 Patent, Claims 6 and 7; '722 Patent, Claim 4.  Yet Tzumi asks the

Court to insert into the independent claims a ***narrower*** requirement:  that all three handles "be of

a length sufficient for a person with a ***large hand*** to ***firmly and comfortably*** grip each handle

---

[4] *See also* 35 U.S.C. § 112(d) ("a claim in dependent form shall contain a reference to a claim previously set forth and then specify a further limitation of the subject matter claimed").

portion with at least three **_to four_** fingers extending through the opening." Motion at 11 (emphasis added). Construing the independent claims to include limitations **_narrower than_** their dependent claims is improper and provides an independent basis to deny Tzumi's Motion.

> **3.** **Tzumi's Proposed Construction Imports Some Embodiments From the Specification Into the Claims While Excluding Other Preferred Embodiments**

The Federal Circuit has "repeatedly warned" against importing embodiments from the specification into the claims, calling it "one of the cardinal sins of patent law." *Phillips*, 415 F. 3d at 1320-23. Moreover, a claim construction "that excludes a preferred embodiment from the scope of the claim is **_rarely, if ever, correct_**." *Accent Packaging, Inc. v. Leggett & Platt, Inc.*, 707 F.3d 1318, 1326 (Fed. Cir. 2013) (quoting *On–Line Techs., Inc. v. Bodenseewerk Perkin– Elmer GmbH*, 386 F.3d 1133, 1138 (Fed. Cir. 2004)) (emphasis added). Tzumi's proposed construction violates both of these principles.

Tzumi asserts that its proposed construction is compelled by the embodiment shown in Figs. 16-18 and described in the accompanying text. It is not. The cited embodiment is only one of many embodiments. Many do not define a length of the handle portion at all, such as those embodiments disclosing only "handle[s] … that a user can grasp." '448 Patent at Figs. 1, 2, 7, 8, 13. Others (which are explicitly recited in some claims) have a handle portion length that allows only "**_a portion of_** three fingers [to] extend through the handle opening." '448 Patent at 2:7-14 (emphasis added). Limiting the challenged claims to include only handles "of a length sufficient for a person with a large hand to firmly and comfortably grip each handle portion with at least three to four fingers extending through the opening" (Motion at 11) would improperly exclude these disclosed embodiments.

Tzumi's argument that the specification "**_defines_** what it means for a handle to be large enough to grasp" (Motion at 4; emphasis added) is simply wrong. For a specification to define a

term, that definition must "appear **with reasonable clarity, deliberateness, and precision** before it can affect the claim." *Abbott Labs. v. Syntron Bioresearch, Inc.*, 334 F.3d 1343, 1354 (Fed. Cir. 2003)(internal quotations omitted). Further, a "clear expression of intent" to define a term is "necessary for a patentee to act as its own lexicographer." *Medicines Co. v. Mylan, Inc.*, 853 F.3d 1296, 1306 (Fed. Cir. 2017).

Here, the specification says **the opposite**. It says that the "description of embodiments of the disclosure is not intended to be exhaustive or to limit the teachings to the precise form disclosed," '448 Patent at 21:1-3, and that "any dimensions given herein are only exemplary and that none of the dimensions or descriptions are limiting on the present invention," *id.* at 21:30-33. The purported "definition" that Tzumi cites, shown below, contains no suggestion that it is **defining** a term, whether it be "grasp," "handle," or anything else:

> FIGS. 16-18 show a user's hand grasping the various handle portions. The length of each of the first, second and third handle portions is long enough so that a person with a large hand can comfortably grasp each handle portion with at least three to four fingers extending through the handle opening, as shown in FIGS. 16-18.

'448 Patent at 16:38-43.[5] Nothing here suggests a "clear expression of intent" to define any term. The passage does not break off "grasp" or any other term with quotes. *Cf. Sinorgchem Co., Shandong v. Int'l Trade Comm'n*, 511 F.3d 1132, 1136 (Fed. Cir. 2007) ("The term 'controlled amount' is set off by quotation marks—often a strong indication that what follows is a definition."). Nor does it include a clear, definitional phrase, such as "refers to" or "as defined herein," to indicate a definitional passage. *See, e.g., Medicines.*, 853 F.3d at 1306.

Instead, this is just one of several embodiments from the specification that Tzumi would

---

[5] Notably, Tzumi's proposed construction does not even adopt the purported "definition" that it identifies in the specification, and instead adds more limitations, such as requiring that the handles be long enough to "firmly" grip them. The word "firm" never appears in the specification or claims. *See generally* '448 Patent.

prefer to incorporate into the claims, while ignoring other preferred embodiments. That is yet another reason why Tzumi's proposed construction should be rejected and its Motion denied.

4.     <strong>Tzumi's Proposed Construction Contradicts the Prosecution History, and Is Not Based On Any Clear and Unambiguous Disavowal</strong>

Tzumi also purports to base its proposed construction on the prosecution history. But the prosecution history strongly supports ***not*** construing the asserted claims to include Tzumi's proposed "length" limitation. If anything, the prosecution history shows that the applicants and examiner recognized that the challenged claims ***do not*** contain a "length" requirement. As discussed in Section II.B, the original application claims for the '448 and '565 Patents already contained the so-called "grasping limitations" when they were initially rejected by the examiner. If, as Tzumi asserts, the examiner understood these limitations to require Tzumi's proposed "length" limitation, then under Tzumi's logic, they would have never been rejected over the prior art in the first place. Moreover, in each of the prosecution histories, the applicants included separate dependent claims that contained limitations similar to those that Tzumi seeks to import into the claims. Rather than importing those "length" requirement into the claims to overcome prior art, the applicants incorporated other limitations and made arguments based on them.

Further, the prosecution history cannot narrow the scope of the claims "unless a patentee limited or surrendered claim scope through a ***clear and unmistakable disavowal***" of claim scope. *3M Innovative*, 725 F.3d at 1322 (emphasis added). Tzumi's strained arguments interpreting the prosecution history betray one glaring issue—***none of the applicants' statements identified in the prosecution history addresses the length of the claimed handle portions***, let alone requires claims without a length requirements be limited to "handles … of a length sufficient for a person with a large hand to firmly and comfortably grip each handle portion with at least three to four fingers." *See, e.g.*, *Inline Plastics Corp. v. EasyPak, LLC*, No. 2014-1305, 2015 WL 5058248, at

*3-5 (Fed. Cir. Aug. 27, 2015) (prosecution history did not support restricting the scope of a term where neither the inventor, nor the examiner, relied on the presence or absence of a feature to distinguish the claims over the prior art).

Lacking any disavowal of claim scope by the applicants, Tzumi resorts to baseless assumptions and mischaracterizations of the prosecution history in an attempt to support its addition of a new limitation into the claims.  These mischaracterizations are easily rebutted.

*First*, the examiner and the applicants did not distinguish the challenged claims from the prior art based on the handles not being of any specific length.  Motion at 13.  As discussed above in Section II.B, the applicants distinguished the eleven claims challenged in Tzumi's Motion from the prior art based on limitations that were expressly added into the claims—i.e., that the handles were "generally straight," "co-planar," or formed a "triangle."  The applicants and examiner never discussed, much less agreed, that the claims were distinguishable based on any aspect of the ***length*** of these handles, and certainly not based on the particular length requirement Tzumi now seeks to import.  Indeed, to the extent Tzumi makes arguments based on the Examiner's paraphrasing of claims, the applicants submitted comments in response to the notices of allowance in each of the prosecution histories of the '448, '064, and '565 Patent stating that they disagreed with any characterization by the examiner that "paraphrased claim recitations, emphasized certain recitations over others, or otherwise made statements or notations purporting to limit the scope of the claims."  Ex. Y ('448 File History, May 28, 2020 Comments on Statement of Examiner's Reasons for Allowance) at 1; Ex. DD ('064 File History, October 13, 2020 Response to Notice of Allowability and Amendment to Drawings) at 3; Ex. FF ('565 File History, January 8, 2021 Comments on Statement of Examiner's Reasons for Allowance at 1).  This is the opposite of a "clear and unmistakable disavowal" by the applicants.

*Second*, the applicants did not amend all these eleven claims "so that they required all three handles to be graspable."  Motion at 4.  As discussed in Section II.B, some claims included "the 'grasping' limitations" in their original form, meaning the examiner rejected them even with such a limitation.  Others were amended to state that the handle portions could be grasped ***because of other characteristics***, such as them being "generally straight," form "a triangle," or are "co-planar."  Ex. I at 2-4, Ex. J at 2, Ex. M at 2.

*Third*, Tzumi's speculation about the internal thinking of the applicants and the examiner demonstrates just how devoid of any actual disavowals or disclaimers the prosecution history is. *Generation II Orthotics Inc. v. Med. Tech. Inc.*, 263 F.3d 1356, 1365-66 (Fed. Cir. 2001) (rejecting argument that patentee "really" meant a different disclaimer that would have been needed to avoid "ensnaring the prior art" cited during prosecution).  Tzumi's conjecture about why the examiner, during prosecution of the '565 Patent, identified Pepe's circular handle portion instead of base member 22 is unsupported by anything but the guesswork of its attorneys. Motion at 5.  Tzumi bafflingly asserts that the applicants "effectively confirmed their agreement" of a length requirement by amending the claims to recite a "co-planar" requirement instead.  *Id.* at 6.  And Tzumi blatantly misquotes the Notice of Allowance for that patent, pointing to the Notice's description of ***a separate*** claim, while using ellipses to remove the discussion of the claims it challenges here.  *Id.*

*Lastly*, the examiner did not interpret any of the challenged claims to require that the specific handle lengths shown in Figs. 16-18 be read into the claims.  Motion at 13-14.  Instead, the examiner's statement that "each of the conditions shown in Figs. 16-18 is present" was further explained by the examiner to mean only that the claims were interpreted to mean "***each of*** the [] handle portions at any one time must be able to be grasped and used independently,"

and "***not*** interpreted as ***only one*** of the first, second, or third handle portions must be grasped and used individually."  Ex. M (Office Action dated September 22, 2020) at 2 (emphasis added).  In other words, the examiner was interpreting the claims to require that all three handles can be grasped, but the examiner did not apply any specific length requirement.  Moreover, as discussed above, rather than "agree" with the examiner's interpretation, the applicants submitted a Comment refusing to adopt the examiner's interpretation, and thus there is no "clear and unmistakable disavowal" of claim scope by the applicants.  *3M Innovative*, 725 F.3d at 1322.

*     *     *     *     *

Tzumi's proposed interpretation of the claims is fundamentally at odds with the overwhelming weight of claim construction precedent.  As a result, its proposed rewritten claims are contrary to other claims that depend from the asserted claims, as well as the embodiments in the specification that would be excluded.  The proposed construction is also contrary to the prosecution histories, where the applicants and examiner clearly treated claims with the length limitation differently.  Tzumi's proposed construction should be rejected and, because the Motion admittedly rests on the Court adopting that construction, it should be denied.

### C.    Factual Disputes Preclude Summary Judgment Even If Tzumi's Proposed Construction Were Adopted

Even if Tzumi's "interpretation" of the claims were to be adopted, disputed issues of fact would still remain as to whether the accused products infringe the claims.  Tzumi has the burden to show that there is no triable issue of fact.  It did not even attempt to do so.  The only "analysis" of alleged infringement in the Motion consists of a single picture followed by a few sentences of unsupported conclusory assertions by its attorneys.  Thus, in addition to its faulty claim construction premise, Tzumi's Motion fails for disputed factual reasons as well.

21

### 1.   Tzumi's Proposed Construction Raises Multiple Unanswered Questions of Fact

If, notwithstanding the overwhelming weight of contrary evidence, Tzumi's proposed interpretation were adopted, the finder of fact would then be required to determine whether all three handles of each accused product are "of a length sufficient for a person with a large hand to firmly and comfortably grip each handle portion with at least three to four fingers extending through the opening."  Motion at 11.  Any such determination involves answering numerous factual questions about the accused products that underlie the infringement analysis.

No discovery has been conducted on these questions.  No expert has opined on them.  Tzumi's motion submits no documentation or testimony about the accused products, much less evidence sufficient to meet its burden of establishing that no reasonable inference could be drawn that they infringe.  The only evidence before the Court are photographs and (according to Tzumi's declaration) samples of the two accused products.  *See* Stimpson Decl. ¶¶ 4, 5.

Tzumi's purported infringement analysis consists of one page—most of which is taken up by a picture of a person "grasping" one handle of one accused product.  Motion at 14.[6]  From this single photograph, Tzumi makes the conclusory assertion that "[c]learly it is not possible for a person with a large hand to grasp this section of the Tzumi product comfortably, or firmly, or with three to four fingers."  *Id.*  ***That is the extent of Tzumi's non-infringement analysis***.  It provides no dimensions of the accused products, and no analysis about what dimensions would be sufficient to allow those fingers to extend through the opening or whether the accused products' handles meet those dimensions.  This is plainly insufficient as a matter of law. *Pitney Bowes*, 182 F.3d at 1304.

---

[6] Tzumi's Motion argues that this handle is actually "a base member transition," not a handle (Motion at 3), suggesting it is incorporating some unstated construction of "handle" into its analysis as well.

### 2.      Facts in the Record Preclude Summary Judgment

Tzumi's cursory non-infringement analysis also ignores evidence in its possession that shows that all three handles of the accused FitRx Pro and Profit elite *can* be gripped by three fingers.  For example, Therabody's infringement contentions show a hand gripping the third handle portion with three fingers extending through the opening:

 

Ex. V (Therabody Infringement Contentions Claim Chart) at 6, 14.

The "evidence" submitted by Tzumi is not to the contrary.  Tzumi's pictures confirm that the handles of the accused products can be gripped by, at least, one finger, but they do nothing to prove that the handles *cannot* be gripped by three fingers.  And "viewing the alleged facts in the light most favorable" to Therabody, as the Court must do, precludes answering that question in Tzumi's favor on summary judgment.  *Pitney Bowes,* 182 F.3d at 1304.

Tzumi's conclusory attorney analysis and disregard for contrary evidence does not come close to meeting its burden of demonstrating "the absence of a genuine issue of material fact" as to whether the accused products meet the limitations of the asserted claims, even under Tzumi's argued interpretation of those claims.  *Celotex Corp.*, 477 U.S. at 325.  The dearth of factual record before the Court, and the requirement that all ambiguities are to be resolved in Therabody's favor as the non-moving party, require denial of summary judgment.

### 3. Tzumi's Motion Improperly Compares Pictures of Its Products to Figures from the Prior Art and Asserted Patents.

Tzumi's motion is replete with facial comparisons of its own accused products with either *images* from the asserted patents, or images from the *prior art*.  *See, e.g.,* Motion at 1, 2, 5-8, 14, 16-17.  Both are improper and cannot serve as evidence for summary judgment.

"[I]nfringement is to be determined by comparing the asserted claim to the accused device, *not by comparing the accused device to the figures of the asserted patent*."  *Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277, 1286 (Fed. Cir. 2002) (emphasis added).  *See also Zenith Lab'ys, Inc. v. Bristol-Myers Squibb Co.*, 19 F.3d 1418, 1423 (Fed. Cir. 1994) ("the only proper comparison is with the claims of the patent").  And the Federal Circuit has been "unequivocally clear" that "there is no 'practicing the prior art' defense to literal infringement."  *Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*, 279 F.3d 1357, 1365 (Fed. Cir. 2002) (discussing *Baxter Healthcare Corp. v. Spectramed, Inc.*, 49 F.3d 1575, 1583 (Fed. Cir. 1995)).  Infringement "is determined by construing the claims and comparing them to the accused device, not by comparing the accused device to the prior art."  *Id.* at 1366.

Tzumi's mischaracterizations of these figures, which are factually incorrect for the reasons discussed in connection with its misguided claim construction proposal, are not sound analysis of whether the accused products infringe the asserted claims and should be disregarded.

### 4. Tzumi's Failure to Address Infringement Under the Doctrine of Equivalents Also Precludes Summary Judgment.

Tzumi's Motion attempts to evade the question of whether the accused products would infringe the asserted claims under the doctrine of equivalents.  Tzumi does so because equivalence is an intensely factual question.  *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1312 (Fed. Cir. 2009).  Tzumi attempts to sidestep this factual inquiry by arguing that Therabody should be precluded from relying on the doctrine of equivalents,

purportedly because "the grasping limitation was added to the claims" and "the applicants distinguished numerous prior art handles because they were not grasping handles."  Motion at 15-16.  It then attempts to invoke *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722 (2002) (claim amendments) and *Conoco, Inc. v. Energy & Envtl. Int'l, L.C.*, 460 F.3d 1349, 1364 (Fed. Cir. 2006) (arguments) to preclude reliance on the doctrine of equivalents.  *Id*.

Once again, these conclusory assertions are both factually wrong and legally insufficient. As discussed at length in Section II.B, the claims were amended to add limitations that had nothing to do with the length of the handles—the claims were amended to specify that the handles were "generally straight," "co-planar," or formed a "triangle"— to overcome prior art. Some of the amendments did not add terms related to "grasping" at all.  Similarly, the applicants never attempted to distinguish prior art based on the length of the handles, but instead based on the prior art references' failure to disclose that various elements were used as handles at all.[7]

Tzumi's estoppel theories are inapplicable, and the remaining questions of fact under the doctrine of equivalents are another reason summary judgment is improper.

**V.   CONCLUSION**

For the foregoing reasons, the Court should deny Defendants' Motion for Partial Summary Judgment of Non-Infringement.

---

[7] Tzumi's cited district court cases are wholly inapposite.  The analysis Tzumi quotes from the court in *Linex Techs., Inc. v. Hewlett-Packard Co.* concerned literal infringement, not the doctrine of equivalency.  No. C 13-159 CW, 2014 U.S. Dist. LEXIS 73320, at *49 (N.D. Cal. May 20, 2014).  *International Research & Development Corp. v. Matson Navigation Co.*, did not involve either amendment- or argument-estoppel, is devoid of any legal analysis, predates *Festo* by 30 years, and the entirety of any colorable "doctrine of equivalency" discussion is limited to the perfunctory finding of fact.  See No. C-50297 SC, 1972 U.S. Dist. LEXIS 11984, at *7 (N.D. Cal. Sep. 14, 1972).

DATED:         August 5, 2022          Respectfully submitted,

                               */s/ Brett J. Williamson*

**O'MELVENY & MYERS LLP**

Brett J. Williamson
Marc J. Pensabene
Laura Bayne Gore
Times Square Tower, 7 Times Square
New York, New York 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
bwilliamson@omm.com
mpensabene@omm.com
lgore@omm.com

Cameron W. Westin (*pro hac vice* pending)
Thomas McClinton Harris (*pro hac vice* pending)
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
Telephone: (949) 823-6900
Facsimile: (949) 923-6994
cwestin@omm.com
clintharris@omm.com

*Attorneys for Plaintiff Therabody, Inc.*

26

**CERTIFICATE OF SERVICE**

The undersigned certifies that on this 5th day of August, 2022, a copy of the foregoing

was served by electronic mail as follows:

Katherine Marguerite Lieb
Scott David Stimpson
Steven Ze'Ev Luksenberg
Sills Cummis & Gross, P.C.
101 Park Avenue, 28th Floor
New York, NY 10178
212-643-7000
Fax: 212-543-6500
klieb@sillscummis.com
sstimpson@sillscummis.com
sluksenberg@sillscummis.com

*/s/ Brett J. Williamson*