USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__12/19/2022__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X
                                     :     21-CV-7803 (PGG) (RWL)

THERABODY, INC.,                :

                         :

              Plaintiff,    :    **REPORT AND RECOMMENDATION**

                         :    **TO HON. PAUL G. GARDEPHE:**

      - against -        :    <u>**MOTION TO DISMISS**</u>

                         :

TZUMI ELECTRONICS LLC, et al.,  :

                         :

            Defendants.    :

-------------------------------------------------------------X

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

      Plaintiff Therabody, Inc. ("Therabody")[1] alleges that Defendants Tzumi Electronics LLC, Tzumi Inc., and Does 1-10 ("Tzumi" or "Defendants") infringe fourteen utility and design patents directed to percussive massage devices and their attachments.  Tzumi now moves to dismiss claims of willful infringement of eight of those fourteen patents alleged in Therabody's Second Amended Complaint ("SAC," Dkt. 53).  The motion has been referred to me for a report and recommendation.  (Dkt. 91.)  For the reasons that follow, I recommend that Tzumi's motion be DENIED.

**BACKGROUND**[2]

      Therabody develops, manufactures, and sells "innovative percussive therapy devices and attachments."  (SAC ¶ 11.)  Its patented and patent-pending devices have "received industry praise and recognition," including the 2019 A' Design Award for Digital

---

[1] Plaintiff changed its name from Theragun, Inc. to Therabody, Inc. as of October 1, 2021. (Dkt. 53 at 1, n.1.)

[2] The facts are drawn from Therabody's Second Amended Complaint ("SAC") at Dkt. 53. As required on a motion to dismiss, the Court accepts all well-pled factual allegations as true and draws all reasonable inferences in Therabody's favor as the nonmoving party.

and Electronic Devices."  (SAC ¶ 33.)  Therabody lists the patents covering its products on its website.  (*See* SAC ¶¶ 56, 71, 86, 97, 108, 119, 130, 141, 153, 167, 178, 189, 204, 219.)

Tzumi competes with Therabody in the percussive massage device industry.  (SAC ¶ 34.)  Therabody claims that Tzumi has infringed fourteen of Therabody's patents, and that it has done so willfully.  On April 12, 2021, before Therabody filed suit, Therabody sent a letter to Tzumi claiming that several of its products infringed six of Therabody's patents ("the April 2021 Letter Patents"),[3] and demanding that Tzumi discontinue its manufacture, sale, use, and importation of the allegedly infringing products.  (SAC ¶ 38.) Tzumi did not respond to the April 2021 Letter and continued to sell the accused products. (SAC ¶¶ 39-40.)

Therabody commenced this action on September 17, 2021.  (Dkt. 1.)  In addition to the April 2021 Letter Patents, Therabody alleged that Tzumi infringed two more patents, U.S. Patents 10,702,448 and 10,918,565 (the "Original Complaint Patents"), through its manufacture and sale of two percussive massage devices and four attachments.  (Dkt. 1 ¶¶ 26-28.)

On November 23, 2021, Therabody filed its First Amendment Complaint.  (Dkt. 19.)  In addition to the April 2021 Letter Patents and the Original Complaint Patents, Therabody alleged that Tzumi infringed four additional patents: U.S. Patents 10,557,490; 11,160,723; D837,636; and D918,404 ("the Amended Complaint Patents"), and alleged infringement through manufacture and sale of an additional percussive massage device

---

[3] The April Letter Patents are U.S Patents 10,945,915; D849,261; D861,182; D890,943; D896,393; and D845,500.

and a connector.  (Dkt. 19 ¶¶ 32-35.)

On March 29, 2022, Therabody's counsel sent an email to Tzumi's counsel ("the Pre-SAC Email") informing Tzumi of Therabody's alleged infringement of two more patents: U.S. Patents 10,857,064 and 11,160,722 ("the SAC Patents").  (SAC ¶¶ 198-99, 204, 213-14, 219).  On May 9, 2022, Therabody filed its SAC.  The SAC alleged Tzumi's infringement of the six April 2021 Letter Patents, the two additional Original Complaint Patents, the four additional Amended Complaint patents, and the two additional Pre-SAC Email Patents.  Therabody also alleged an additional infringing device made and sold by Tzumi.  (SAC ¶¶ 34-37.)  Tzumi continues to sell the devices accused of infringement in the SAC.  (SAC ¶ 40.)

With respect to each of the patents-in-suit, Therabody claims willful infringement and alleges: "Defendants' acts of infringement, including their continued sales of the Infringing Products after notice of their infringement through Therabody's April 21, 2021 letter, the service of the original and amended complaints, and Therabody's marking of its products via its website at https://www.therabody.com/us/en-us/patents.html, have been, and continue to be, willful and deliberate and therefore warrant the award of attorneys' fees pursuant to 35 U.S. § 285 and the award of enhanced damages pursuant to 35 U.S.C. § 284."  (SAC ¶¶ 56, 71, 86, 97, 108, 119, 130, 141, 153, 167, 178, 189, 204, 219.)

On June 13, 2022, Tzumi filed the instant partial motion to dismiss allegations of willful infringement with respect to eight of the fourteen patents-in-suit (the "Subject Patents").  (Dkts. 84-85.)  Specifically, Tzumi challenges Therabody's allegations that Tzumi willfully infringed the two patents identified for the first time in the Original

Complaint, the four additional patents included in the Amended Complaint, and the two additional patents identified in the Pre-SAC Email.  Tzumi does not seek dismissal of the willfulness allegations made with respect to the six patents asserted in the April 2021 Letter.  Therabody filed its opposing brief on August 26, 2022.  (Dkt. 86.)  Tzumi filed its reply on September 19, 2022, at which point the motion was fully briefed.  (Dkt. 87.)  The Court heard oral argument on November 16, 2022.

## LEGAL STANDARDS

### A.   Motion To Dismiss

Under Rule 12(b)(6), a pleading may be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974 (2007).  A claim is facially plausible when the factual content pled allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009).

"Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. at 1966).  In considering a motion to dismiss, a district court "accept[s] all factual claims in the complaint as true, and draw[s] all reasonable inferences in the plaintiff's favor."  *Lotes Co. v. Hon Hai Precision Industry Co.*, 753 F.3d 395, 403 (2d Cir. 2014).  However, this tenet is "inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949.

"[R]ather, the complaint's factual allegations must be enough to raise a right to relief above the speculative level … i.e., enough to make the claim plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (internal quotation marks and brackets omitted). Further, a complaint is properly dismissed where, as a matter of law, "the allegations in [the] complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558, 127 S. Ct. at 1966.

For the purposes of considering a motion to dismiss pursuant to Rule 12(b)(6), a court generally is confined to the facts alleged in the complaint. *See Cortec Industries v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991). A court may, however, consider additional materials, including documents attached to the complaint, documents incorporated into the complaint by reference, public records, and documents that the plaintiff either possessed or knew about, and relied upon, in bringing the suit. *See Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013) (quoting *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). In that regard, if "a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true." *Poindexter v. EMI Record Group Inc.*, No. 11-CV-559, 2012 WL 1027639, at *2 (S.D.N.Y. March 27, 2012) (quoting *Barnum v. Millbrook Care Ltd. Partnership*, 850 F. Supp. 1227, 1232-33 (S.D.N.Y.1994)).

**B.    Willful Infringement And Enhanced Damages**

If a patent infringement plaintiff is awarded damages, "the court may increase the damages up to three times the amount found or assessed" by the jury or court. 35 U.S.C. § 284. "[P]unitive or increased damages" can be recovered under this statute "in a case

of willful or bad-faith infringement." *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 579 U.S. 93, 100, 136 S. Ct. 1923, 1930 (2016) (internal quotation marks omitted). Enhanced damages under § 284 are warranted only where conduct is "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or – indeed – characteristic of a pirate;" in other words, "such damages are generally reserved for egregious cases of culpable behavior." *Id.*, 579 U.S. at 104-05, 136 S.Ct. at 1932.

The law of willful infringement has evolved during the last couple decades. In *Halo Electronics*, the Supreme Court rejected the Federal Circuit's test for willful infringement established in *In re Seagate Technology, LLC*, 497 F.3d 1360 (2007) (en banc). Under the *Seagate* test, the patent owner had to "first 'show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent,'" and next show "again by clear and convincing evidence, that the risk of infringement 'was either known or so obvious that it should have been known to the accused infringer.'" *Halo Electronics*, 579 U.S. at 97, 136 S.Ct. at 1928 (quoting *Seagate*, 497 F. 3d at 1371). The Supreme Court repudiated *Seagate*'s two-part inquiry as "unduly rigid, and [] impermissibly encumber[ing] the statutory grant of discretion to district courts," particularly because it "require[d] a finding of objective recklessness in every case before district courts may award enhanced damages." *Halo Electronics*, 579 U.S. at 104, 136 S.Ct. at 1932 (internal quotations and citation omitted). The Court instructed that "culpability" for willful infringement should be measured subjectively, i.e. "measured against the knowledge of the actor at the time of the challenged conduct," rather than objectively, and should be "governed by a preponderance of the evidence standard." *Id.*, 579 U.S. at 105-07, 136 S.Ct. at 1933-34

6

(internal quotations and citation omitted).  In sum, "the subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless."  *Id.*, 579 U.S. at 105, 136 S.Ct. at 1933.

After *Halo Electronics*, "[t]o establish willfulness, the patentee must show the accused infringer had a specific intent to infringe at the time of the challenged conduct." *Bayer HealthCare LLC v. Baxalta Inc.*, 989 F.3d 964, 987 (Fed. Cir. 2021).  "Knowledge of the asserted patent and evidence of infringement is necessary, but not sufficient, for a finding of willfulness. Rather, willfulness requires deliberate or intentional infringement." *Id.*, 989 F.3d at 988.  A defendant's continuation of allegedly infringing activity after receiving an explanation of how their activity infringes the patent-in-suit is enough to plausibly allege deliberate or intentional infringement.  *See Berall v. Pentax of America, Inc.*, No. 10-CV-5777, 2021 WL 3934200, at *9-10 (S.D.N.Y. Sept. 2, 2021) (holding that deliberate infringement was adequately plead by alleging that defendant continued to manufacture the accused product despite being aware of the patent and defendant's alleged infringement of it); *APS Technology, Inc. v. Vertex Downhole*, Inc., No. CV 19-1166, 2020 WL 4346700, at *8 (D. Del. July 29, 2020) ("Plaintiff has plausibly alleged that Defendants continued their purported infringement after receiving a letter from Plaintiff outlining how Defendants infringed the [patent-in-suit], and a plausible inference from the continued activity is that it was intentional or deliberate").

Once a finding of willful infringement has been made, courts determine whether to enhance damages and, if so, how much, based on "considerations of egregious behavior and punishment."  *Eko Brands, LLC v. Adrian Rivera Maynez Enterprises, Inc.*, 946 F.3d

1367, 1378 (Fed. Cir. 2020); *accord Berall*, 2021 WL 3934200, at *10; *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341-42 (Fed. Cir. 2016) ("We do not interpret *Halo* as changing the established law that the factual components of the willfulness question should be resolved by the jury," while "[t]he district court has the discretion to decide whether the case is sufficiently egregious to warrant enhancing damages and to decide the amount of enhancement that is warranted").  As the Supreme Court cautioned in *Halo*, "none of this [opinion] is to say that enhanced damages must follow a finding of egregious misconduct.  As with any exercise of discretion, courts should continue to take into account the particular circumstances of each case in deciding whether to award damages, and in what amount."  579 U.S. at 106, 136 S. Ct. at 1933.  Courts typically, but are not required to, consider the factors set forth in *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 827 (Fed. Cir. 1992) to determine whether and by what amount to enhance damages after a factual finding of willful infringement; but, in any case a district court must explain its basis for an enhanced damages award.[4]  *See*, *e.g.*, *Polara Engineering Inc. v.*

---

[4] The *Read* factors are:

(1) whether the infringer deliberately copied the ideas or design of another;
(2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed;
(3) the infringer's behavior as a party to the litigation;
(4) Defendant's size and financial condition;
(5) Closeness of the case;
(6) Duration of defendant's misconduct;
(7) Remedial action by the defendant;
(8) Defendant's motivation for harm; and
(9) Whether defendant attempted to conceal its misconduct.

*See Read*, 970 F.2d at 827; *accord Transclean Corp. v. Bridgewood Services, Inc.*, 290 F.3d 1364, 1377-78 (Fed. Cir. 2002).

*Campbell Co.*, 894 F.3d 1339, 1355 (Fed. Cir. 2018); *Presidio Components, Inc. v. American Technical Ceramics Corp.*, 875 F.3d 1369, 1382 (Fed. Cir. 2017); *Georgetown Rail Equipment v. Holland L.P.*, 867 F.3d 1229, 1244 (Fed. Cir. 2017).

## DISCUSSION

Tzumi seeks dismissal of allegations of willful infringement of the Subject Patents for two reasons.  The Court first considers Tzumi's argument that dismissal is warranted because Therabody has not pled "egregious" conduct that would support enhancing damages.  That argument is unavailing as will be discussed.  The Court next considers Tzumi's argument that dismissal is appropriate because Therabody has not adequately pled Tzumi's "pre-suit" knowledge of the Subject Patents.  While the Court agrees that Therabody has not plausibly pled Tzumi's knowledge of the Subject Patents prior to the filing of Therabody's Original Complaint, it finds that Therabody has adequately pled Tzumi's knowledge and willful infringement of the Subject Patents prior to the filing of the SAC.  Whether characterized as "pre-suit" or "post-suit," those allegations are sufficient to support Therabody's willfulness claims.

## A.   Therabody Need Not Plead Additional "Egregious" Conduct To Survive A Motion To Dismiss

Tzumi claims that Therabody's allegations for willful infringement should be dismissed because "Therabody has failed to sufficiently plead willful conduct" and, rather than raise claims involving "egregious" misconduct that warrants enhanced damages, the SAC raises claims only of a "garden-variety" patent case. (Def. Mem. at 7-8.[5]) Therabody

---

[5] "Def. Mem." refers to Tzumi's Memorandum of Law In Support Of Partial Motion To Dismiss Certain Willfulness Claims From The Second Amended Complaint Pursuant To Fed. R. Civ. P. 12(b)(6) at Dkt. 85.

counters that a plaintiff need not plead facts sufficient to prove that conduct is "egregious" in addition to merely "deliberate or intentional" because egregiousness is only relevant after the factfinder has found willful infringement.  (Pl. Mem. at 10-11.[6])  Therabody is correct.

As an initial matter, Tzumi's reply brief does not respond to Therabody's argument in opposition to this point, rendering it abandoned.  *See In re Hoti Enterprises, L.P.*, Nos. 10-24129, 13-CV-3638, 2014 WL 1244779, at *4 (S.D.N.Y. Mar. 26, 2014) ("Dedvukaj does not address GECMC's response in his reply and is therefore deemed to have abandoned this argument") (collecting cases), *aff'd*, 605 F. App'x 67 (2d Cir. 2015); *Guzman v. Macy's Retail Holdings, Inc.*, No. 09-CV-4472, 2010 WL 1222044, at *8 (S.D.N.Y. March 29, 2010) ("failure to adequately brief an argument constitutes waiver of that argument at [the] motion to dismiss stage") (internal quotation marks and citation omitted).  Indeed, if Tzumi's argument were worthy of defense, one would expect Tzumi to have made it with respect to all fourteen patents as the SAC makes no distinction between the nature of Tzumi's conduct alleged in regard to each patent.  Tzumi did not do so.

Even if Tzumi did not intend to abandon the argument, it is nonetheless unavailing. Courts in this District have previously held that "[i]n order to survive a motion to dismiss a claim of willful misconduct, a complaint must plausibly plead facts sufficient to support an inference that the infringement at issue is 'egregious' in addition to pleading subjective intent," *Novartis Vaccines & Diagnostics, Inc. v. Regeneron Pharmaceuticals, Inc.*, No.

---

[6] "Pl. Mem." refers to Therabody's Memorandum Of Law In Opposition To Defendants' Partial Motion To Dismiss Certain Willfulness Claims From The Second Amended Complaint at Dkt. 86.

18-CV-2434, 2018 WL 5282887, at *2 (S.D.N.Y. Oct. 24, 2018).  But that is no longer the law.  *Berall*, 2021 WL 3934200, at *4 n.6.  "Because *Eko*, 946 F.3d at 1378, makes clear that egregiousness only becomes relevant after the jury has found willfulness … alleging egregiousness is not necessary at the pleadings stage."  *Id.*; *accord Sonos, Inc. v. Google LLC*, 591 F. Supp. 3d 638, 644-45 (N.D. Cal. 2022) ("once willfulness is adequately pled, the complaint need not go further and specify the further aggravating circumstances warranting enhanced damages" because "[i]t would be unreasonable to expect patent plaintiffs to be in a position to plead the full extent of egregious misconduct" (emphasis omitted)); *IOENGINE, LLC v. PayPal Holdings, Inc.*, No. CV 18-452, 2019 WL 330515, at *7 (D. Del. Jan. 25, 2019) ("there is no requirement that the plaintiff plead additional facts, beyond knowledge of the patent or patents, in order for a claim of willful infringement to survive a motion to dismiss"); *Välinge Innovation AB v. Halstead New England Corp.*, No. CV 16-1082, 2018 WL 2411218, at *6-9 (D. Del. May 29, 2018), *R. & R. adopted*, 2018 WL 11013901 (D. Del. Nov. 6, 2018) (detailing why, post-*Halo Electronics*, "'egregiousness' should not be a part of the calculus for determining whether a patentee has set out a plausible claim of willful infringement").

To survive a motion to dismiss allegations of willful infringement, a plaintiff in this District "need only 'plausibly allege that the accused infringer deliberately or intentionally infringed a patent-in-suit after obtaining knowledge of that patent and its infringement.'" *Berall*, 2021 WL 3934200, at *9 (quoting *APS Technology, Inc. v. Vertex Downhole, Inc.*, No. CV 19-1166, 2020 WL 4346700, at *4 (D. Del. July 29, 2020)).  Therabody has done

so here.[7]  (*See* SAC ¶¶ 56, 71, 86, 97, 108, 119, 130, 141, 153, 167, 178, 189, 204, 219.)
The absence of allegations of egregious conduct is not a reason to dismiss its allegations
of willful infringement.

**B.    The SAC Plausibly Pleads The Requisite Knowledge For Willful Infringement**

      Tzumi also contends that Therabody's general allegations of notice provided by
the April 2021 Letter, patent marking on its website, status of the parties as competitors,
and Therabody's recognition as an innovator in the industry are insufficient to state pre-
suit knowledge of the patents, and thus are insufficient to support its claims of willful
infringement of all but the April 2021 Letter Patents.  (Def. Mem. at 5-7; Def. Reply at 2-
6.[8])  Tzumi further argues that Therabody's allegations that Tzumi acquired knowledge of
the Subject Patents from prior pleadings in this case cannot support claims of willful

---

[7] Therabody's pleadings preceding the SAC adequately explain how Tzumi's Accused
Devices infringe the Original Complaint Patents and the Amended Complaint Patents.
(*See*, *e.g.*, Dkt. 1 ¶¶ 50-55 (describing how an Accused Device meets several specific
claim limitations of U.S. Patent No. 10,702,448), 65-70 (same for U.S. Patent No.
10,918,565); Dkt. 19 ¶¶ 141-44, 154-59, 168-70, 179-81 (same for the Amended
Complaint Patents).)  In light of similar detail in the SAC, it is plausible to infer that the
March 29, 2022 email to Defendants' counsel explained Tzumi's alleged infringement of
the SAC Patents.  (SAC ¶¶ 192-99, 207-14.)  The SAC's pleading of Tzumi's continuing
infringement even after notice of both the existence of the patents and how Tzumi's
activities allegedly infringe plausibly alleges that Tzumi's continuing infringement is
deliberate, as is necessary to state a claim for willful infringement.  *See Signify North
America Corp. v. Axis Lighting Inc.*, No. 19-CV-5516, 2020 WL 2079844, at *1 (S.D.N.Y.
April 30, 2020) (plaintiff "has stated a claim for willful patent infringement at least as of the
time it delivered a draft complaint to the defendant" which "detail[ed] [defendant's]
infringing acts on a limitation-by-limitation basis"); *Berall*, 2021 WL 3934200, at *9-10
(allegations that defendants knew of the patent-in-suit, knew of their alleged infringement,
and manufactured allegedly infringing devices anyway was "enough at the pleadings
stage" to state a claim for willful infringement).

[8] "Def. Reply" refers to Tzumi's Reply Memorandum Of Law In Further Support Of Partial
Motion To Dismiss Certain Willfulness Claims From The Second Amended Complaint
Pursuant To Fed. R. Civ. Pr. 12(b)(6) at Dkt. 87.

infringement as set forth in the SAC.  (Def. Mem. at 5; Def. Reply at 7-9.)

Therabody counters that the April 2021 Letter, patent marking, the parties' competition in the same "niche" industry, and Therabody's reputation for innovation, when considered together, allow a plausible inference that Tzumi knew of all the patents-in-suit prior to the litigation.  (Pl. Mem. at 3-7.)  Therabody argues further that the SAC alleges Tzumi's actual knowledge of all of the Subject Patents prior to the SAC by virtue of the two prior pleadings in the action and the Pre-SAC email sent to counsel prior to filing the SAC.  (Pl. Mem. at 9-10.)

The Court agrees with Tzumi that the SAC fails to plausibly plead pre-suit knowledge of all of the patents-in-suit – insofar as "pre-suit" refers to the time period before Therabody commenced the action.  The Court agrees with Therabody, however, that the SAC's allegations of Tzumi's knowledge of the Subject Patents and alleged infringement thereof based on prior pleadings and the Pre-SAC Email to counsel, and of deliberate continuing infringement after acquiring that knowledge, are sufficient to state claims of willful infringement of the Subject Patents.

### 1.  Therabody Has Not Plausibly Alleged Pre-Suit Notice Of All Patents

Willful infringement requires that the alleged infringer have knowledge of the patents-in-suit.  In some cases, evidence of knowledge can be circumstantial.  *See*, *e.g.*, *Kewazinga Corp. v. Microsoft Corp.*, 558 F. Supp.3d 90, 119 (S.D.N.Y. 2021), *reconsideration denied*, 2022 WL 4236301 (S.D.N.Y. Sept. 14, 2022); *SIMO Holdings Inc. v. Hong Kong uCloudlink Network Technology Ltd.*, 396 F. Supp.3d 323, 334 (S.D.N.Y. 2019), *modified in part*, 2019 WL 7816487 (S.D.N.Y. Dec. 11, 2019), *clarified on denial of reconsideration*, 2020 WL 498200 (S.D.N.Y. Jan. 22, 2020).  Therabody argues it has

asserted a plausible basis to establish Tzumi's pre-suit knowledge based on the following circumstantial facts: the April 2021 Letter, Tzumi's status as a competitor, industry acclaim for Therabody's devices, and Therabody's website page listing its patents.  But whether taken separately or together, those allegations are too sparse to support Therabody's allegations of pre-suit willful infringement of the Subject Patents.

The April 2021 Letter specifically identifies six patents as allegedly infringed by Tzumi.  (SAC ¶ 38.)  Some cases hold that notice of one or more of a patent owner's patents can raise a plausible inference of knowledge of other patents.  In those cases, however, notice of the unasserted patents was accompanied by other facts suggesting the defendant's knowledge of the asserted patents, such as a close family relationship between the patents, allegations of copying, and/or prior engagement between the parties in licensing of related patents.  *See, e.g.*, *Maxell, Ltd. v. VIZIO, Inc.*, No. CV 21-6758, 2022 WL 2167619, at *20 (C.D. Cal. Mar. 9, 2022) ("The Court does not find that the general infringement letters [identifying over 100 patents] would be sufficient standing alone," but the "overall allegations, which concern Defendant's participation in the parties' pre-suit course of conduct as well as Defendant's knowledge derived from prior licensing agreements, is sufficient at the pleadings stage");  *accord Kewazinga*, 558 F. Supp.3d at 119 (denying summary judgment where "[a] reasonable jury could find that Microsoft had pre-suit knowledge of the '234 patent because it knew of the '226 and '325 patents, which are in the same patent family as the '234 patent, as well as other patent applications in the same family," Microsoft had cited patents in the same family in their own patents, and an employee had testified that they were familiar with the parent patent of the patent at issue); *SIMO Holdings Inc.*, 396 F. Supp.3d at 334 (denying motion for judgment as a

matter of law because testimony that an employee of defendant was aware of the parent patent of the patent-in-suit, evidence of similarities between defendant's internal documents and the patent-in-suit, and the fact that an employee of defendant copied and brought confidential documents from the then-patent owner when changing jobs allowed a jury to reasonably reach a verdict of willful infringement).

Without additional facts suggesting knowledge of the other patents, however, notice of one patent does not provide notice of other patents, because "[t]he law does not require an investigation; the law requires actual knowledge or its equivalent." *Verint Systems Inc. v. Red Box Recorders Ltd*., No. 14-CV-5403, 2016 WL 7177844, at *2 (S.D.N.Y. Dec. 7, 2016); *accord Sonos, Inc. v. Google LLC*, 591 F. Supp.3d 638, 643 (N.D. Cal. 2022) ("Mere knowledge of a 'patent family' or the plaintiff's 'patent portfolio' is not enough"); *Longhorn Vaccines & Diagnostics, LLC v. Spectrum Solutions LLC*, 564 F. Supp. 3d 1126, 1141 (D. Utah 2021) (citation of several patents in information disclosure statement of defendant's patent did not plausibly allege defendant's knowledge of other patents); *InVue Security Products Inc. v. Mobile Tech, Inc.*, No. 3:19-CV-407, 2019 WL 5295464, at *4 (D. Or. Oct. 18, 2019) ("knowledge of other similar patents [does not] necessarily imply actual knowledge of the patent-in-suit"); *Software Research Inc. v. Dynatrace LLC*, 316 F. Supp.3d 1112, 1134–35 (N.D. Cal. 2018) ("the letters sent from [plaintiff] SRI to three different predecessors-in-interest which do not discuss the patents-in-suit, the mutual nondisclosure agreement between SRI and one of Dynatrace's predecessors-in-interest, and the various patent applications – could not amount, even in the aggregate, to a plausible basis from which [defendant] Dynatrace's pre-complaint knowledge may reasonably be inferred"); *CG Technology Development, LLC v. FanDuel,*

*Inc.*, No. 216-CV-00801, 2017 WL 58572, at *6 (D. Nev. Jan. 4, 2017) ("Plaintiffs have not sufficiently alleged willful infringement of [patents-in-suit] by reference to a pre-suit Notice Letter that did not identify them but only other patents that were 'part of a much larger portfolio'").

The SAC does not provide those additional facts. For instance, the SAC does not make any allegations, and Therabody does not advance any argument, about the family relationships between the April 2021 Letter Patents and the Subject Patents. Nor does the SAC make mention of the Subject Patents or related patents in Tzumi's own patent applications, or of prior licensing to Tzumi of the Subject Patents or related patents, or of particular employees of Tzumi demonstrating knowledge or engagement with the Subject Patents or related patents.

The fact that Therabody and Tzumi are competitors – in what Therabody refers to in its brief as a "niche" industry – also does not allow the Court to plausibly infer Tzumi's pre-suit knowledge of all of the patents-in-suit. First, Therabody's brief mischaracterizes the allegations of the SAC. While the SAC notes that Tzumi "began competing with Therabody in the percussive massage device industry by manufacturing and selling" the accused products (SAC ¶ 34), the SAC nowhere alleges facts about the size, closeness, or "niche" nature of the industry.

Unlike in the cases cited by Therabody, the Court does not have sufficient basis to infer Tzumi's knowledge of the patents-in-suit from the parties' competition in the same industry. For example, in *Noble Security, Inc. et al v. ACCO Brands Corp.*, No. 16-CV-9129, Dkt. 34 at 20-21 (S.D.N.Y March 31, 2018), the Court declined to dismiss willfulness allegations on a motion to dismiss where the operative complaint alleged that adoption of

plaintiff's technology by customers was of "great concern" to defendant, who previously enjoyed a monopoly; that defendant was aware of and monitored the patents-in-suit from application to issuance; and that the relevant market was a two-supplier market consisting of only plaintiff and defendant.   No such allegations of continuous monitoring of a burgeoning competitor and a two-player industry appear in Therabody's SAC.[9]

In *3D Systems, Inc. v. Formlabs, Inc.*, No. 13-CV-7973, 2014 WL 1904365, at *3-4, *7 (S.D.N.Y. May 12, 2014), the Court held that the complaint adequately alleged pre-suit knowledge of the patents-in-suit based on knowledge of one patent from a prior litigation; plaintiff's marking the products; the parties' competition in the "stereolithographic 3D printer market"; industry publications discussing patents covering the technology; and a statement by the defendant's co-founder that expiration of the plaintiff's patents would help defendant lower the cost of its products.   And in *Bio-Rad Laboratories, Inc. v. 10X Genomics, Inc.*, No. 19-CV-12533, 2020 WL 2079422, at *5 (D. Mass. Apr. 30, 2020), the Court held that it was "plausible that [defendant] knew of [the patents-in-suit] given their nature as competitors in a specialized market[;] previous patent litigation between [the same parties;] and access to [the patent owner's] droplet patent portfolio" through licensing of other patents, contact with one patent's named inventor, and citation of one of the parent patents of a patent-in-suit in defendant's own patent.

Again, Therabody fails to plead similar additional facts that would allow the Court to infer that the parties' status as competitors would lead to Tzumi's knowledge and intentional infringement of patents not brought to its attention in the April 2021 Letter. *See*

---

[9] According to Tzumi, the percussive massage device industry has at least 18 competitors who manufacture and/or sell such devices.   (*See* Def. Reply at 2.)

*also Välinge Innovation AB*, 2018 WL 2411218, at *2 ("even if Halstead was Välinge's competitor during that period, and even if it was well known during that time that Välinge had a substantial patent portfolio, that did not render it plausible that Halstead was aware of every patent in that large portfolio and of what it would take to infringe all of those patents"); *cf Nanosys, Inc. v. QD Vision, Inc.*, No. 16-CV-01957, 2017 WL 35511, at *2 (N.D. Cal. Jan. 4, 2017) (in the induced infringement context, "[t]hat QDV and Nanosys are the two primary players in a small market," in addition to the fact that the parties shared a founder who was a named inventor on other related patents-in-suit, "increases the likelihood that QDV had knowledge of Nanosys's patents").

Nor do Therabody's allegations of its reputation for innovation allow the Court to infer Tzumi's pre-suit knowledge of the Subject Patents. Therabody alleges that "Therabody's patented and patent-pending devices are innovative and have received industry praise and recognition, including the 2019 A' Design Award for Digital and Electronic Devices, for its Therabody G3PRO design;"[10] refers to itself as "the first company to offer its innovative percussive devices and patented attachments;"[11] and alleges that Tzumi's infringement has had a "negative effect on [Therabody's] reputation as [an] innovator and pioneer."[12] Despite the suggestion otherwise in Therabody's brief, the SAC does **not** allege whether Tzumi was, or how it would be, aware of Therabody's recognition or reputation beyond the fact that the parties' operate in the same industry, nor whether the alleged industry recognition included discussion or recognition of any of

---

[10] SAC ¶ 33.

[11] SAC ¶¶ 70, 85, 96, 107, 118, 129, 140, 152, 166, 177, 188, 203, 218; *see also* ¶ 55.

[12] SAC ¶¶ 55, 70, 85, 96, 107, 118, 129, 140, 152, 166, 177, 188, 203, 218.

the patents covering Therabody's "innovative" products.  (Pl. Mem. at 3-5.)  Therabody does not even allege which patents are practiced by its award-winning G3PRO design.

In contrast, the cases cited by Therabody include specific allegations of awareness of the *patents* covering innovative technology, along with other reasons to infer knowledge of the patents-in-suit.  *See 3D Systems, Inc.*, 2014 WL 1904365, at \*3-4 (industry publications discussing patents that covered the technology at issue and a statement by the defendant's co-founder discussing plaintiff's patents in relation to the defendant's product sufficiently pled defendant's knowledge of the patents-in-suit); *Carnegie Institute of Washington v. Pure Grown Diamonds, Inc.*, 459 F. Supp.3d 502, 508-09 (S.D.N.Y. 2020) (although a "close call," allegations that defendant could not have produced its diamonds without using plaintiff's patented process, plus the "general notoriety of [plaintiff's] patents in the relevant field," and the fact that the defendant's Chief Technical Officer was the named inventor on seven patents in the same field, stated a plausible claim for willful infringement).

Finally, Therabody's listing of its patents on one of its website pages does not allow the Court to infer Tzumi's pre-suit knowledge of the Subject Patents. *See*, *e.g.*, *Progme Corp. v. Comcast Cable Communications LLC*, No. CV 17-1488, 2017 WL 5070723, at \*12 (E.D. Pa. Nov. 3, 2017) ("[p]laintiff's reference to the [patent-in-suit] on its website is insufficient evidence that [defendant] received actual notice of the patent"); *cf. Arctic Cat Inc. v. Bombardier Recreational Products Inc.,* 950 F.3d 860, 866 (Fed. Cir. 2020) (distinguishing as separate inquiries the patentee's obligation to mark patented products on one hand, and an infringer's actual knowledge of the patent-in-suit on the other).  And although some cases cited by Therabody consider marking *products* as one of several

facts which together plead willful infringement, Therabody does not plead marking of the actual products nor sufficient other facts for the Court to infer Tzumi's pre-suit knowledge of the Subject Patents.[13]  *See Longhorn Vaccines & Diagnostics*, 564 F. Supp.3d at 1136 ("Although courts have found patent markings supportive of such an inference in some cases, they have generally done so only when plaintiffs alleged additional facts indicating that the alleged infringer had knowledge of the patents").

The sum of Therabody's allegations of Tzumi's knowledge of the Subject Patents in the pre-suit period is that Therabody and Tzumi competed in the same industry, Therabody received some industry recognition for the innovative nature of its products, Therabody listed its patents on its website, and Therabody sent a letter bringing certain patents, but not the Subject Patents, to Tzumi's attention.  While it is plausible to infer Tzumi was aware of Therabody's **products** by virtue of their competition, the SAC falls short of the combination of circumstances that courts have found sufficient to "nudge[] their claims" of willful infringement of the Subject Patents in the pre-suit period "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570, 127 S.Ct. at 1974; *accord Atmos Nation, LLC v. BnB Enterprise, LLC*, No. 16-62083-CIV, 2017 WL 5004844, at *2 (S.D. Fla. Aug. 22, 2017) ("Simply because Atmos is successful and well-known in the industry and Defendant purchased Plaintiffs' products for resale prior to the alleged infringement, does not mean that Defendant had knowledge of Plaintiffs' patents").

---

[13] To be clear, the Court does not conclude that identifying patents on a company website cannot contribute to the knowledge required for willfulness (such as, for example, if there were allegations that the defendant had visited the website).  Rather, the Court finds that Therabody's website listing and the other alleged indicia of knowledge together do not sufficiently plead the requisite knowledge in this case.

Because "the law requires actual knowledge or its equivalent" to state a claim for willful infringement, the Court finds that the SAC does not state a claim for willful infringement of the Subject Patents prior to the commencement of this litigation.[14] *Verint Systems Inc.*, 2016 WL 7177844 at *2.

### 2. Therabody Has Plausibly Alleged Willful Infringement Of The Subject Patents Based On Post-Suit Knowledge And Conduct

In addition to the circumstantial evidence of Tzumi's subjectively willful infringement described above, Therabody also argues that its pleadings preceding the SAC, together with the Pre-SAC Email to Tzumi's counsel prior to filing the SAC, provided Tzumi notice and knowledge of all of the patents-in-suit. (Pl. Mem. at 7-10.) Tzumi argues that events following Therabody's initial filing of this lawsuit, particularly Therabody's filing of amended pleadings, "should [not] count toward the requisite knowledge" required for a finding of willfulness. (Def. Reply at 7.) The Court disagrees.

In 2017, the Federal Circuit held, in contrast to the bright-line rule previously applied by varied district courts, that a plaintiff can state a claim for willfulness based on

---

[14] The Court in *Verint Systems* distinguished between facts like those alleged for the pre-suit period in Therabody's SAC and facts that would provide circumstantial evidence allowing an inference of pre-suit knowledge of patents-in-suit as follows:

> Collectively, the evidence does not raise an inference as to any particular attention paid to the patent applications that later issued as the '324, '386, and '763 Patents, it does not raise an inference as to a "waiting and watching" the specific applications to see whether and when they issued, it does not even show particular attention paid to the particular inventions claimed within the patents as issued themselves. Instead, the collective evidence shows that Red Box knew that plaintiffs were competitors, had a technology portfolio, and had certain patents. According to the clear governing legal principles, that is not enough to raise a triable issue on the questions before the Court.

*Verint Systems*, 2016 WL 7177844, at *3

post-suit conduct, even if they did not move for a preliminary injunction enjoining the alleged infringement at the beginning of the case.  *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1295-96 (Fed. Cir. 2017) (district court "erred in concluding that Synopsys could not present evidence of post-filing willful infringement because Synopsys did not seek a preliminary injunction"); *accord American Technical Ceramics Corp. v. Presidio Components, Inc.*, No. 14-CV-6544, 2019 WL 2330855, at *12 (E.D.N.Y. May 31, 2019) (after *Mentor Graphics*, "Federal Circuit case law does not require a patentee to seek a preliminary injunction before seeking willfulness damages based on post-suit conduct"); *IOENGINE, LLC*, 2019 WL 330515, at *7 n.4 (interpreting *Mentor Graphics* to deny motion to dismiss allegations of post-suit willful infringement).

In the wake of *Mentor Graphics*, courts have held that the pleading standard for post-suit willful infringement is the same as that for pre-suit willful infringement; that is, the plaintiff must plausibly allege that the defendant knew of the patent-in-suit and intentionally or deliberately infringed it.  *See*, *e.g.*, *AllRounds, Inc. v. eShares, Inc.*, No. 20-CV-07083, 2021 WL 5195099, at *1 (N.D. Cal. Nov. 9, 2021) (granting motion to amend to add willfulness allegations because "[a] litigant can state a claim for post-filing willfulness. To do so, they need only plead knowledge of the patent and deliberate or intentional infringement") (internal quotation marks and citation omitted); *IOENGINE*, 2019 WL 330515, at *7 ("With respect to the allegations of post-suit willfulness, knowledge is a given and … it is not necessary for the plaintiff to plead that the defendant has engaged in some form of egregious conduct in order to avoid dismissal on the pleadings").

While neither the Supreme Court, nor Federal Circuit, nor courts in this District,

have opined directly on the issue, several other district courts have considered whether one pleading can provide the requisite knowledge for willfulness in a later amended pleading.   The results have been less than uniform, even within districts.   *See Tonal Systems, Inc. v. iFIT Inc.*, C.A. No. 20-1197, 2022 WL 951549, at *3 (D. Del. Mar. 30, 2022) (acknowledging differing holdings on the issue and collecting cases); *Merrill Manufacturing Co. v. Simmons Manufacturing Co.*, 553 F. Supp.3d 1297, 1305 (N.D. Ga. 2021) (same).

"[M]ost courts," however, hold that allegations of post-filing willful infringement in an amended complaint may support a claim for willful infringement.  *Merrill Manufacturing*, 553 F. Supp.3d at 1306; *see, e.g.*, *id.*; *Tonal Systems*, 2022 WL 951549, at *2; *Longhorn Vaccines & Diagnostics*, 564 F. Supp.3d at 1143; *Välinge Innovation AB*, 2018 WL 2411218, at *10; *Zond, Inc. v. Fujitsu Semiconductor Ltd.*, 990 F. Supp.2d 50, 58 (D. Mass. 2014); *accord Apple Inc. v. Samsung Electronics Co.*, 258 F. Supp.3d 1013, 1027 (N.D. Cal. 2017) ("post-filing conduct alone can serve as the basis of a jury's willfulness finding and an award of enhanced damages"); *T-Rex Property AB v. Regal Entertainment Group*, No. 6:16-CV-1029, 2017 WL 4229372, at *8 (E.D. Tex. Aug. 31, 2017), *R. & R. adopted*, 2017 WL 4225441 (E.D. Tex. Sept. 22, 2017) (same).

Many of those courts emphasize the Supreme Court's decision in *Halo Electronics* rejecting rigid standards in the enhanced damages analysis.  *See Välinge Innovation AB*, 2018 WL 2411218, at *10 ("Recently some courts … have held that the prior rule proscribing solely post-suit willful infringement claims (absent a filing of a motion for a preliminary injunction) should be discarded, on the ground that it does not jibe with the overall tenor of the Supreme Court's decision in *Halo*") (collecting cases); *accord Apple*

*Inc.*, 258 F. Supp.3d, at 1027 ("the Court follows the principles in *Halo* and not any bright line rules created by *Seagate* and its progeny"); *T-Rex Property AB*, 2017 WL 4229372, at *8 ("Post-*Halo*, courts in this district have deemed allegations of willful infringement based on post-complaint conduct sufficient to survive Rule 12(b)(6) scrutiny") (collecting cases).

As Therabody points out, and Tzumi does not address in reply, that approach is well-established in the context of induced infringement, in which service of an earlier complaint can provide the requisite knowledge of the asserted patent in an amended complaint. *See In re Bill of Lading Transmission and Processing System Patent Litigation*, 681 F.3d 1323, 1345 (Fed. Cir. 2012); *accord Labyrinth Optical Technologies, LLC v. Fujitsu America, Inc.,* No. CV 13-0030, 2013 WL 12126111, at *4-6 (C.D. Cal. Aug. 21, 2013). One case cited by Tzumi engages with, and rejects, this comparison, explaining that "[t]he bad state of mind [required to prove willfulness] is worse than the bad state of mind required to prove indirect infringement." *Wrinkl, Inc. v. Facebook, Inc.*, No. 20-CV-1345, 2021 WL 4477022, at *7 (D. Del. Sept. 30, 2021).

As explained in *Tonal Systems*, however, allegations of knowledge for willful infringement and allegations of knowledge for induced infringement should be treated similarly because there is "no reason why a defendant who chooses to continue engaging in an infringing act should avoid liability for willful infringement 'simply because it happened to learn of the patent in connection with a lawsuit.'" 2022 WL 951549, at *2 (quoting *Trading Technologies International Inc. v. BCG Partners, Inc.*, No. 10 C 715, 2011 WL 3946581, at *4 (N.D. Ill. Sept. 2, 2011)); *accord USC IP Partnership, L.P. v. Facebook, Inc.*, No. 6:20-CV-00555, 2021 WL 3134260, at *2 (W.D. Tex. July 23, 2021)

24

("since [Plaintiff] alleges that [Defendant] has knowledge of the asserted patent and the alleged infringement at least at the commencement of this action, the Court finds that [Plaintiff] has sufficiently alleged its post-suit indirect and willful infringement claims").

Some decisions favor Tzumi's view, holding that "an amended complaint cannot rely upon the original complaint as a basis to allege knowledge for a willful infringement claim" or more generally that pre-suit knowledge of a patent and alleged infringement is an absolute prerequisite to a claim of willful infringement. *iFIT Inc. v. Peloton Interactive, Inc.*, No. CV 21-507, 2022 WL 609605, at *2 (D. Del. Jan. 28, 2022); *accord Wrinkl, Inc.*, 2021 WL 4477022, at *7 ("while a plaintiff could file an amended complaint alleging willfulness, when there is no pre-suit knowledge, it is not sufficient merely to allege the defendant has knowledge since the filing of the original complaint and has not ceased doing whatever the infringing behavior is alleged to be"); *ZapFraud, Inc. v. Barracuda Networks, Inc.*, 528 F. Supp.3d 247, 252 (D. Del. 2021) ("the operative complaint in a lawsuit fails to state a claim for willfulness-based enhanced damages under § 284 where the defendant's alleged knowledge of the asserted patents is based solely on the content of that complaint or a prior version of the complaint filed in the same lawsuit").

The Court does not find the rationales offered by those courts to be sufficiently persuasive. For instance, one court reasoned that because "[w]illful patent infringement is the rare exception, not the rule … while a plaintiff could file an amended complaint alleging willfulness, when there is no pre-suit knowledge, it is not sufficient merely to allege the defendant has knowledge since the filing of the original complaint and has not ceased doing whatever the infringing behavior is alleged to be." *Wrinkl, Inc.*, 2021 WL 4477022, at *7. Because willful infringement depends on "[the] defendant's bad state of

mind" and "there is essentially a dearth of evidence in most cases regarding the presence or absence of post-suit willfulness because the evidence would come from the infringer and is not discoverable because of privilege … unless the pieces necessary to allege post-suit willfulness are in place before the suit is filed," a motion to dismiss willfulness based on entirely post-suit conduct should be granted as the allegations are not plausible. *Id.*, 2021 WL 4477022, at \*7 (internal citations omitted).  That justification, however, rests on the assumption that a complaint must allege more than knowledge of the patent and intentional infringement to state a claim for willful infringement, which is not the law in the Southern District.  *See* Discussion Section A, *supra*.

Several cases cited by Tzumi reasoned that "a claim for enhanced damages based on willful infringement 'must necessarily be grounded exclusively in the accused infringer's **pre-filing conduct** ... when an accused infringer's post-filing conduct is reckless, a patentee can move for a preliminary injunction.'" *Cooper Lighting, LLC v. Cordelia Lighting, Inc.*, No. 1:16-CV-2669-MHC, 2017 WL 3469535, at \*3 (N.D. Ga. Apr. 6, 2017) (quoting *Swipe Innovations, LLC v. NCR Corp.*, No. 1:13–CV–2210, 2013 WL 6080439, at \* 2 (N.D. Ga. Nov. 18, 2013)) (emphasis in original); *see also Dorman Products, Inc. v. PACCAR, Inc.*, 201 F. Supp.3d 663, 681 (E.D. Pa. 2016) ("Absent evidence of pre-filing willful infringement, a patentee who does not seek a preliminary injunction may not base a claim for willful infringement solely on the infringer's post-filing conduct").  But the Federal Circuit's clarification in *Mentor Graphics* discussed above – that a plaintiff need not move for a preliminary injunction as a precondition for alleging post-suit willfulness – renders that justification unavailing.

Tzumi also cites a number of cases holding that allegations of willfulness should

be dismissed where the defendant learned of the patents in the same complaint that is the subject of the motion to dismiss or motion for summary judgment. *See*, *e.g.*, *Kaufman v. Microsoft Corp.*, No. 16-CV-2880, 2020 WL 364136, at *4 (S.D.N.Y. Jan. 22, 2020); *Ravgen, Inc. v. Quest Diagnostics Inc.*, No. 2:21-CV-09011, 2022 WL 2047613, at *3 (C.D. Cal. Jan. 18, 2022); *Midwest Energy Emissions Corp. v. Vistra Energy Corp.*, No. CV 19-1334, 2020 WL 3316056, at *5 n. 10 (D. Del. June 18, 2020), *R. & R. adopted*, 2020 WL 8265330 (D. Del. July 15, 2020); *NetFuel, Inc. v. Cisco Systems Inc.*, No. 5:18-CV-02352, 2018 WL 4510737, at *3 (N.D. Cal. Sept. 18, 2018); *Adidas America, Inc. v. Skechers USA, Inc.*, No. 3:16-CV-1400, 2017 WL 2543811, at *4 (D. Or. June 12, 2017). Those cases, however, are of little aid in determining whether knowledge obtained by *prior pleadings* can provide the requisite knowledge to support willfulness allegations in a later *amended complaint*.[15]

Finally, Tzumi urges the Court to act as a "gatekeeper" to prevent every patent plaintiff from posing the "threat of enhanced damages [ ] simply by filing a complaint."

---

[15] Several courts have held that even a single complaint in an action can state a claim for post-suit willful infringement. *See*, *e.g.*, *BillJCo, LLC v. Apple Inc.*, 583 F. Supp.3d 769, 778 n.4 (W.D. Tex. 2022) ("[s]ome courts are content with allegations that an original complaint provides notice, but only if those allegations are recited in an amended complaint. … This approach exalts form over substances and this Court rejects it (internal quotations and citations omitted)); *IOENGINE, LLC*, 2019 WL 330515, at *4 n.1 ("The Court sees no purpose that would be served by the formality of requiring [Plaintiff] to file an amended complaint in order to be allowed to assert knowledge of the patents during the period following the filing of the original complaint"); *ZitoVault, LLC v. International Business Machines Corp.*, No. 3:16-CV-0962-M, 2018 WL 2971131, at *3 (N.D. Tex. Mar. 29, 2018) ("The Court can reasonably infer that if Defendants infringe, then they are deliberately continuing to do so despite notice in the Complaint. Accordingly, Plaintiff has stated a claim for post-suit willful infringement against both Defendants"). Because the Court finds that the prior pleadings in this case provide the requisite knowledge to state a claim of post-suit willful infringement of the Subject Patents, the Court does not opine on whether allegations of post-suit willful infringement may survive a motion to dismiss if the defendant's knowledge of the patent-in-suit came only from the operative pleading.

(Def. Reply at 9.)  But "[f]or purposes of pleading willful infringement, there appears to be little practical difference between a pre-complaint notice letter informing a defendant about a patentee's allegation of infringement and a subsequently-super[s]eded original complaint formally alleging infringement. Such a pre-suit letter," like the April 2021 Letter, "provides a basis for pleading knowledge [of the patents included in that letter] in the context of a willful infringement claim."  *Clouding IP, LLC v. Amazon.com, Inc.*, No. CA 12-641, 2013 WL 2293452, at *4 (D. Del. May 24, 2013); *accord Longhorn Vaccines & Diagnostics*, 564 F. Supp.3d at 1148 ("[T]he notice of infringement provided by the initial complaint supports an inference that any continued infringement by [Defendant] since it was filed has been deliberate … Courts have generally found allegations of deliberate infringement plausible when the alleged infringer was directly confronted with accusations of infringement and decided to continue its activities anyway" whether by a pre-suit letter or a prior complaint) (collecting cases); *ICON Health & Fitness, Inc. v. Tonal Systems, Inc.*, No. CV 21-652, 2022 WL 611249, at *3 n. 5 (D. Del. Feb. 7, 2022) ("the Court does not see why an original complaint, or facts relating to its receipt, must necessarily be walled off from being a relevant piece of fact evidence in a case" while notice letters are not); *see also Zond, Inc.*, 990 F. Supp.2d at 58 ("Whilst the original pleading could not have satisfied the knowledge requirement, as [Plaintiff] has amended its complaint, [Defendant's] post-complaint knowledge of the patents-in-suit and their use by [co-Defendant] properly may be inferred").  So too do the Original Complaint, First Amended Complaint, and Pre-SAC Email.

In sum, the Court finds Therabody's view more persuasive, particularly given the Federal Circuit's eschewing "rigid rule[s]" for enhanced damages in *Mentor Graphics*, 851

F.3d at 1295-96, and the Supreme Court's "eschew[ing] any rigid formula for awarding enhanced damages under § 284" in *Halo Electronics*, 579 U.S. at 107, 136 S.Ct. at 1934. Therabody's willfulness allegations with respect to the Subject Patents plausibly allege willful infringement.   While Tzumi may ultimately prevail on its infringement defenses, or Therabody may ultimately fail to prove willful conduct, or "further development of the facts of this case may reveal that it is not an 'egregious case' justifying enhanced damages," Therabody has satisfied its burden to plead willfulness at the pleading stage.   *Bobcar Media, LLC v. Aardvark Event Logistics, Inc.*, No. 16-CV-885, 2017 WL 74729, at *6 (S.D.N.Y. Jan. 4, 2017).

## CONCLUSION

For the foregoing reasons, I recommend Tzumi's motion be DENIED.   To the extent not discussed herein, the Court has considered all of Tzumi's arguments and determined them to be without merit.

## DEADLINE FOR FILING OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days to file written objections to this Report and Recommendation.   Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the Chambers of the Honorable Paul G. Gardephe, United States Courthouse, 40 Foley Square, New York, New York 10007, and to the Chambers of the undersigned, at United States Courthouse, 500 Pearl Street, New York, New York 10007.  **Failure to file timely objections will result in a waiver of the right to object and will preclude appellate review.**

Respectfully submitted,

ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated: December 19, 2022
        New York, New York

Copies transmitted to all counsel of record.