UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THERABODY, INC.,

Plaintiff,

- against -

TZUMI ELECTRONICS LLC, TZUMI INC.,
and DOES 1 THROUGH 10,

Defendants.

**MEMORANDUM
OPINION & ORDER**

21 Civ. 7803 (PGG) (RWL)

PAUL G. GARDEPHE, U.S.D.J.:

Plaintiff Therabody, Inc. brings patent infringement claims against Defendants

Tzumi Electronics LLC, Tzumi Inc., and Does 1 through 10 (collectively, "Tzumi"). Therabody

alleges that Tzumi infringed fourteen utility and design patents relating to percussive massage

devices and their attachments. (See Second Amended Complaint ("SAC") (Dkt. No. 53) ¶¶ 41-

219)

Tzumi has moved for summary judgment of non-infringement as to four

Therabody patents, and has moved to dismiss Therabody's claims of willfulness as to eight of the

fourteen Therabody patents at issue. (Dkt. Nos. 67, 84)  On  November 28, 2022, Judge

Lehrburger issued a Report and Recommendation ("R&R") recommending that Tzumi's motion

for summary judgment be denied.  (See Nov. 28, 2022 R&R (Dkt. No. 97))  On December 19,

2022, Judge Lehrburger issued an R&R recommending that Tzumi's motion to dismiss likewise

be denied.  (See Dec. 19, 2022 R&R (Dkt. No. 105))

For the reasons stated below, Tzumi's objections will be overruled, and Judge

Lehrburger's recommendations that Tzumi's motion for summary judgment and motion to

dismiss be denied will be adopted.

## BACKGROUND

I.   **FACTS**[1]

    A.   **Factual Background for Motion to Dismiss**

        Therabody "develops, manufactures, and sells 'innovative percussive therapy devices and attachments.'" (Dec. 19, 2022 R&R (Dkt. No. 105) at 1 (quoting SAC (Dkt. No. 53) ¶ 11)) "Its patented and patent-pending devices have 'received industry praise and recognition.'" (Id. (quoting SAC (Dkt. No. 53) ¶ 33)) Therabody lists its patents on its website. (Id. at 2 (citing SAC (Dkt. No. 53) ¶¶ 56, 71, 86, 97, 108, 119, 130, 141, 153, 167, 178, 189, 204, 219))

        "Tzumi competes with Therabody in the percussive massage device industry," and Therabody alleges that Tzumi has willfully infringed fourteen of Therabody's patents. (Id. (citing SAC (Dkt. No. 53) ¶ 34)) On April 21, 2021, before Therabody filed the instant action, it "sent a letter to Tzumi claiming that several of [Tzumi's] products infringed six of Therabody's patents, . . . and demanding that Tzumi discontinue its manufacture, sale, use, and importation of the allegedly infringing products." (Id. (citing SAC (Dkt. No. 53) ¶ 38)) These patents are U.S. Patents 10,945,915; D849,261; D861,182; D890,943; D896,393; and D845,500. (Id. at 2 n.3) According to Therabody, Tzumi did not respond to the letter and continued to sell the accused products. (Id. (citing SAC (Dkt. No. 53) ¶¶ 39-40))

---

[1]  Because the parties have not objected to Judge Lehrburger's factual statement in either R&R, this Court adopts it in full. See Silverman v. 3D Total Solutions, Inc., No. 18 Civ. 10231 (AT), 2020 WL 1285049, at *1 n.1 (S.D.N.Y. Mar. 18, 2020) ("Because the parties have not objected to the R&R's characterization of the background facts . . . , the Court adopts the R&R's 'Background' section and takes the facts characterized therein as true."); Hafford v. Aetna Life Ins. Co., No. 16 Civ. 4425 (VEC) (SN), 2017 WL 4083580, at *1 (S.D.N.Y. Sept. 13, 2017) ("The parties do not object to the Magistrate Judge's . . . recitation of the facts of this case, and the Court adopts them in full.").

In the September 17, 2021 Complaint, Therabody alleges that Tzumi infringed two additional patents – U.S. Patents 10,702,448 and 10,918,565 – "through [Tzumi's] manufacture and sale of two percussive massage devices and four attachments."  (Id. (citing Cmplt. (Dkt. No. 1) ¶¶ 26-28))  In the November 23, 2021 Amended Complaint, Therabody alleges that Tzumi infringed four additional patents – U.S. Patents 10,557,490; 11,160,723; D837,636; and D918,404 – "through manufacture and sale of an additional percussive massage device and a connector."  (Id. at 2-3 (citing Am. Cmplt. (Dkt. No. 19) ¶¶ 32-35))  On March 29, 2022, Therabody notified informed Tzumi that it was infringing two additional patents – U.S. Patents 10,857,064 and 11,160,722.  (Id. at 3 (citing SAC (Dkt. No. 53) ¶¶ 198-99, 204, 213-14, 219))

In the May 9, 2022 SAC, Therabody alleges Tzumi's infringement of the six patents discussed in the April 21, 2021 letter, the two additional patents alleged in the Complaint, the four additional patents alleged in the Amended Complaint, the two additional patents discussed in the March 29, 2022 email, and "an additional infringing device made and sold by Tzumi."  (Id. (citing SAC (Dkt. No. 53) ¶¶ 34-37))  According to Therabody, "Tzumi continues to sell the devices accused of infringement in the [SAC]."  (Id. (citing SAC (Dkt. No. 53) ¶ 40))

Therabody claims willful infringement and alleges, as to each patent, that

> "Defendants' acts of infringement, including their continued sales of the [i]nfringing [p]roducts after notice of their infringement through Therabody's April 21, 2021 letter, the service of the original and amended complaints, and Therabody's marking of its products via its website at https://www.therabody.com/us/en-us/patents.html, have been, and continue to be, willful and deliberate and therefore warrant the award of attorneys' fees pursuant to 35 U.S. § 285 and the award of enhanced damages pursuant to 35 U.S.C. § 284."

(Id. (quoting SAC (Dkt. No. 53) ¶¶ 56, 71, 86, 97, 108, 119, 130, 141, 153, 167, 178, 189, 204, 219))

3

Tzumi has moved to dismiss allegations of willful infringement as to the eight

patents-in-suit that are not mentioned in the April 21, 2021 letter.  These patents are U.S. Patents

10,702,448; 10,918,565; 10,557,490; 11,160,723; D837,636; D918,404; 10,857,064; and

11,160,722.  (Id. at 3-4; see also Def. 12(b)(6) Br. (Dkt. No. 85) at 5, 7)

**B.**     **Factual Background for Summary Judgment Motion**

Therabody asserts infringement of the independent claims 1 and 6 of U.S. Patent

10,702,448 ("the '448 Patent"); independent claims 1, 8, 9, 10, 14, 15, and 16 of U.S. Patent

10,918,565 ("the '556 Patent"); independent claims 1 and 16 of U.S. Patent 10,857,064 ("the

'064 Patent"); and independent claims 1, 6, 11, and 17 of U.S. Patent 11,160,722 ("the '722

Patent").  (Nov. 28, 2022 R&R (Dkt. No. 97) at 3 (citing Pltf. Resp. R. 56.1 Stmt. (Dkt. No. 71)

¶ 1))

In seeking summary judgment as to these claims, Tzumi contends that each claim

contains

> "grasping limitations" which, under [Tzumi's] proposed claim construction,
> require that "all three handles [of the percussive massage device] must be of a
> length sufficient for a person with a large hand to firmly and comfortably grip
> each handle portion with at least three to four fingers extending through the
> opening."

(Id. (quoting Def. R. 56.1 Stmt. (Dkt. No. 68) ¶ 2; Def. Sum. Jgmt. Br. (Dkt. No. 69) at 4-5, 14))

"Tzumi asserts that because its accused devices . . . cannot be so grasped, they cannot literally

infringe the asserted claims."  Moreover, "Therabody's statements and amendments during

prosecution of the patents estop it from asserting infringement under the doctrine of equivalents."

(Id. at 4 (citing Def. Sum. Jgmt. Br. (Dkt. No. 69) at 5))

Judge Lehrburger summarizes Therabody's patents, their prosecution history, and

Tzumi's accused products as follows:

4

1.      **The '448 Patent**

The '448 Patent – which Therabody applied for on November 6, 2019, and which

was issued on July 7, 2020 – "claims a 'percussive massage device and method of use.'" (Id. at

5 (quoting Def. R. 56.1 Stmt., Ex. 1 (Dkt. No. 68-1) at 15))

As originally filed, claim 1 reads as follows (with the "grasping limitations"

printed in bold):

> 1.  A method of using a percussive massage device, the method comprising the
> steps of:
>
> obtaining the percussive massage device, wherein the percussive massage device
> includes a housing that includes first, second and third handle portions that
> cooperate to define a handle opening, an electrical source, a motor positioned in
> the housing, a switch for activating the motor, and a push rod assembly
> operatively connected to the motor and configured to reciprocate in response to
> activation of the motor,
> activating the motor using the switch,
> **grasping the first handle portion,**
> **massaging a first body part,**
> **alternatively grasping the second handle portion and massaging the first**
> **body part, and**
> **alternatively grasping the third handle portion and massaging the first body**
> **part.**

(Id. at 6 (emphasis in R&R) (quoting Pltf. Resp. R. 56.1 Stmt. (Dkt. No. 71) ¶ 18; citing id., Ex.

1 (Dkt. No. 71-1) at 116))

As originally filed, claim 7 – which was later issued as claim 6 – reads as follows:

> 7.  A percussive massage device comprising:
>
> a housing,
> an electrical source,
> a motor positioned in the housing,
>  a switch for activating the motor, and
> a push rod assembly operatively connected to the motor and configured to
> reciprocate in response to activation of the motor.

(Id. (quoting Pltf. Resp. R. 56.1 Stmt., Ex. 1 (Dkt. No. 71-1) at 117))

"By a January 24, 2020 [o]ffice [a]ction, the U.S. Patent and Trademark Office

patent examiner . . . initially rejected claims 1-6, 10-11, 13-15, and 20 [of the '448 Patent] as

indefinite." (Id.)  As to claim 1, the examiner stated:

> the language set forth in lines 11-13 regarding "alternatively grasping" the second
> and third handle portions is unclear as it is not known if [Therabody] is intending
> to claim that the second and third handle portions are positively being grasped and
> providing a massage to the first body part or if this is an optional step that does
> not have to be performed.

(Id. (citing Def. R. 56.1 Stmt., Ex. 1 (Dkt. No. 68-1) at 347))  "The examiner also rejected a

number of claims as unpatentable over prior art." (Id. (citing Pltf. Resp. R. 56.1 Stmt. (Dkt. No.

71) ¶ 22; Def. R. 56.1 Stmt., Ex. 1 (Dkt. No. 68-1) at 349-60))

In an April 17, 2020 response, Therabody amended claims 1 and 7.  The additions

to claim 1 are shown bolded and underlined, and the omissions are stricken below:

> A method of using a percussive massage device, the method comprising the steps
> of:
>
> obtaining the percussive massage device, wherein the percussive massage device
> includes a housing that includes first, second and third handle portions that
> cooperate to define a handle opening, an electrical source,
> a motor positioned in the housing, a switch for activating the motor, and a push
> rod assembly operatively connected to the motor and configured to reciprocate in
> response to activation of the motor, **wherein the first handle portion defines a
> first axis, the second handle portion defines a second axis and the third
> handle portion defines a third axis, and wherein the first, second and third
> axes cooperate to form a triangle, wherein the first handle portion is
> generally straight, wherein the second handle portion is generally straight,
> and wherein the third handle portion is generally straight,**
> activating the motor using the switch,
> grasping the first handle portion,
> massaging a first body part,
> ~~alternatively~~ grasping the second handle portion and massaging the first body
> part, and
> ~~alternatively~~ grasping the third handle portion and massaging the first body part.

(Id. at 7 (emphasis and omissions in Def. R. 56.1 Stmt., Ex. 1) (quoting Pltf. Resp. R. 56.1 Stmt.

(Dkt. No. 71) ¶ 23; Def. R. 56.1 Stmt., Ex. 1 (Dkt. No. 68-1) at 239))

6

Therabody amended claim 7 – which was later issued as claim 6 – to read as follows (with the additions bolded and underlined):

> A percussive massage device comprising:  a housing**, wherein the housing includes first, second and third handle portions that cooperate to define a handle opening, wherein the first handle portion defines a first axis, the second handle portion defines a second axis and the third handle portion defines a third axis, wherein the first, second and third axes cooperate to form a triangle, wherein the first handle portion is generally straight, wherein the second handle portion is generally straight, and wherein the third handle portion is generally straight, such that a user can grasp any of the first, second or third handle portions independently to use the percussive massage device,**
> an electrical source,
> a motor positioned in the housing,
> a switch for activating the motor, and
> a push rod assembly operatively connected to the motor and configured to reciprocate in response to activation of the motor.

(Id. at 7-8 (emphasis in Def. R. 56.1 Stmt., Ex. 1) (quoting Def. R. 56.1 Stmt., Ex. 1 (Dkt. No. 68-1) at 240-41))

Tzumi says that Therabody's amendments to claims 1 and 7 (issued as claim 6) were "made 'to overcome Patent Office rejections'" and "requir[e] 'all three handles to be graspable.'"  (Id. at 8 (quoting Def. R. 56.1 Stmt. (Dkt. No. 68) ¶ 4))

In response to the examiner's obviousness findings, Therabody argued – "based on the configuration of devices described in the prior art references" – that

> "a person of ordinary skill in the art would not be motivated to modify and reconfigure the [prior art] Rix device using the teachings of [prior art patents and applications] Haas, Oberheim and Matre to arrive at [amended] claims 1 and 7" because the cited references do not disclose "separate handle portions, nor do they suggest that the alleged housings of the device can be grasped anywhere other than a single handle" and "no motivation or reasoning is provided in Rix or any of the references to modify Rix to include the claimed handle portion features and the [e]xaminer is making these modifications in hindsight based on a reading of the teachings in the present application."

(Id. (first, second, and third alterations in original) (quoting Pltf. Resp. R. 56.1 Stmt. (Dkt. No. 71) ¶¶ 24-25; Def. R. 56.1 Stmt., Ex. 1 (Dkt. No. 68-1) at 252, 254))

The examiner found Therabody's arguments persuasive.  (Id.)  In the Notice of

Allowability, the examiner states that "'[w]hile the . . . prior art references of record are related

to the claimed invention, they do not disclose, either alone or suggest in combination, the

limitations discussed above and set forth in independent claims 1 [and] 7 . . . without the use of

impermissible hindsight.'"  (Id. at 8-9 (alterations and omissions in original) (quoting Pltf. Resp.

R. 56.1 Stmt. (Dkt. No. 71) ¶ 27; id., Ex. 1 (Dkt. No. 71-1) at 125))

Accordingly, claims 1 and 7 (issued as claim 6) were approved in the following

form.  Claim 1 – with the "grasping limitations" printed in bold – reads as follows:

1. A method of using a percussive massage device, the method comprising the
steps of:

obtaining the percussive massage device, wherein the percussive massage device
includes a housing that includes first, second and third handle portions that
cooperate to define a handle opening, an electrical source, a motor positioned in
the housing, a switch for activating the motor, and a push rod assembly
operatively connected to the motor and configured to reciprocate in response to
activation of the motor, wherein the first handle portion defines a first axis, the
second handle portion defines a second axis and the third handle portion defines a
third axis, and wherein the first, second and third axes cooperate to form a
triangle, wherein the first handle portion is generally straight, wherein the second
handle portion is generally straight, and wherein the third handle portion is
generally straight,
activating the motor using the switch,
**grasping the first handle portion,**
**massaging a first body part,**
**grasping the second handle portion and massaging the first body part, and**
**grasping the third handle portion and massaging the first body part.**

(Id. at 4 (emphasis in R&R) (quoting Def. R. 56.1 Stmt., Ex. 1 (Dkt. No. 68-1) at 60))

Claim 6 – with the "grasping limitations" printed in bold – reads as follows:

6. A percussive massage device comprising:

a housing, wherein the housing includes first, second and third handle portions
that cooperate to define a handle opening, wherein the first handle portion defines
a first axis, the second handle portion defines a second axis and the third handle
portion defines a third axis, wherein the first, second and third axes cooperate to
form a triangle, wherein the first handle portion is generally straight, wherein the

8

second handle portion is generally straight, and wherein the third handle portion is
generally straight, **such that a user can grasp any of the first, second or third
handle portions independently to use the percussive massage device,**
an electrical source,
a motor positioned in the housing,
a switch for activating the motor, and
a push rod assembly operatively connected to the motor and configured to
reciprocate in response to activation of the motor.

(Id. at 5 (emphasis in R&R) (quoting Def. R. 56.1 Stmt., Ex. 1 (Dkt. No. 68-1) at 61))

### 2.   The '064 Patent

The '064 Patent – which Therabody applied for on May 7, 2020, and which was

issued on December 8, 2020 – "claims a 'percussive therapy device,'" and is a "continuation-in-

part" of the '448 Patent.  (Id. at 9 (quoting Def. R. 56.1 Stmt., Ex. 1 (Dkt. No. 68-1) at 114-15))

As originally filed, claim 1 reads:

1.  A percussive therapy device comprising:
a housing,
an electrical source,
a motor positioned in the housing,
a switch for activating the motor, and
a push rod assembly operatively connected to the motor and configured to
reciprocate in response to activation of the motor.

(Id. (quoting Pltf. Resp. R. 56.1 Stmt. (Dkt. No. 71) ¶ 30; id., Ex. 1 (Dkt. No. 71-1) at 131))

As originally filed, dependent claim 2 reads:

The percussive therapy device of claim [1] wherein the housing includes first,
second and third handle portions and a head portion that cooperate to define a
handle opening, wherein the first handle portion defines a first axis, the second
handle portion defines a second axis and the third handle portion defines a third
axis, wherein the first, second and third axes cooperate to form a triangle, wherein
the motor is positioned in the head portion of the housing, and wherein at least a
portion of the push rod assembly extends outside of the head portion.

(Id. (alteration in R&R) (quoting Pltf. Resp. R. 56.1 Stmt. (Dkt. No. 71) ¶ 31; id., Ex. 1 (Dkt. No.

71-1) at 131))

On June 17, 2020 – before examination of the '064 Patent – Therabody amended claim 2 in a preliminary amendment.  The preliminary amendment is shown below (with the additions bolded and underlined):

> The percussive therapy device of claim [1] wherein the housing includes first, second and third handle portions and a head portion that cooperate to define a handle opening, wherein the first handle portion defines a first axis, the second handle portion defines a second axis and the third handle portion defines a third axis, wherein the first, second and third axes cooperate to form a triangle, **such that a user can grasp any of the first, second or third handle portions independently to use the percussive therapy device,** wherein the motor is positioned in the head portion of the housing, and wherein at least a portion of the push rod assembly extends outside of the head portion.

(Id. at 9-10 (emphasis in Pltf. Resp. R. 56.1 Stmt., Ex. 1) (alteration in R&R) (quoting Pltf. Resp. R. 56.1 Stmt., Ex. 1 (Dkt. No. 71-1) at 136))

"In a July 28, 2020 [o]ffice [a]ction, the examiner rejected, inter alia, claim 1 of the '064 Patent [a]pplication 'as being unpatentable over Rix (7,927,259) in view of Haas (2005/0126018).'"  (Id. at 10 (quoting Pltf. Resp. R. 56.1 Stmt. (Dkt. No. 71) ¶ 33; id., Ex. 1 (Dkt. No. 71-1) at 149))

On September 1, 2020, in response to the examiner's findings, Therabody amended claim 1.  The amended claim is shown below (with additions bolded and underlined):

> A percussive therapy device comprising:
> a housing, **wherein the housing includes first, second and third handle portions and a head portion that cooperate to define a handle opening, wherein the first handle portion defines a first axis, the second handle portion defines a second axis and the third handle portion defines a third axis, wherein the first, second and third axes cooperate to form a triangle, such that a user can grasp any of the first, second or third handle portions independently to use the percussive therapy device, and wherein the motor is positioned in the head portion of the housing,**
> an electrical source,
> a motor positioned in the housing,
> a switch for activating the motor, and
> a push rod assembly operatively connected to the motor and configured to reciprocate in response to activation of the motor.

10

(Id. at 10-11 (emphasis in Def. R. 56.1 Stmt., Ex. 1) (quoting Pltf. Resp. R. 56.1 Stmt. (Dkt. No. 71) ¶ 36; Def. R. 56.1 Stmt., Ex. 1 (Dkt. No. 68-1) at 264))

Therabody also amended dependent claim 2 "to remove the language that was incorporated into claim 1." (Id. at 11 (citing Def. R. 56.1 Stmt., Ex. 1 (Dkt. No. 68-1) at 264-65))

Tzumi characterizes the amendment to claim 1 as "adding '[t]he same basic requirement' that 'required all three handles to be graspable.'" (Id. (alteration in original) (citing Def. R. 56.1 Stmt. (Dkt. No. 68) ¶¶ 4-5))

On September 18, 2020, the examiner issued a Notice of Allowability that includes the following statement:

> "when read in light of the limitations of the claimed percussive therapy
> device/method, the prior art does not disclose, either alone or in combination, a
> percussive therapy device including an electrical source, motor positioned in a
> head portion of a housing, a switch for actuation of the motor, a push rod
> assembly to reciprocate when actuated by the motor, the housing including a head
> portion and first, second, and third handle portions that define a handle opening
> and first, second, and third axes, respectively, which form a triangle such that the
> user can grasp any of the first, second, or third handle portions independently to
> use the device as set forth in independent claim 1."

(Id. (quoting Pltf. Resp. R. 56.1 Stmt. (Dkt. No. 71) ¶ 37; id., Ex. 1 (Dkt. No. 71-1) at 173))

### 3.   The '565 Patent

The '565 Patent – which Therabody applied for on July 2, 2020, and which was issued on February 16, 2021 – "claims a 'percussive massage device and method of use,'" and is a "continuation-in-part" of the '448 Patent. (Id. (quoting Def. R. 56.1 Stmt., Ex. 1 (Dkt. No. 68-1) at 64-65)) As originally filed, claim 1 reads:

1. A percussive massage device comprising:

a housing, wherein the housing includes first, second and third handle portions
that cooperate to at least partially define a handle opening, wherein the first
handle portion defines a first axis, the second handle portion defines a second axis

11

and the third handle portion defines a third axis, wherein the first handle portion is generally straight, wherein the second handle portion is generally straight, and wherein the third handle portion is generally straight, such that a user can grasp any of the first, second or third handle portions independently to use the percussive massage device,
an electrical source,
a motor positioned in the housing,
a switch for activating the motor, and
a push rod assembly operatively connected to the motor and configured to reciprocate in response to activation of the motor.

(Id. at 11-12 (quoting Pltf. Resp. R. 56.1 Stmt. (Dkt. No. 71) ¶ 39; id., Ex. 1 (Dkt. No. 71-1) at

182))

> As originally filed, dependent claim 2 reads:

The percussive massage device of claim 1 wherein the first handle portion includes a first handle portion interior edge and defines a first handle portion length, wherein the first handle portion length is long enough that when a user grasps the first handle portion with a hand at least a portion of three fingers extend through the handle opening and contact the first handle portion interior edge, wherein the second handle portion includes a second handle portion interior edge and defines a second handle portion length, wherein the second handle portion length is long enough that when a user grasps the second handle portion with a hand at least a portion of three fingers extend through the handle opening and contact the second handle portion interior edge, wherein the third handle portion includes a third handle portion interior edge and defines a third handle portion length, wherein the third handle portion length is long enough that when a user grasps the third handle portion with a hand at least a portion of three fingers extend through the handle opening and contact the third handle portion interior edge.

(Id. at 12 (quoting Pltf. Resp. R. 56.1 Stmt. (Dkt. No. 71) ¶ 41; id., Ex. 1 (Dkt. No. 71-1) at 182))

> In a September 22, 2020 office action, the examiner interpreted language in

claims 1, 4, 12, and 13 as follows:

"The claim limitation 'a user can grasp any of the first, second, or third handle portions independently to use the percussive massage device' (claim 1 line 7-8, claim 4, claim 12 line 7-8, and claim 13) is being interpreted in light of the disclosure to mean that . . . each of the first, second, or third handle portions at any one time must be able to be grasped and used independently, such as shown in Figs. 16-18, and not interpreted as only one of the first, second, or third handle portions must be grasped and used individually. In other words, the claim

limitation sets forth that each of the conditions shown in Fig. 16-18 is present in the claim and not that only at least one of [them] is present in the claim."

(Id. at 12 (quoting Def. R. 56.1 Stmt., Ex. 1 (Dkt. No. 68-1) at 300))  The examiner rejected claim 1 "'as being anticipated by Pepe (2017/0304145).'"  (Id. at 13 (quoting Def. R. 56.1 Stmt., Ex. 1 (Dkt. No. 68-1) at 301; citing Def. R. 56.1 Stmt. (Dkt. No. 68) ¶ 6))

In response to the examiner's rejection, Therabody amended claim 1 "to add the recitation 'wherein the first, second and third axes are co-planar.'"  (Id. (quoting Pltf. Resp. R. 56.1 Stmt. (Dkt. No. 71) ¶ 44; Def. R. 56.1 Stmt., Ex. 1 (Dkt. No. 68-1) at 315; citing Def. R. 56.1 Stmt. (Dkt. No. 68) ¶ 8))  Therabody argued that "the requirement for the three axes of the handle portions to be co-planar 'define[d] over Pepe' such that 'the rejection should be withdrawn.'"  (Id. (alteration in R&R) (quoting Def. R. 56.1 Stmt., Ex. 1 (Dkt. No. 68-1) at 327))

Therabody also amended dependent claim 2 to become independent claim 2.  The amended claim is shown below (with additions bolded and underlined, and omissions stricken):

> ~~The percussive massage device of claim 1~~ **A percussive massage device comprising:**
> **a housing, wherein the housing includes first, second and third handle portions that cooperate to at least partially define a handle opening, wherein the first handle portion defines a first axis, the second handle portion defines a second axis and the third handle portion defines a third axis, wherein the first handle portion is generally straight, wherein the second handle portion is generally straight, and wherein the third handle portion is generally straight, such that a user can grasp any of the first, second or third handle portions independently to use the percussive massage device,** wherein the first handle portion includes a first handle portion interior edge and defines a first handle portion length, wherein the first handle portion length is long enough that when a user grasps the first handle portion with a hand at least a portion of three fingers extend through the handle opening and contact the first handle portion interior edge, wherein the second handle portion includes a second handle portion interior edge and defines a second handle portion length, wherein the second handle portion length is long enough that when a user grasps the second handle portion with a hand at least a portion of three fingers extend through the handle opening and contact the second handle portion interior edge, wherein the third handle portion includes a third handle portion interior edge and defines a third handle portion length, wherein the third handle portion length is long enough that when a user grasps the third handle portion with a hand at least a portion of three

fingers extend through the handle opening and contact the third handle portion interior edge,
**an electrical source,**
**a motor positioned in the housing,**
**a switch for activating the motor, and**
**a push rod assembly operatively connected to the motor and configured to reciprocate in response to activation of the motor.**

(Id. at 13-14 (emphasis and omission in Def. R. 56.1 Stmt., Ex. 1) (quoting Def. R. 56.1 Stmt.,

Ex. 1 (Dkt. No. 68-1) at 315-16))

On January 8, 2021, the examiner issued a Notice of Allowability that includes

the following statement:

> "[W]hen read in light of the limitations of the claimed percussive massage device/method of use, the prior art does not disclose, either alone or suggest in combination, a percussive massage device including a housing, electrical source, motor, switch, and push rod assembly, wherein the housing: a) includes first, second, and third generally straight handle portions that define a handle opening and first, second, and third axes, respectively, which are co-planar as set forth in independent claims 1 and 7; b) the handle portions each defining interior edge and lengths which allow for a user to grasp with a hand such that three fingers extend through the handle opening and contact the respective handle portion interior edge as set forth in independent claims 2, 8, and 12; c) the first, second, and third axes cooperate to form a triangle that surrounds the handle opening as set forth in independent claim 3 and 11."

(Id. at 14-15 (alteration in Pltf. Resp. R. 56.1 Stmt.) (quoting Pltf. Resp. R. 56.1 Stmt. (Dkt. No.

71) ¶ 45; Def. R. 56.1 Stmt., Ex. 1 (Dkt. No. 68-1) at 332-33))

### 4.    The '722 Patent

The '722 Patent – which Therabody applied for on February 4, 2021, and which

was issued on November 2, 2021 – "claims a 'percussive massage device and method of use,'"

and is a "continuation-in-part" of the '565 Patent.  (Id. at 15 (quoting Def. R. 56.1 Stmt., Ex. 1

(Dkt. No. 68-1) at 189-90))

In a July 15, 2021 office action, the examiner "interpreted certain claim limitation

language similarly to the interpretation provided in regard to the '565 Patent application":

> "The claim limitation 'a user can grasp any of the first, second, or third handle
> portions independently to use the percussive massage device' (claim 1 line 5-7,
> claim 6 line 5-7, claim 11 line 10-11, and claim 17 line 10-11) is being interpreted
> in light of the disclosure to mean that each of the first, second, or third handle
> portions at any one time must be able to be grasped and used independently, such
> as shown in Figs. 16-18, and not interpreted as only one of the first, second, or
> third handle portions must be grasped and used individually.  In other words, the
> claim limitation sets forth that each of the conditions shown in Figs. 16-18 is
> present in the claim and not that only at least one of the conditions is present in
> the claim."

(Id. (quoting Def. R. 56.1 Stmt., Ex. 2 (Dkt. No. 68-2) at 34))

Following Therabody's amendments and arguments, the examiner issued a Notice

of Allowability on September 22, 2021.  (Id.)  On October 1, 2021, Therabody submitted the

following comments in response to the Notice of Allowability:

> "[T]o the extent that the [e]xaminer has characterized the claims and/or the
> invention, characterized the prior art, paraphrased claim recitations, emphasized
> certain recitations over others, or otherwise made statements or notations
> purporting to limit the scope of the allowed claims, [Therabody] respectfully
> disagrees with any and all such statements and characterizations made by the
> [e]xaminer."

(Id. at 15-16 (citing Pltf. Resp. R. 56.1 Stmt. (Dkt. No. 71) ¶ 46; id., Ex. 1 (Dkt. No. 71-1) at

187))

### 5.    Tzumi's Accused Products

Therabody asserts that "percussive massage devices sold by Tzumi" – including

Tzumi's FitRx Pro and the ProFit Elite – "infringe on the four patents described above."  (Id. at

16)  "The feature at the core of the dispute on the instant motion [for partial summary judgment] is the alleged 'second handle portion' identified by Therabody as exemplified below":



(Id. at 16-17 (citing SAC (Dkt. No. 53) ¶ 61))

"Tzumi, contends that the alleged second handle portion [on its products] is not graspable and is not a handle at all, but merely a 'transition section' that connects the two handles on the device," as shown below:



(Id. at 17 (quoting Def. R. 56.1 Stmt. (Dkt. No. 68) ¶ 3))  "According to Tzumi, the [a]ccused [p]roducts do not infringe the asserted patents because only two of the handles [on its products] are graspable."  (Id.)

## II.   **PROCEDURAL HISTORY**

The Complaint was filed on September 17, 2021 (Cmplt. (Dkt. No. 1)), and the First Amended Complaint was filed on November 23, 2021.  (First Am. Cmplt. (Dkt. No. 19)) In a December 13, 2021 letter, Tzumi requested a pre-motion conference concerning a proposed partial motion to dismiss the First Amended Complaint, pursuant to Fed. R. Civ. P. 12(b)(6).  (Dec. 13, 2021 Def. Ltr. (Dkt. No. 23))  In a December 16, 2021 letter, Therabody opposed the proposed motion.  (Dec. 16, 2021 Pltf. Ltr. (Dkt. No. 26))  At a January 6, 2022 conference (Jan. 6, 2022 Minute Entry) – at the parties' request – this Court stayed the case until February 7, 2022 to permit the parties to engage in settlement discussions.  (Jan. 6, 2022 Order (Dkt. No. 30))  At the parties' request, the Court extended the stay until February 22, 2022.  (Feb. 11, 2022 Order (Dkt. No. 35))  On February 22, 2022, the parties informed the Court that their settlement discussions had been unsuccessful.  (Feb. 22, 2022 Jt. Ltr. (Dkt. No. 36))

On March 18, 2022, Tzumi requested a pre-motion conference concerning a proposed motion for partial summary judgment.  (Mar. 18, 2022 Def. Ltr. (Dkt. No. 38))  In a March 23, 2022 letter, Therabody opposed the proposed motion.  (Mar. 23, 2022 Pltf. Ltr. (Dkt. No. 39))

On April 7, 2022, this Court referred this case to Judge Lehrburger for general pretrial supervision.  (Apr. 7, 2022 Order (Dkt. No. 43))  On April 28, 2022, Judge Lehrburger held a case management conference (Apr. 28, 2022 Minute Entry), and on April 29, 2022, Judge Lehrburger, inter alia, granted Therabody's request to file a further amended complaint, and set a briefing schedule for Tzumi's anticipated motion for partial summary judgment regarding claim construction and infringement, and its anticipated motion to dismiss Therabody's willfulness

claims.  (Apr. 29, 2022 Order (Dkt. No. 49) at 1-2)  On May 5, 2022, Judge Lehrburger entered a civil case management plan and scheduling order.  (May 5, 2022 Order (Dkt. No. 51))

The Second Amended Complaint was filed on May 9, 2022.  (SAC (Dkt. No. 53)) Tzumi filed its motion for partial summary judgment on August 23, 2022.  (Def. Sum. Jgmt. Mot. (Dkt. No. 67))  On August 29, 2022, this Court referred the motion to Judge Lehrburger for an R&R.  (Aug. 29, 2022 Order (Dkt. No. 77))  Tzumi filed its partial motion to dismiss on September 20, 2022.  (Def. 12(b)(6) Mot. (Dkt. No. 84))  On October 17, 2022, this Court referred this motion to Judge Lehrburger for an R&R.  (Oct. 17, 2022 Order (Dkt. No. 91))  On November 16, 2022, Judge Lehrburger heard oral argument concerning Tzumi's motions.  (Nov. 16, 2022 Minute Entry)

On November 28, 2022, Judge Lehrburger issued a fifty-three-page R&R recommending that Tzumi's motion for partial summary judgment be denied.  (See Nov. 28, 2022 R&R (Dkt. No. 97))  On December 12, 2022, Tzumi filed objections (Def. Obj. (Dkt. No. 104))  On December 23, 2022, Therabody filed a response (Resp. (Dkt. No. 106), and on January 4, 2023, Tzumi filed a reply.  (Reply (Dkt. No. 112))

On December 19, 2022, Judge Lehrburger issued a thirty-page R&R recommending that Tzumi's partial motion to dismiss be denied.  (See Dec. 19, 2022 R&R (Dkt. No. 105))  No party has filed objections to this R&R.

## III.   **TZUMI'S MOTION FOR SUMMARY JUDGMENT**

Judge Lehrburger provides the following background for Tzumi's motion for summary judgment:

> Therabody asserts infringement of the following claims:  independent claims 1 and 6 of [the '448 Patent]; claims 1, 8, 9, 10, 14, 15, and 16 of [the '556 Patent]; independent claims 1 and 16 of [the '064 Patent]; and independent claims 1, 6, 11, and 17 of [the '722 Patent].  According to Tzumi, all of those claims contain "grasping limitations" which, under its proposed claim construction, require that "all three handles [of the percussive

18

massage device] must be of a length sufficient for a person with a large hand to firmly and comfortably grip each handle portion with at least three to four fingers extending through the opening." Tzumi asserts that because its accused devices . . . cannot be so grasped, they cannot literally infringe the asserted claims. Tzumi also contends that Therabody's statements and amendments during prosecution of the patents estop it from asserting infringement under the doctrine of equivalents.

(Nov. 28, 2022 R&R (Dkt. No. 97) at 3-4 (citations omitted) (fifth alteration in R&R) (quoting

Def. R. 56.1 Stmt. (Dkt. No. 68) ¶ 2; Def. Sum. Jgmt. Br. (Dkt. No. 69) at 4-5, 14; citing Pltf.

Resp. R. 56.1 Stmt. (Dkt. No. 71) ¶ 1); Def. Sum. Jgmt. Br. (Dkt. No. 69) at 5); see also Def.

Sum. Jgmt. Br. (Dkt. No. 69) at 5 ("Therabody's entire theory of infringement – alleging a small

U-shaped transition is a grasping handle – is wildly inconsistent with the prosecution histories of

these patents, wherein both the patent examiner and the applicants repeatedly distinguished

numerous prior art handles as inadequate for grasping (even though all those prior art handles,

unlike the accused products, have linear sections). . . . And Therabody is estopped from arguing

infringement by equivalents, because this limitation was added by amendment, and because it

was used to distinguish prior art handles that were closer to the alleged invention."))

Therabody contends that Tzumi's summary judgment motion is premature, given

the parties' jointly proposed schedule for claim construction and other matters, which this Court

so ordered. (Pltf. Sum. Jgmt. Opp. (Dkt. No. 70) at 18-19) In opposing Tzumi's summary

judgment motion, Therabody also contends that Tzumi's claim construction is flawed, because it

is inconsistent with other claims in the asserted patents, imports limitations from the

specification into the claims, and relies on speculation regarding the prosecution history. (Id. at

20-28)

A.     **The R&R's Recommendations**

In his November 28, 2022 R&R, Judge Lehrburger recommends that Tzumi's

motion for partial summary judgment be denied. (See Nov. 28, 2022 R&R (Dkt. No. 97)) Judge

Lehrburger finds that "Tzumi's [claim] construction should be rejected because it is inconsistent with other claims in the asserted patents, imports limitations from the specification into the claims, and relies on speculation concerning the prosecution history." According to Judge Lehrburger, "construction of what the 'grasp[ing]' claims actually require [should] be decided on a more developed record and in accordance with the Court's schedule for determining claim construction." (Id. at 24-25 (first alteration in R&R))

Judge Lehrburger does not fault Tzumi for filing its motion, and acknowledges Tzumi's assertion "that resolution of the instant claim construction and infringement issue – in its favor – would resolve the case as to the [a]ccused [p]roducts that make up as much as 90 percent of the product sales at issue and would, thereby, effectively lead to complete resolution of the case." (Id. at 25 (citing Def. Sum. Jgmt. Br. (Dkt. No. 69) at 4)) But Judge Lehrburger notes that "the cases where summary judgment has been found appropriate before discovery typically are those in which the claim construction advanced by the movant was supported entirely by the intrinsic evidence (as Tzumi contends but Therabody disputes) and in which there were no factual disputes." (Id. at 27 (citing Choon's Design, LLC v. Idea Village Prods. Corp., 776 F. App'x 691, 696-97 (Fed. Cir. 2019); Innovad Inc. v. Microsoft Corp., 260 F.3d 1326, 1335 (Fed. Cir. 2001)))

Here, "Tzumi's proposed claim construction is not indisputably established by the intrinsic evidence provided. And even if the proposed claim construction were proper, Therabody emphatically does not concede facts that would compel a judgment of noninfringement under Tzumi's construction." (Id. (citing Pltf. Sum. Jgmt. Opp. (Dkt. No. 70) at 28-31; Pltf. Resp. R. 56.1 Stmt. (Dkt. No. 71) ¶¶ 1-17)) Rather, "Therabody affirmatively rejects Tzumi's claim construction, while also pointing out the existence of factual disputes even if that

claim construction were accepted." (Id. at 28) Judge Lehrburger concludes that, "[i]n such

circumstances, summary judgment should be denied." (Id. (citing Mirror Worlds Techs., LLC v.

Facebook, Inc., 800 F. App'x 901, 910 (Fed. Cir. 2020); NeuroGrafix v. Brainlab, Inc., 787 F.

App'x 710, 717 (Fed. Cir. 2019)))

      As to Tzumi's proposed claim construction, Judge Lehrburger concludes that "the

evidence presented by Tzumi – including the patent claims, their specifications, and their

prosecution histories – does not indisputably establish Tzumi's highly specific construction of

the grasping limitations." (Id. at 50) Judge Lehrburger

> approaches [his] analysis with the understanding that "grasp(ing)" is the term to
> be construed, and that Tzumi asks the Court to construe limitations in fifteen
> claims that require "grasp[able]" handles to mean that "[a]ll three handles must be
> of a length sufficient for a person with a large hand to firmly and comfortably grip
> each handle portion with at least three to four fingers extending through the
> opening."

(Id. at 29 (second, third, and fourth alterations in R&R) (citing Def. Sum. Jgmt. Br. (Dkt. No. 69)

at 14)) Although "Tzumi argues that this construction is supported by the specification and

compelled by the prosecution history," Judge Lehrburger disagrees. (Id.)

      Judge Lehrburger "finds no basis to conclude that the patentees specially defined

'grasp' to have the meaning that Tzumi's construction gives it." (Id. at 30) Judge Lehrburger

notes that

> Tzumi has not put forward any evidence that the ordinary and customary meaning
> of "grasping" a handle to a person of ordinary skill in the art would mean having a
> handle that is "of a length sufficient for a person with a large hand to firmly and
> comfortably grip each handle portion with at least three to four fingers extending
> through the opening." Nor has Tzumi submitted any industry source or dictionary
> definition that defines "grasp" or "graspable" in anything approaching the detailed
> meaning that Tzumi ascribes to the term.
>
> Nor do the patents indicate that the patentees set out any special definition of
> "graspable." To do so, the patentees would have had to "clearly set forth a
> definition of the disputed claim term other than its plain and ordinary meaning."

> None of the patents clearly define grasp or its variants to have any special definition.

(Id. at 29-30 (internal citations omitted) (citing Pltf. Resp. R. 56.1 Stmt., Ex. 1 (Dkt. No. 71-1) at 189; quoting Thorner v. Sony Comput. Ent. Am. LLC, 669 F.3d 1362, 1365 (Fed. Cir. 2012)))

Judge Lehrburger also finds that "Tzumi's proposed construction should be rejected because it would result in independent claims with a narrower scope than claims that depend from them":

> [N]one of the asserted independent claims specify the length of the handles claimed, much less define that to be grasped the handles must be "of a length sufficient for a person with a large hand to firmly and comfortably grip each handle portion with at least three to four fingers extending through the opening." In contrast, limitations describing the length of handles and how many fingers extend through the handle opening in the claimed device are set forth in a variety of dependent claims in the asserted patents. Limitations describing a "firm and comfortable grip" are entirely absent from the asserted claims.

(Id. at 30-31 (emphasis omitted)) "'Under the doctrine of claim differentiation, each claim in a patent is presumptively different in scope,'" and "[w]hile 'claim differentiation is not a hard and fast rule of construction, and cannot be relied upon to broaden claims beyond their correct scope,' the doctrine 'is clearly applicable when there is a dispute over whether a limitation found in a dependent claim should be read into an independent claim.'" (Id. at 31 (quoting Wenger Mfg., Inc. v. Coating Mach. Sys., Inc., 239 F.3d 1225, 1233 (Fed. Cir. 2001))) While Judge Lehrburger acknowledges that "the presumption of claim differentiation may be overcome by clear intrinsic evidence to the contrary," "Tzumi's construction is not clearly supported by the specification or prosecution history." Tzumi "therefore fails to overcome the presumption disfavoring a construction that renders dependent claims meaningless by virtue of a narrower independent claim." (Id. at 33)

As to the patents' specifications, Judge Lehrburger notes that "Tzumi contends that several passages from the specification common to all four patents provide 'clear and

consistent descriptions of grasping handles' that support its proposed construction."  But the language cited by Tzumi "merely describe[s] embodiments of the invention," and does not "define what length of handle and number of fingers must be involved in 'grasping' handles of the claimed devices."  (Id. at 34 (emphasis omitted) (quoting Def. Sum. Jgmt. Br. (Dkt. No. 69) at 15))

In this regard, Judge Lehrburger points out that "[t]he passages of the ['448 Patent] specification cited by Tzumi are "devoid of language, like "'the present invention includes . . ." or "the present invention is . . ." or "all embodiments of the present invention are . . . ,"' which would indicate disavowal of subject matter not encompassed by the described embodiment."  (Id. (quoting GE Lighting Sols., LLC v. AgiLight, Inc., 750 F.3d 1304, 1309 (Fed. Cir. 2014)))  Judge Lehrburger further notes that "[t]he ['448 Patent] specification does not 'require' handles that can be 'firmly and comfortably gripped with three or four fingers through the handle opening' or with certain dimensions, and it does not disparage alternative embodiments as would suggest that embodiments other than those described are not within the scope of the claims."  (Id. (citing Bayer Healthcare LLC v. Baxalta Inc., 989 F.3d 964, 974-75 (Fed. Cir. 2021); Indivior Inc. v. Dr. Reddy's Laboratories, S.A., 930 F.3d 1325, 1338 (Fed. Cir. 2019)))

Judge Lehrburger reiterates that "the ['448 Patent] specification does not 'clearly set forth a definition of the disputed claim term other than its plain and ordinary meaning' or 'clearly express an intent to redefine the term,' as needed for a patentee to 'act as its own lexicographer.'"  (Id. at 34-35 (quoting Hill-Rom Servs., Inc. v. Stryker Corp., 755 F.3d 1367, 1371 (Fed. Cir. 2014)))  "The lack of disavowal and defined lexicography counsels against Tzumi's construction."  (Id. at 35)  Judge Lehrburger adds that "[b]ecause 'it is improper to read

limitations from a preferred embodiment described in the specification . . . into the claims absent

a clear indication in the intrinsic record that the patentee intended the claims to be so limited,'

Tzumi's construction of the grasping limitations cannot be adopted." (Id. at 38 (quoting Liebel-

Flarsheim Co. v. Medrad, Inc., 358 F.3d 898, 913 (Fed. Cir. 2004)))

   As to the prosecution history, Judge Lehrburger finds that "neither the examiner's

statements nor Therabody's arguments and amendments to overcome obviousness rejections

indisputably support Tzumi's construction of the grasping limitations."  Nor do these materials

"indisputably establish Therabody's 'disavow[al] [of] the full scope of [the 'grasping'] claim

term . . . during prosecution.'"  (Id. at 39 (alterations and omission in R&R) (quoting Thorner,

669 F.3d at 1365))

   As to the examiner's interpretation of claims 1, 4, 12, and 13 of the '565 Patent,

Judge Lehrburger finds that "Tzumi overlooks the full context of the examiner's statement,"

which reads as follows:

> "The claim limitation 'a user can grasp any of the first, second, or third handle
> portions independently to use the percussive massage device' . . . is being
> interpreted in light of the disclosure to mean that each of the first, second, or third
> handle portions at any one time must be able to be grasped and used
> independently, such as shown in Figs. 16-18, and not interpreted as only one of
> the first, second, or third handle portions must be grasped and used individually.
> In other words, the claim limitation sets forth that each of the conditions shown in
> Figs. 16-18 is present in the claim and not that only at least one of the conditions
> is present in the claim."

(Id. at 39-40 (quoting Def. R. 56.1 Stmt., Ex. 1 (Dkt. No. 68-1) at 300; citing Def. R. 56.1 Stmt.,

Ex. 2 (Dkt. No. 68-2) at 34))

   Having considered the examiner's interpretation of claims 1, 4, 12, and 13 of the

'565 Patent, Judge Lehrburger notes that it

> is clear from the full context of the passage [that] the examiner's mention of "each
> of the conditions" refers only to the ability of all three handles to be grasped and

used independently, as opposed to the alternative that only at least one of the first,
second, or third handle portions could be grasped to use the device.

(Id. at 40)  And

> [n]othing in the examiner's interpretation defines what it means to grasp and use
> the device, and no part of the interpretation defines a particular length or number
> of fingers that must extend through the opening, the size of the hand that need be
> accommodated by the handle opening, or the firmness or comfort of the grip
> required in order to "grasp" and use each handle.

(Id.)

As to the claim amendments and discussions of prior art, Judge Lehrburger finds

that

> [w]hile the cited prosecution history shows that Therabody disclaimed devices
> with a single handle, it does not clearly and unmistakably define the length of the
> claimed devices' handles, the size of the hand that must be accommodated, the
> firmness and comfort of the grip, or the number of fingers needed to "grasp" each
> of the three claimed handles in the asserted claims necessary to constitute a
> disclaimer of claim scope outside of Tzumi's proposed construction.

(Id. at 41-42)  Moreover, "[t]he multiple speculative leaps of logic required by Tzumi's

arguments, springing from the examiner's and Therabody's silence, are not solid ground on

which to rest claim construction."  (Id. at 45 (collecting cases))

With respect to the '565 Patent, Judge Lehrburger finds that

> Tzumi's recitation of the examiner's reasons for allowance conflate the
> examiner's description of claims 1 and 7 (issued as claim 10) with his description
> of claims 2, 8, and 12 (issued as claims 8, 14, and 16).  The examiner
> distinguished claims 1 and 7 from the prior art on the basis of those claims having
> three generally straight, co-planar handle portions.  Separately, the examiner
> distinguished claims 2, 8, and 12 from the prior art on the basis that it does not
> disclose a percussive massage device with "the handle portions each defining
> interior edge and lengths which allow for a user to grasp with a hand such that
> three fingers extend through the handle opening and contact the respective handle
> portion interior edge."  Nothing in the examiner's explanation warrants applying
> his justification for, and interpretation of, claims 2, 8, and 12 to claim 1.
> Notwithstanding Tzumi's use of ellipses, the examiner noted limitations related to
> the length of handles and number of fingers with which a handle can be grasped
> only in reference to claims 2, 8, and 12, which, as with the doctrine of claim

25

differentiation discussed above, indicates that those limitations are not present in other claims, including asserted claim 1.

(Id. at 44 (emphasis omitted) (internal citations omitted) (citing Def. R. 56.1 Stmt., Ex. 1 (Dkt.

No. 68-1) at 332-33; Pltf. Opp. (Dkt. No. 70) at 27))

Judge Lehrburger acknowledges

that neither Therabody nor the examiner discussed the transition between the two co-planar handles of Pepe as a potential third handle. But why that is so is not clear from the prosecution history on which Tzumi relies. Tzumi asks the Court to speculate that i) the examiner did not identify the transition portion of Pepe's handles as a third grasping handle because it was too short to grasp; ii) Therabody accepted that interpretation by responding to the reason the examiner gave for rejection by adding the "co-planar" language; and iii) the examiner's allowance of the claims with the added "co-planar" limitation confirms that interpretation, because if the transition section had been long enough to be a handle, the co-planar limitation would not have distinguished the claimed invention from Pepe. Tzumi then asks the Court to conclude from this post-hoc explanation that Therabody has disclaimed devices other than those with three handles that are "of a length sufficient for a person with a large hand to firmly and comfortably grip each handle portion with at least three to four fingers extending through the opening."

(Id. at 44-45) Judge Lehrburger is not persuaded.

Judge Lehrburger also finds that Tzumi's other arguments concerning prosecution

history are "unpersuasive," and that "again, Tzumi reads more into the prosecution history than

was said." (Id. at 46-47) "During prosecution of the '448 Patent, the examiner initially rejected,

inter alia, claims 1 and 7 (issued as claim 6) as unpatentable as obvious over various

combinations of prior art references." (Id. at 47 (citing Def. R. 56.1 Stmt., Ex. 1 (Dkt. No. 68-1)

at 349-60))

The claims were [then] amended to recite additional limitations, including that the first, second, and third axes of the handle opening cooperate to form a triangle and that the three handle portions are generally straight "such that a user can grasp any of the first, second, or third handle portions independently to use the percussive massage device." These additional limitations were originally in claims 4 and 10, which were themselves rejected as obvious over Rix, Oberheim, and Matre.

(Id. (citations omitted) (citing Def. R. 56.1 Stmt., Ex. 1 (Dkt. No. 68-1) at 251-52))

26

"In response to the obviousness rejections based on those prior art references, Therabody argued that the examiner improperly 'derived his conclusion of obviousness from the teaching in [Therabody's] specification that it is advantageous to be able to grasp separate handle portions using hindsight.'" (Id. (citing Def. R. 56.1 Stmt., Ex. 1 (Dkt. No. 68-1) at 252))

> Therabody stated that: "the purpose of the first, second and third handle portions is to allow a user to grasp each of the three handle portions separately so that they can massage one or more body parts and/or use the percussive massage device in different orientations. None of Rix, Haas, Oberheim nor Matre teach, disclose or provid[e] separate handle portions, nor do they suggest that the alleged housings of the device can be grasped anywhere other than a single handle. More importantly, no motivation or reasoning is provided in Rix or any of the other references to modify Rix to include the claimed handle portion features. . . ."

(Id. at 48 (alteration and omission in R&R) (citing Def. R. 56.1 Stmt., Ex. 1 (Dkt. No. 68-1) at 254))

> Therabody notably did not argue that the alleged handle portions identified by the examiner were too short to be grasped, could not be grasped because a user could not grip the portion with three to four fingers, could not be gripped firmly and comfortably by a large hand, or the like. Therabody simply noted that the prior art only disclosed grasping a single handle and, additionally, that because Matre's three-sided handle was intended to allow the device to pivot while the user maintained a static horizontal grip, there would be no motivation to apply that handle shape to a device designed to be gripped and used in different positions without a pivot feature.

> . . . .

> Therabody [further] explained that "the Rix, Haas, Oberheim and Matre devices and housings thereof are all much longer overall than the handle openings and alleged handle portions" which "would make it awkward and unwieldy for a user to grasp the various alleged handle portions" in order to distinguish these new claims (which depend from an asserted "grasping" claim) over the prior art.

(Id. at 48-49 (emphasis omitted) (citing Def. R. 56.1 Stmt., Ex. 1 (Dkt. No. 68-1) at 257-60))

Judge Lehrburger finds that "[a]t most, this exchange appears to be a general disparagement of devices with handles that are much shorter than the device housing, or perhaps

housings that are too long in relation to handles, at least as applied to the scope of dependent claims 16 and 17," and that

> it is a far cry from defining the length of handles disclosed in other, independent claims, and farther still from defining the length as "sufficient for a person with a large hand to firmly and comfortably grip each handle portion with at least three to four fingers extending through the opening."

(Id. at 49-50)

Judge Lehrburger goes on to conclude that "Tzumi has not met its burden on summary judgment with respect to its proposed construction of the 'grasping' limitations," but he "declines to affirmatively adopt a claim construction for the disputed claim terms at this time." (Id. at 50)  Judge Lehrburger

> believes that construing terms in fifteen claims on the current record and briefing, only to potentially revise its construction, will not serve to advance the case. Moreover, Therabody has not cross-moved for summary judgment, has not indicated who it considers to be a person of ordinary skill in the art (nor has Tzumi for that matter), and has not set forth what it considers the plain meaning of the grasping limitations except for a single piece of extrinsic evidence (i.e., a dictionary definition).  Meanwhile, there is a jointly agreed and so-ordered schedule for determining claim construction.

(Id. at 51)  Judge Lehrburger "therefore recommends that claim construction occur after the issues have been fully briefed in accordance with the case management plan."  (Id.)

Because Judge Lehrburger "recommends rejecting Tzumi's claim construction and deferring construction of the grasping limitations until the record is sufficiently developed, [he] does not reach the parties' arguments regarding literal infringement and infringement by the doctrine of equivalents."  (Id. at 52)

## IV.   TZUMI'S MOTION TO DISMISS

Tzumi has also moved to dismiss Therabody's claims of willful infringement as to eight of the fourteen patents that are the subject of the SAC.  As to these eight patents, Tzumi contends that Therabody has not adequately pled willful infringement.  (Def. 12(b)(6) Br. (Dkt.

No. 85) at 5)  Tzumi's motion is directed at the two patents identified for the first time in the

Complaint; four additional patents referenced in the Amended Complaint; and two additional

patents identified in an email from Therabody's counsel to Tzumi's counsel on March 29, 2022,

prior to the filing of the SAC.  (Id. at 5-7)  As to these patents, Tzumi contends that Therabody

has not adequately pled "pre-suit" knowledge.  (Id. at 8-11)  Tzumi also contends that Therabody

pled claims that are "of a 'garden-variety' patent case," and has not pled conduct that would

support an award of enhanced damages.  (Id. at 11-12)

Therabody contends that Tzumi's motion to dismiss should be denied because (1)

it is only required to allege "deliberate or intentional" conduct at this stage, and need not show

"egregious" conduct; and (2) the pleadings and correspondence between the parties that preceded

the SAC are adequate to demonstrate Tzumi's actual knowledge of the patents at issue.  (Pltf.

12(b)(6) Opp. (Dkt. No. 86) at 8-16)

### A.    The R&R's Recommendations

In his December 19, 2022 R&R, Judge Lehrburger recommends that Tzumi's

motion to dismiss be denied.  (See Dec. 19, 2022 R&R (Dkt. No. 105))

As to Tzumi's argument regarding the need to plead conduct that warrants

enhanced damages, as opposed to Therabody's "'garden-variety' patent case," Judge Lehrburger

first notes that "Tzumi's reply brief does not respond to Therabody's argument in opposition to

this point, rendering it abandoned."  Judge Lehrburger goes on to find that, "[e]ven if Tzumi did

not intend to abandon the argument, it is nonetheless unavailing."  (Id. at 10)  In so finding,

Judge Lehrburger cites case law from this District holding that "[t]o survive a motion to dismiss

allegations of willful infringement, a plaintiff in this District 'need only "plausibly allege that the

accused infringer deliberately or intentionally infringed a patent-in-suit after obtaining

knowledge of that patent and its infringement.'"" (Id. at 11 (quoting Berall v. Pentax of Am.,
Inc., No. 10 Civ. 5777 (LAP), 2021 WL 3934200, at *9 (S.D.N.Y. Sept. 2, 2021); APS
Technology, Inc. v. Vertex Downhole, Inc., No. Civ. 19-1166, 2020 WL 4346700, at *4 (D. Del.
July 29, 2020))).  "Therabody has done so here" (id. at 11-12 (citing SAC (Dkt. No. 53) ¶¶ 56,
71, 86, 97, 108, 119, 130, 141, 153, 167, 178, 189, 204, 219)), and "[t]he absence of allegations
of egregious conduct is not a reason to dismiss [Therabody's] allegations of willful
infringement." (Id. at 12)

As to Tzumi's argument regarding pre-suit knowledge, Judge Lehrburger "agrees
with Tzumi that the SAC fails to plausibly plead pre-suit knowledge of all of the patents-in-suit –
insofar as 'pre-suit' refers to the time period before Therabody commenced the action," but

> agrees with Therabody[] . . . that the SAC's allegations of Tzumi's knowledge of
> the [eight patents at issue on the instant motion to dismiss] and alleged
> infringement thereof based on prior pleadings and the [email that Therabody's
> counsel sent to Tzumi's counsel on March 29, 2022 informing Tzumi of its
> alleged infringement of two additional Therabody patents], and of deliberate
> continuing infringement after acquiring that knowledge, are sufficient to state
> claims of willful infringement of [the patents at issue].

(Id. at 13) Judge Lehrburger finds that

> [t]he sum of Therabody's allegations of Tzumi's knowledge of the [eight patents
> at issue on the instant motion to dismiss] in the pre-suit period is that Therabody
> and Tzumi competed in the same industry, Therabody received some industry
> recognition for the innovative nature of its products, Therabody listed its patents
> on its website, and Therabody sent a letter bringing certain patents, but not the
> [the patents at issue], to Tzumi's attention.

(Id. at 20)

Judge Lehrburger further finds that

> [w]hile it is plausible to infer Tzumi was aware of Therabody's products by virtue
> of their competition, the SAC falls short of the combination of circumstances that
> courts have found sufficient to "nudge[] [Plaintiff's] claims'" of willful
> infringement of the [eight patents at issue on the instant motion to dismiss] in the
> pre-suit period "across the line from conceivable to plausible."

(<u>Id.</u> (emphasis omitted) (second alteration in R&R) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007); citing <u>Atmos Nation, LLC v. BnB Enter., LLC</u>, No. 16-62083-CIV, 2017 WL 5004844, at *2 (S.D. Fla. Aug. 22, 2017))) Judge Lehrburger concludes that, "[b]ecause 'the law requires actual knowledge or its equivalent' to state a claim for willful infringement, the Court finds that the SAC does not state a claim for willful infringement of the [patents at issue on the instant motion to dismiss] prior to the commencement of this litigation." (<u>Id.</u> at 21 (quoting <u>Verint Sys. Inc. v. Red Box Recorders Ltd.</u>, No. 14 Civ. 5403 (KBF), 2016 WL 7177844, at *2 (S.D.N.Y. Dec. 7, 2016)))

       With respect to post-suit knowledge and conduct, Judge Lehrburger notes that "[w]hile neither the Supreme Court, nor Federal Circuit, nor courts in this District, have opined directly on the issue, several other district courts have considered whether one pleading can provide the requisite knowledge for willfulness in a later amended pleading," and that "[t]he results have been less than uniform, even within districts. (<u>Id.</u> at 22-23 (citing <u>Tonal Sys., Inc. v. iFIT Inc.</u>, No. CV 20-1197-LPS-CJB, 2022 WL 951549, at *3 (D. Del. Mar. 30, 2022); <u>Merrill Mfg. Co. v. Simmons Mfg. Co.</u>, 553 F. Supp.3d 1297, 1305 (N.D. Ga. 2021))) Judge Lehrburger finds, however, that "[m]ost courts[] . . . hold that allegations of post-filing willful infringement in an amended complaint may support a claim for willful infringement." (<u>Id.</u> at 23 (quoting <u>Merrill Mfg. Co.</u>, 553 F. Supp.3d at 1306) (collecting cases))

       Judge Lehrburger further finds that

> "[f]or purposes of pleading willful infringement, there appears to be little practical difference between a pre-complaint notice letter informing a defendant about a patentee's allegation of infringement and a subsequently-super[s]eded original complaint formally alleging infringement. Such a pre-suit letter," like the April 2021 [l]etter [that Therabody sent to Tzumi, before Therabody filed suit, claiming that several of Tzumi's products infringed six of Therabody's patents], "provides a basis for pleading knowledge [of the patents included in that letter] in the context of a willful infringement claim."

(Id. at 28 (first, second, and fifth alterations in R&R) (quoting Clouding IP, LLC v. Amazon.com, Inc., No. CA 12-641-LPS, 2013 WL 2293452, at *4 (D. Del. May 24, 2013)) (collecting cases)) "So too do the [o]riginal Complaint, First Amended Complaint, and [the March 29, 2022 email that Therabody's counsel sent to Tzumi's counsel informing Tzumi of its alleged infringement of two additional Therabody patents]." (Id.) Accordingly, Judge Lehrburger finds that "Therabody's willfulness allegations with respect to the [eight patents at issue on the instant motion to dismiss] plausibly allege willful infringement." (Id. at 29)

> While Tzumi may ultimately prevail on its infringement defenses, or Therabody may ultimately fail to prove willful conduct, or "further development of the facts of this case may reveal that it is not an 'egregious case' justifying enhanced damages," Therabody has satisfied its burden to plead willfulness at the pleading stage.

(Id. (quoting Bobcar Media, LLC v. Aardvark Event Logistics, Inc., No. 16 Civ. 885 (JPO), 2017 WL 74729, at *6 (S.D.N.Y. Jan. 4, 2017)))

Judge Lehrburger thus recommends that Tzumi's motion to dismiss be denied.

(Id.) No party has filed objections to this R&R.

## DISCUSSION

### I.   LEGAL STANDARDS

#### A.   Review of a Magistrate Judge's Report and Recommendation

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). "'The district judge evaluating a magistrate judge's recommendation may adopt those portions of the recommendation, without further review, where no specific objection is made, as long as they are not clearly erroneous.'" Gilmore v. Comm'r of Soc. Sec., No. 09 Civ. 6241 (RMB) (FM), 2011 WL 611826, at *1 (S.D.N.Y. Feb. 18, 2011) (quoting Chimarev v. TD Waterhouse Inv. Servs., Inc., 280 F. Supp.

2d 208, 212 (S.D.N.Y. 2003)).  A decision is "clearly erroneous" when, "upon review of the entire record, [the court is] left with the definite and firm conviction that a mistake has been committed."  United States v. Snow, 462 F.3d 55, 72 (2d Cir. 2006) (quotation marks and citation omitted).

Where a timely objection has been made to a magistrate judge's recommendation, the district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1)(C).  However, "[o]bjections that are 'merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original [papers] will not suffice to invoke de novo review.'"  Phillips v. Reed Grp., Ltd., 955 F. Supp. 2d 201, 211 (S.D.N.Y. 2013) (second alteration in original) (quoting Vega v. Artuz, 97 Civ. 3775 (LTS) (JCF), 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002)).  "To the extent . . . that the party . . . simply reiterates the original arguments, [courts] will review the Report strictly for clear error."  IndyMac Bank, F.S.B. v. Nat'l Settlement Agency, Inc., 07 Civ. 6865 (LTS) (GWG), 2008 WL 4810043, at *1 (S.D.N.Y. Nov. 3, 2008) (citing Pearson-Fraser v. Bell Atl., No. 01 Civ. 2343 (WK), 2003 WL 43367, at *1 (S.D.N.Y. Jan. 6, 2003); Camardo v. Gen. Motors Hourly-Rate Emps. Pension Plan, 806 F. Supp. 380, 382 (W.D.N.Y. 1992)); see also Ortiz v. Barkley, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) ("Reviewing courts should review a report and recommendation for clear error where objections are merely perfunctory responses, . . . rehashing . . . the same arguments set forth in the original petition." (quotation marks and citations omitted)).

**B.** <u>**Summary Judgment Standard**</u>

Summary judgment is warranted where the moving party "shows that there is no genuine dispute as to any material fact" and that it "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." <u>Beyer v. Cnty. of Nassau</u>, 524 F.3d 160, 163 (2d Cir. 2008) (quoting <u>Guilbert v. Gardner</u>, 480 F.3d 140, 145 (2d Cir. 2007)). "'[W]here the non[-]moving party will bear the burden of proof at trial, Rule 56 permits the moving party to point to an absence of evidence to support an essential element of the non[-]moving party's claim.'"  <u>Lesavoy v. Lane</u>, No. 02 Civ. 10162, 2008 WL 2704393, at *7 (S.D.N.Y. July 10, 2008) (quoting <u>Bay v. Times Mirror Mags., Inc.</u>, 936 F.2d 112, 116 (2d Cir. 1991)).

In deciding a summary judgment motion, a court must "'resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment.'"  <u>Spinelli v. City of New York</u>, 579 F.3d 160, 166 (2d Cir. 2009) (quoting <u>Brown v. Henderson</u>, 257 F.3d 246, 251 (2d Cir. 2001)).  However, "'[a] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment. . . . [M]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist.'"  <u>Hicks v. Baines</u>, 593 F.3d 159, 166 (2d Cir. 2010) (second alteration and omissions in original) (quoting <u>Fletcher v. Atex, Inc.</u>, 68 F.3d 1451, 1456 (2d Cir. 1995)).  "'Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.'"  <u>Eviner v. Eng</u>, No. 13 Civ. 6940 (ERK), 2015 WL 4600541, at *6 (E.D.N.Y. July 29, 2015) (quoting <u>Rule v. Brine, Inc.</u>, 85 F.3d 1002, 1011 (2d Cir. 1996)).  A moving party can

demonstrate the absence of a genuine issue of material fact "'in either of two ways:  (1) by submitting evidence that negates an essential element of the non-moving party's claim, or (2) by demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim.'" Nick's Garage, Inc. v. Progressive Cas. Ins. Co., 875 F.3d 107, 114 (2d Cir. 2017) (quoting Farid v. Smith, 850 F.2d 917, 924 (2d Cir. 1988)).

### C.  Rule 12(b)(6) Standard

"To survive a motion to dismiss [pursuant to Fed. R. Civ. P. 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570 (2007). "[T]he court is to accept as true all facts alleged in the complaint," Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007) (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff." Id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" Iqbal, 556 U.S. at 678 (alteration in original) (quoting Twombly, 550 U.S. at 557), and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." Port Dock & Stone Corp. v. Oldcastle Northeast, Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555).

Under this standard, a plaintiff is required only to set forth a "short and plain statement of the claim," Fed. R. Civ. P. 8(a), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (alteration in original) (quoting Fed. R. Civ. P. 8(a)).  To survive a motion to dismiss, plaintiff's "[f]actual allegations must be enough to

raise a right to relief above the speculative level," id. at 555, and present claims that are

"plausible on [their] face." Id. at 570. "The plausibility standard is not akin to a 'probability

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."

Iqbal, 556 U.S. at 678.

       "Where a complaint pleads facts that are 'merely consistent with' a defendant's

liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"

Id. (quoting Twombly, 550 U.S. at 557). Where "the allegations in a complaint, however true,

could not raise a claim of entitlement to relief," Twombly, 550 U.S. at 558, or where a plaintiff

has "not nudged [his] claims across the line from conceivable to plausible, the[] complaint must

be dismissed." Id. at 570.

## II.    TZUMI'S OBJECTIONS TO THE R&R'S RECOMMENDATION THAT ITS MOTION FOR SUMMARY JUDGMENT BE DENIED

       In its objections, Tzumi contends that "the Court should reject any portion of the

[November 28, 2022 R&R] that could be interpreted to preclude any disclaimer or estoppel, as

moot in view of the ongoing claim construction procedures, and/or as not supported by the

record." (Def. Obj. (Dkt. No. 104) at 4) "[T]he source of Tzumi's concern are statements in the

[R&R] that could be interpreted to find that these histories do not provide any disclaimer or

estoppel. Tzumi respectfully submits that these prosecution histories are very clear, at least in

their disclaimers and estoppels regarding structures like the accused products." (Id. (emphasis

omitted)) Tzumi therefore requests that the Court not "adopt any portions of the [R&R] that

could be interpreted as precluding other disclaimers or estoppels from the prosecution histories."

Tzumi states that it "has no objection to the Court adopting the [R&R] insofar as it rejected

Tzumi's first proposed claim construction of the term 'grasp' or insofar as it defers claim

construction and the infringement issues." (Id. at 11-12)

The issue before this Court at present is whether Judge Lehrburger erred in recommending that Tzumi's motion for partial summary judgment be denied.  It does not appear that Tzumi objects to that recommendation.  But in the event that it does, suffice it to say that Tzumi provides no basis in its objections for this Court to find, as a matter of law, that it is entitled to summary judgment.  Tzumi's arguments regarding "grasping limitations" and disclaimers and estoppel do not persuade this Court that it is entitled to judgment as a matter of law.  And to the extent that Judge Lehrburger finds that "Tzumi's construction should be rejected because it is inconsistent with other claims in the asserted patents, imports limitations from the specification into the claims, and relies on speculation concerning the prosecution history" (Nov. 28, 2022 (R&R (Dkt. No. 97) at 24), this Court understands Judge Lehrburger to be saying that – for all these reasons – Tzumi's motion for summary judgment should be denied.

To the extent that Tzumi's objections express a more generalized concern about Judge Lehrburger's views regarding Tzumi's claim construction and use of the specification, and his discussion of the prosecution history, those statements are not binding on a going forward basis, particularly as the record changes.  Nonetheless, Judge Lehrburger's analysis is detailed, painstaking, and well supported, and the parties would be wise to take his analysis into account as this case proceeds.

In any event, to the extent that Tzumi objects to Judge Lehrburger's recommendation that its motion for summary judgment be denied, its objections are overruled, and Tzumi's motion for summary judgment will be denied.

## III.   RECOMMENDATION THAT TZUMI's MOTION TO DISMISS BE DENIED

As discussed above, no party has filed objections to Judge Lehrburger's R&R recommending that Tzumi's motion to dismiss be denied.

28 U.S.C. § 636(b)(1)(C) provides that, "[w]ithin fourteen days after being served with a copy, any party may serve and file written objections to [a magistrate judge's] proposed findings and recommendations."  28 U.S.C. § 636(b)(1)(C); see also Fed. R. Civ. P. 72(b)(2) ("Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.").

In accordance with Fed. R. Civ. P. 72, the R&R sets a deadline for objections, and states the consequences of a failure to object in a timely manner:

> Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days to file written objections to this Report and Recommendation. . . . **Failure to file timely objections will result in a waiver of the right to object and will preclude appellate review.**

(Dec. 19, 2022 R&R (Dkt No. 105) at 29 (emphasis in R&R))

In reviewing an R&R, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).  Where a timely objection has been made to a magistrate judge's R&R, the district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  Id.

Here, despite clear warning that a failure to file objections would result in a waiver of judicial review, no party filed objections to Judge Lehrburger's R&R.  (See Dec. 19, 2022 R&R (Dkt. No. 105) at 29)  "[A] party generally waives judicial review of an issue when he or she fails to make timely objection to a magistrate judge's report, as long as all parties receive clear notice of the consequences of their failure to object."  DeLeon v. Strack, 234 F.3d 84, 86 (2d Cir. 2000) (citing Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989)); see also McCarthy v. Manson, 714 F.2d 234, 237 (2d Cir. 1983) ("When a party fails to

object timely to a magistrate's recommended decision, it waives any right to further judicial review of that decision.").

Because no party filed objections to Judge Lehrburger's R&R, the parties have waived judicial review. This rule is non-jurisdictional, however, and because "its violation may be excused in the interests of justice," DeLeon, 234 F.3d at 86 (citing Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993)), this Court has considered whether there is any "'clear error on the face of the record'" that precludes acceptance of the magistrate judge's recommendation. Wingate v. Bloomberg, No. 11 Civ. 188 (JPO), 2011 WL 5106009, at *1 (S.D.N.Y. Oct. 27, 2011) (quoting Fed. R. Civ. P. 72(b) advisory committee note); see also Nelson v. Smith, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985) ("To accept the report and recommendation of a magistrate, to which no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record.").

Having carefully reviewed Judge Lehrburger's thirty-page R&R, this Court finds it to be thorough, well-reasoned, and free of any clear error. Accordingly, Judge Lehrburger's December 19, 2022 R&R (Dkt. No. 105) is adopted in its entirety, and Tzumi's motion to dismiss will be denied.

## **CONCLUSION**

For the reasons stated above, Defendant Tzumi's motion for summary judgment and motion to dismiss are denied.  The Clerk of Court is directed to terminate the motions (Dkt. Nos. 67, 84).

Dated:  New York, New York
         September 29, 2023

                              SO ORDERED.

                              _____
                              Paul G. Gardephe
                              United States District Judge